**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division**

**Case No.: 10-21720-civ-KING/Bandstra**

**ANITA OGINSKY, PATRICIA JALETTE,
ANNE SMITH, PATRICK J. BUDIN,
SUSAN A. BUDIN, RICHARD SILVERMAN,
MICHAEL L. THORNTON, CHARLES L. POWELL,
MARIO SANTILLI, HOWARD COLEMAN,
LORRAINE FOX, JOHN E. ROSCOE, STEVE
PAVLIK**, **GRANT MOODY**, **RANDALL
LIPSIUS, KATTY CARON, RENE GIRARD,
SIDNEY CROSSLEY, RAYMOND J. TOUGAS,
JOHN ROSSI, DAVID GALOTTO, STEVEN
WASSERMAN, KRISHEN IYER, WILLIAM
HYLWA, DAVID WEBER, LUTHER J HAGEN &
LIBBY A. HAGEN,** on behalf of themselves and
 all others similarly situated

         Plaintiffs,

v.

**PARAGON PROPERTIES OF COSTA RICA, LLC**
a Florida limited liability company, **PROPERTIES OF
COSTA RICA, INC.,** a Florida corporation, **PARAGON
PROPERTIES OF COSTA RICA, S.A.,** a foreign for-
profit corporation, **ESTEBAN SOTO,** a/k/a ESTEBAN
SOTO CAMPOS**, WILLIAM GALE, CHARLES L.
NEUSTEIN, P.A.,** a Florida corporation, **LAW
OFFICES OF CHARLES L. NEUSTEIN, P.A.,**
a Florida corporation, **CHARLES L. NEUSTEIN,
PREMIER REALTY SALES OF COSTA RICA,
LTDA,** a foreign for-profit corporation, **ALL STAR
CONSULTING GROUP, SPL**, a foreign for-profit
corporation, **ALL STAR CONSULTING GROUP, INC.**
a Florida corporation, **BRUCE GOLDBERG**,
**ALLIANCE FUNDING, LLC**, a Florida limited
liability company, **ALLIANCE FUNDING SRL**,
a foreign for-profit corporation, **SHELDEN YABLON,
MURRAY LINDER, STEPHEN TASHMAN,
LYLE WEXLER, PARADISE INTERNATIONAL
PROPERTIES OF COSTA RICA S.A.,** a foreign for-
profit corporation, **PARADISE INTERNATIONAL
PROPERTIES, INC.,** a Florida corporation,

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

**LARRY M. WEBMAN, DAVID VALENTINE,**
**PARAMOUNT INTERNATIONAL SALES OF**
**COSTA RICA, S.R.L.**, a foreign for-profit corporation,
**PARAMOUNT CONSULTING GROUP, INC.,**
a Florida corporation **COSTA RICAN LAND &**
**DEVELOPMENT, INC.**, a Florida
corporation, a/k/a COSTA RICA LAND SALES
& DEVELOPMENT CORP., **JULIAN L. SIEGEL,**
**CHECKMATE FINANCIAL, INC.,** a Florida
corporation, **CHECKMATE REALTY SALES OF**
**COSTA RICA SRL**, a foreign corporation,
**CHESTER POTASH, JUDITH GALE, LISA**
 **TASHMAN,** a/k/a Lisa Siegel & **JOHN DOES 1-100,**

      Defendants.
_____/

## AMENDED CLASS ACTION COMPLAINT

     Plaintiffs, on their own behalf and on behalf of all others similarly situated, sue the

Defendants, collectively doing business as a single enterprise known as "Paragon."

### Introduction, Parties, Jurisdiction, Venue, Facts Etc.

    1.    This lawsuit is about a Ponzi-type scheme orchestrated by Paragon.  Paragon

owns, markets and sells lots of vacant and unimproved land in Costa Rica.  Paragon requires

their customers, all of whom are Americans, and most of whom are older Americans at or near

retirement, to make substantial deposits as part of the contract for the sale of the land.  The

deposits are purportedly 100% completely refundable in the event that the buyer provides written

notice of intent to cancel and request for a refund.  In fact, one of Paragon's major selling points

is that the deposits are 100% refundable.  Paragon had promised its buyers that it would, at its

own expense, build infrastructure of electricity and roads on the vacant land and that it would

provide the buyers with title to the property within a reasonable time after the full purchase price

was paid.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

2.     Paragon, like the paradise it purports to sell, is a myth.  Years after making these promises, the vacant and unimproved land remains vacant and unimproved, the deposit money has been misappropriated, and the deeds have not been provided to those buyers who made their full payments.

3.     On multiple occasions, Paragon has promised its buyers refunds of the deposit money, which it is contractually obligated to do, once additional investment money is received from new buyers.  This is a classic Ponzi-scheme.

4.     Paragon's contracts, known as Agreements for Deed, are all virtually identical except different Florida and Costa Rican entities are identified as the "seller."  Some of the Agreements purport to transfer the property directly to the buyers, while other Agreements purport to transfer 100% of the shares of a Costa Rican entity to the buyer.  (*I.e.*, Paragon is purportedly incorporating business entities under Costa Rican law, and then transferring the shares of the Costa Rican company to the buyers in the United States.).  Where the Agreement purports to be a stock transfer, the stock of the Costa Rican corporation and the deed to the property are transferred to Paragon's escrow agent when the deposit is paid (not when the transaction actually closes).  The escrow agent thus retains physical possession of the corporate books and the deed to the property pending full payment by the buyer.  In either case, the Agreement obligates Paragon to make a full refund of any monies paid if the buyer fails to make all payments due within five years of the date of the Agreement ("the five-year period").  (*I.e.*, the buyer is, theoretically, given a 100% refund at the end of the five-year period if the buyer is even $1 short of the full purchase price).  If the buyer has not paid in full at the conclusion of the five-year period, the land is retained by or re-transferred to Paragon and Paragon is entitled to

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

keep any interest earned on the deposit money and to retain any benefit gained by the deposit money.

5. Paragon requires deposits, theoretically 100% refundable, of at least $25,000 per lot before Paragon will even allow buyers to visit the property in Costa Rica. Prospective buyers may not visit the property before making the deposit.

6. According to the Broward County clerk of courts, there are now at least eight lawsuits pending against the Defendants (or related entities) for the same conduct. *See Charles Arena v. Paragon Properties of Costa Rica, S.A.*, et al, Case No. 09036826 (Broward County Circuit Court); *Charles Arena v. Paragon Properties of Costa Rica, S.A.*, et al, Case No. 08016933 (Broward County Circuit Court); *Stephen D. Benson, Ph.D. v. Paragon Properties of Costa Rica, S.A.*, et al, Case No. 08047677 (Broward County Circuit Court); *Louis J. Weinstein v. William Gale, et al*, Case No. 09058841 (Broward County Circuit Court); *George Rosenthal v Paragon Properties of Costa Rica, S.A., et al*, Case No. 07010322 (Broward County Circuit Court); *Steven S. Maves v. Paragon Properties of Costa Rica, S.A., et al,* Case No. 09065141 (Broward County Circuit Court); *Sid Crossly v. Paragon Properties of Costa Rica, S.A., et al,* Case No. 09039344 (Broward County Circuit Court); *Oginsky v. Properties of Costa Rica, Inc.*, Case No. 10004326 (Broward County Circuit Court). Upon information and belief, none of the lawsuits except *Oginsky* is being actively prosecuted (no doubt as a result of Paragon defaulting and closing up shop) and she is represented in that action by the same counsel who represents the Plaintiffs here.

7. The scheme is clear. Paragon requires a significant but fully refundable deposit on foreign land, and when dissatisfied clients request their refund, they pay off the dissatisfied clients with new funds received from new clients. This is a fraud, and nothing more. The

4
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

problem now is that Paragon has run out of funds to repay disgruntled buyers and has essentially ceased all operations (lawful or otherwise).

8.      Plaintiff, Anita Oginsky, is a resident of Corunna, Michigan.  She purchased a single lot and the seller is identified as "Properties of Costa Rica, Inc." and "Premier Realty Sales of Costa Rica, Ltda."

9.      Plaintiff, Patricia Jalette, is a resident of Massachusetts.  The seller is identified as "Properties of Costa Rica, Inc." and "Premier Realty Sales of Costa Rica, Ltda."

10.      Plaintiff, Anne Smith, is a resident of Vero Beach, Florida.  She purchased numerous lots in two different Paragon projects.  The seller is identified as "All Star Consulting Group, Inc.," a wholly owned subsidiary of All Star Properties of Costa Rica SLR, and "All Star Consulting Group, S.R.L."

11.      Plaintiffs, Patrick A. and Susan J. Budin, are residents of Middletown, Ohio.  The sellers are identified as "Properties of Costa Rica, Inc." and "Premier Realty Sales of Costa Rica, Ltda."

12.      Plaintiff, Richard Silverman, is a resident of Dallas, Texas.  He purchased a lot in the Parrita Gables project on April 20, 2005 and he made a $25,000 deposit to Paragon's escrow agent.  His Agreement for Deed is in the form of a stock transfer.  The seller is identified as Properties of Costa Rica, Inc., a wholly owned subsidiary of Premier Realty Sales of Costa Rica, Ltda.

13.      Plaintiff, Michael L. Thornton, is a resident of Queen Anne, Maryland.  He purchased one lot in the Playa del Mar project on February 20, 2006 and he made a $35,000 deposit to Paragon's escrow agent.  The seller is identified as "Alliance Funding LLC" and "Alliance Funding SRL."

5
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

14.     Plaintiff, Charles L. Powell, is a resident of Mechanicsville, Virginia.   He purchased one lot in the Buena Vista project on March 21, 2007 and he made a $50,000 deposit to Paragon via its escrow agent.  The seller is identified as "Properties of Costa Rica, Inc," and "Premier Realty Sales of Costa Rica, Ltda."

15.     Plaintiff, Mario Santilli, is a resident of Clackamas, Oregon.  He (along with his sister who has since been bought out by Santilli) purchased one lot in the Las Brisas project on April 16, 2007.  He made a $30,000 deposit.  The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

16.     Plaintiff, Howard Coleman, is a resident of Illinois.   On January 25, 2006 he purchased one lot in the Playa Del Sol project.   He made a $35,000 deposit to Paragon via Neustein.  The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

17.     Plaintiff, Lorraine Fox, is a resident of Broward County, Florida.  She purchased four lots in two different projects with Paragon.  The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

18.     Plaintiff, John E. Roscoe, is a resident of Vero Beach, Florida.  He purchased a single lot with Paragon.  The seller is identified as "Paramount International Sales of Costa Rica, SRL" and "Paramount Consulting Group, Inc."

19.     Plaintiff, Steve Pavlik, is a resident of Colorado.  He purchased two units with Paragon.  The seller is identified as "Paramount International Sales of Costa Rica, SRL" and "Paramount Consulting Group, Inc."

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

20.     Plaintiff, Grant Moody, is a resident of South Carolina.  He purchased a single lot with Paragon.   The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

21.     Plaintiff, Randall Lipsius, is a resident of Pennsylvania.  He purchased two lots with Paragon.   The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

22.     Plaintiffs, Katty Caron and Rene Girard, are residents of Sarasota, Florida.  They purchased a single lot with Paragon.  The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

23.     Plaintiff, Sidney Crossley, is a resident of California.  He purchased three units with Paragon.   The first Agreement (for two units) identifies the seller as "Paramount International Sales of Costa Rica, SRL" and "Paramount Consulting Group, Inc."   The first Agreement also contemplates a stock transfer.  The second Agreement identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

24.     Plaintiff, Raymond J. Tougas, is a resident of Hawaii.  He purchased a total of six units pursuant to three Agreements for Deed.  Two Agreements (totaling three lots) identify the seller as "Paramount International Sales of Costa Rica, SRL" and "Paramount Consulting Group, Inc." and one Agreement identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

25.     Plaintiff, John Rossi, is a resident of California.  He purchased one unit in the Parrita project in April 2005.  The seller is identified as "Checkmate Financial, Inc." and Checkmate Realty Sales of Costa Rica SRL."

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

26.     Plaintiff, David Galloto, is a resident of Connecticut.  He purchased one unit in January 2005 but has since lost the Agreement for Deed.

27.     Plaintiff, Steven Wasserman, is a resident of New York.  Wasserman purchased a single lot in April 2006 but has since lost the Agreement for Deed.

28.     Plaintiff, Krishen Iyer, is a resident of California.  Iyer purchased a single lot in 2007.  The Agreement for Deed identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

29.     Plaintiff, William Hylwa, is a resident of Connecticut.  The Agreement for Deed identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

30.     Plaintiff, David Webber, is a resident of New York.  Weber purchased a single lot in 2006.  The Agreement for Deed identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

31.     Plaintiffs, Luther and Libby Hagen, are residents of Minnesota.  The Hagens purchased three lots with Paragon. The Agreements for Deed identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

32.     Defendant, Paragon Properties of Costa Rica, LLC, is a Florida limited liability company with its principal place of business in Miami-Dade County.  Its sole member is co-Defendant Esteban Soto.  It had an office on Harding Street in Hollywood, Florida but by all accounts the office is closed and there is no signage on the door.

33.     Defendant, Properties of Costa Rica, Inc., is a Florida corporation with its principal place of business in Miami-Dade County, Florida.  It is a wholly owned subsidiary of co-defendant Paragon Properties of Costa Rica, S.A and/or co-defendant Premier Realty Sales of

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Costa Rica, Ltda.  Upon information and belief, Properties of Costa Rica, Inc. is defunct.  It has defaulted on several lawsuits.

34.     Defendant, Paragon Properties of Costa Rica, S.A., is a Costa Rican company. Upon information and belief, Paragon Properties of Costa Rica, S.A. is defunct.

35.     Defendant, Esteban Soto, a/k/a Esteban Soto Campos, is believed to be a Costa Rican national living in Costa Rica. He is the president, officer and an owner of Paragon.

36.     Defendant, William Gale, is a United States citizen who resides in Miami-Dade County, Florida.  He is the chairman, officer and owner of Paragon.  He resides in a house in Miami-Dade County that is titled in his wife's name only.  It is possible that he is no longer in the jurisdiction.

37.     Defendant, Charles L. Neustein, P.A., is a Florida corporation owned and operated by attorney Charles L. Neustein, Esq and based on Miami Beach, Florida.  Charles L. Neustein P.A. was the recipient of the buyer's funds, purportedly as "escrow agent" for the corporate defendants.  According to the Florida Department of State, the P.A. was dissolved in 1986.  All Agreements for Deed identify "Charles L. Neustein, P.A." as the escrow agent, despite being dissolved twenty four years ago.

38.     Defendant, Law Offices of Charles L. Neustein, P.A., is a Florida corporation owned and operated by attorney Charles L. Neustein, Esq. and based on Miami Beach, Florida. Law Offices of Charles L. Neustein, P.A. was the recipient of the buyer's funds, purported as "escrow agent" for the corporate defendants.

39.     Defendant, Charles L. Neustein, is a Florida licensed attorney who owns and operates Charles L. Neustein, P.A.  Neustein, through his attorney trust account, was the recipient of the buyer's funds, purportedly as "escrow agent" for the corporate defendants.  The

9
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

term "Neustein" shall collectively refer to Neustein personally and his two corporations. Neustein was served with a subpoena duces tecum in the state court action but he refused to accept the subpoena and, so far, has not responded to it.  A motion to hold Neustein in contempt for failing to respond to the subpoena is now pending in the Broward Circuit Court.  Neustein has also represented (and may be continuing to represent) co-Defendant Tashman.  Paragon would send investors copies of Neustein's resume in an effort to make them feel more comfortable with the entire transaction.  Paragon specifically emphasized that Neustein was a judge.  According to his resume, Neustein served as municipal judge for the City of North Miami Beach for one year.

40.    Defendant, Premier Realty Sales of Costa Rica, Ltda, is a foreign for-profit corporation.  It is allegedly the sole owner of co-Defendant Properties of Costa Rica, Inc.

41.    Defendant, All Star Consulting Group, SRL, is a foreign for-proft corporation.  It claims to be the sole parent of co-Defendant All Star Consulting Group, Inc.

42.    Defendant, All Star Consulting Group, Inc., is a Florida corporation, now dissolved, that was based in Miami, Florida.

43.    Defendant, Bruce Goldberg, was the president and owner of All Star Consulting Group, Inc.  Goldberg now owns various corporations that operate out of similar locations but appear to be shell corporations.

44.    Defendant, Alliance Funding, LLC, is a dissolved Florida limited liability company based in Hallandale Beach, Florida.  It has two members – co-Defendants Murray Linder and Shelden Yablon.  Purportedly is it a wholly owned subsidiary of Alliance Funding SRL.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

45.     Defendant, Alliance Funding, SRL, is a Costa Rican corporation that owns Alliance Funding LLC.

46.     Defendant, Shelden Yablon, was a manager and owner of Alliance Funding, LLC. It is believed that he resides in South Florida.

47.     Defendant, Murray Linder, was the managing member and owner of Alliance Funding, LLC.  It is believed that he resides in South Florida.

48.     Defendant, Stephen Tashman, was and remains a principal member of the conspiracy although his exact role is currently unknown.  He held himself out as an officer or manager of Paragon and interacted routinely with the Plaintiffs and other putative class members.  He also referred to himself as a consultant to and spokesman for Paragon.  He is a resident of South Florida.  He has a long history of fraudulent business activity in South Florida, most notably being sued by the Federal Trade Commission and being ordered to pay $28 million for a fraudulent calling card scheme.  *See Federal Trade Commission v. Steven I. Tashman*, Case No. 98-civ-07058 (S.D. Fla.) (Ryskamp, J.).  Judge Ryskamp permanently enjoined Tashman from engaging in any business activity and requiring Tashman to provide any prospective business partner or investor with a copy of the injunction.  *Id*. at D.E. 210.  Tashman was also sued by the SEC for fraudulently selling partnerships in an ostrich farming business.  He is notorious for keeping his name off of corporate books and documents and for hiding his role in various entities.  (For example, he is widely believed to be the owner of Junction Financial Corporation, but he is not on the corporate books at all).  Tashman's counsel in the FTC enforcement action was the law firm of Tew Cardenas, the same firm that is counsel to Paragon. Tashman's counsel in a prior bankruptcy was Charles Neustein, Paragon's "escrow agent." Tashman also uses Michael Fingar as his legal counsel, and Fingar is also identified as

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

representing Paragon.  This is further proof that Tashman is the *de facto* head (or at least one of the major players) of the Paragon enterprise.

49.     Defendant, Lyle Wexler, was Paragon's Director of Operations.  He is a resident of South Florida.  He had authority to enter into contracts on behalf of Paragon.  Upon information and belief he actively participated in the conspiracy to defraud investors.  He has a long history of fraudulent business activity, most notably being in sued in 2005 by the Commodity Futures Trading Commission for unlawfully selling and marketing foreign currencies. *See Commodities Futures Trading Commission v. Larry M. Webman, Lyle Wexler, et al*, Case No. 05-civ-4819 (S.D.N.Y.).  One of his co-conspirators in the CFTC enforcement action was co-Defendant Larry M. Webman.

50.     Defendant, Larry M. Webman, was an active participant in the Paragon enterprise.  He routinely held himself out as an officer or manager of Paragon and he routinely communicated with investors.  He is a resident of South Florida.  He has a long history of fraudulent business activity, most notably being sued in 2005 by the Commodity Futures Trading Commission for unlawfully selling and marketing foreign currencies.  Webman was the ringleader of the conspiracy, and one of his co-conspirators in the CFTC enforcement action was co-Defendant Lyle Wexler.  (The 2005 lawsuit against Webman accused him of violating a consent judgment entered against him in 1982, *i.e.*, Webman has a 30 year history of fraud).  Webman was also sentenced to 18 months in federal prison for wire fraud and for engaging in a scheme to defraud.  *See United States v. Larry Webman, et al,* Case No. 91-cr-00917 (S.D. Fla.) (Graham, J.).  Webman was recently sued by the Securities and Exchange Commission for selling fraudulent investments in violation of SEC regulations and for soliciting over $6 million in fraudulent investor monies from senior citizens.  *See S.E.C. v. Larry Webman, et al*, Case No.

12
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

06-civ-22440 (S.D. Fla.) (Lenard, J.).  Webman failed to answer the complaint and Judge Lenard assessed a $400,000 penalty on Webman in 2008.

51.     Defendant, David Valentine, is the current Director of Operations for Paragon. He replaced Bob Street, who replaced Lyle Wexler.  He is a resident of South Florida, although it is highly likely that he has recently relocated to Costa Rica.  As recently as last month, Valentine was still interacting with investors and promising them that the projects were still on as planned and that they should send additional money to Paragon.

52.     Defendant, Paramount International Sales of Costa Rica, SRL, is a Costa Rican corporation that purportedly owns co-Defendant Paramount Consulting Group, Inc.

53.     Defendant, Paramount Consulting Group, Inc., is a dissolved Florida corporation with its principal place of business in Miami-Dade County, Florida. Co-Defendant Webman is its president.

54.     Defendant, Costa Rican Land & Development Inc., is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.  Its president is Julian L. Siegel. Siegel is the son-in-law of co-Defendant Tashman.  Siegel is aware of his father-in-law's history of fraud and he is listed as an officer of several corporations that are believed to be fronts for Tashman.  Costa Rican Land & Development, Inc. is also known as Costa Rica Land Sales & Development Corporation.  The second name is the name identified on its letterhead, but it is not a registered Florida corporation.  The company is the "designated" contractor for Paragon.  Its registered agent, like most of the Paragon corporate Defendants, is Jeffrey Tew.  At one point its registered agent was Michael Fingar – the attorney who, like Tew, represented Tashman in the FTC enforcement action and represents Paragon.

13
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

55.     Defendant, Julian L. Siegel, is the president of Costa Rican Land & Development, Inc.  He is a resident of South Florida.  He is co-Defendant Tashman's son-in-law.  Siegel has known about his father-in-law's fraudulent business activity and has been involved in them as well.  According to bank records, Siegel's Capital One credit card was routinely paid via funds from the Paragon operating account.

56.     Defendant, Checkmate Financial, Inc., is a dissolved Florida corporation that sold units in Paragon.  It claims to be a wholly owned subsidiary of co-Defendant Checkmate Realty Sales of Costa Rica, SRL.  It is owned and operated by co-Defendants Chester Potash and Melvin Webman.  Checkmate Financial was used to run a check cashing fraud scheme.  Most of the owners and operators, including several defendants here, were indicted for conspiracy to commit mail and wire fraud.  *See United States v. Melvin Webman, et al* Case No. 06-cr-20069 (S.D. Fla.) (Altonaga, J.).  Checkmate Financial's corporate vice president and secretary, Melvin Webman, pled guilty to conspiracy to commit mail and wire fraud.  Judge Altonaga sentenced him to 8 years.  Melvin Webman is the brother of co-Defendant Larry Webman.  The Webman brothers had conspired before and were indicated in other matters together.  Melvin Webman died in prison.

57.     Defendant, Checkmate Realty Sales of Costa Rica, SLR is a foreign corporation that sold units in Paragon.

58.     Defendant, Chester Potash, was the owner and chief executive officer of Checkmate Financial.  On July 7, 2006, Potash pled guilty to conspiracy to commit mail and and wire fraud.  Judge Altonaga sentenced him to 8 years in federal prison.  He is a resident of FCI – Miami.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

59.     Defendant, Judith Gale, is the wife of co-Defendant William Gale.  The marital home is titled in her name only.  Upon information and belief, other marital assets, or assets of Gale, are titled in her name.  According to bank records, Judith Gale's American Express card was routinely paid electronically out of Paragon's corporate account.  She is the recipient of fraudulent transfers, and all of her assets are subject to seizure for the benefit of the Plaintiffs.

60.     Defendant, Lisa Tashman, a/k/a Lisa Siegel, is the daughter of co-Defendant Steve Tashman and the wife of co-Defendant Julien Siegel. According to bank records, Lisa Tashman's American Express card was routinely paid electronically out of Paragon's corporate account.  She is the recipient of fraudulent transfers, and all of her assets are subject to seizure for the benefit of the Plaintiffs.

61.     Defendants, John Does 1-100, are yet unidentified corporations, entities, accountants, escrow agents, banks, lenders, investors, law firms and other third-parties who knew or should have known of Paragon's fraud.  Plaintiffs have identified several individuals and other corporations that are likely unnamed co-conspirators, and Plaintiffs will amend this Complaint as warranted.

62.     Plaintiff is unaware of the exact corporate relationship between and among the corporate co-defendants, but upon information and belief, the entities are legally related to each other.  Co-defendants Soto, Gale, Tashman, Wexler and Webman are the persons behind all these corporate entities and are the persons most responsible for the failed development in Costa Rica and the fraudulent business practices associated with the company.

63.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1336 (supplemental jurisdiction over state law claims).

15
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

64.     Venue is proper because the majority of the Defendants are based in Miami-Dade County, Florida and because the escrow agent who handled the fraudulent transactions resides in Miami Beach, Florida.

65.     Florida law governs this lawsuit.  The Agreements for Deed do not contain a choice of law provision.

66.     Plaintiffs have retained counsel and are obligated to compensate them.

67.     All allegations are made against all of the co-Defendants individually and as a single conspiracy, unless otherwise noted.  All co-Defendants engaged in a conspiracy to defraud the Plaintiffs and putative class members.  They are all jointly and severally liable to the Plaintiffs and are also responsible for making the Plaintiffs whole.

68.     The co-Defendants are all part of a single enterprise known as Paragon.  The big picture is clear, the details remain hidden.

### Anita Oginsky

69.     Anita Oginsky signed an Agreement for Deed on October 31, 2007 with Properties of Costa Rica.  *See* Exhibit A.  The Agreement was for Lot 29 on Paragon's Sunset Bay project.  Oginsky paid a deposit of $29,900 to Paragon via Neustein.  The total purchase price was $69,900.

70.     On February 21, 2008, Oginsky requested a timely refund of the deposit money. The request for a refund went unanswered.  On the same day, Paragon, through Soto, sent Oginsky a letter confirming the purchase.

71.     On August 7, 2008, Oginsky sent a demand letter to Paragon via its counsel, Tew Cardenas.  On August 16, 2008, and in response to the demand letter, Paragon entered into a settlement agreement with Oginsky and agreed to return the deposit in several payments.  The

16
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

settlement agreement is attached as Exhibit B.  Paragon was represented in the settlement by the Tew Cardenas law firm.

72.     Paragon made the first two payments pursuant to the settlement agreement, and paid part of the third and final payment.  According to the terms of the settlement agreement, the release was conditioned on full payment.  Thus, Oginsky's release has no legal consequence.

73.     Oginsky filed suit in Broward County Circuit Court against the first four named defendants here on January 29, 2010.  Properties of Costa Rica, Inc. has since defaulted by failing to respond.  Gale failed to respond as well and a default judgment is imminent.  (The Costa Rican entity and national were not served).  By all accounts, the enterprise known as Paragon is defunct.

74.     Oginsky is owed $19,100 in actual damages.

### Patricia Jalette

75.     Patricia Jalette signed an Agreement for Deed on or about January 24, 2007 with Properties of Costa Rica, Inc.  (The signed Agreement for Deed is in the exclusive possession, custody and control of the Defendants, and accordingly Jalette is seeking restoration of a lost document).  An unexecuted copy of the Agreement for Deed is attached as Exhibit C.  She purchased Lot 42 in the Playa del Sol project.  The total purchase price was $85,000.00.

76.     She placed a deposit of $39,500.00 with Neustein contemporaneously with the execution of the Agreement for Deed.  The deposit was made via money order from Massachusetts to Florida.

77.     On March 7, 2007, Paragon offered her "an opportunity" to take title to the property sooner than anticipated if she agreed to pay the remaining balance due ($45,500), minus

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

a 25% discount, in three payments.  Jalette agreed and the parties agreed that Jalette would make three additional payments of $11,250 within the next year.

78.     On March 16, 2007, Paragon agreed to lower the final (third) payment by one-thousand dollars ($1,000).

79.     In March 2007 she made an additional payment of $11,250.00

80.     In July 2007 she made an additional payment of $11,250.00

81.     In September 2007 she made an additional payment of $10,250.00

82.     Jalette made total payments of $71,750, all in 2007.

83.     Jalette paid the purchase price, as modified by the parties, in full.

84.     According to the Agreement for Deed, paragraph 2, Paragon was obligated to provide Jalette with a deed to the property at the time that she paid the balance in full.  Paragon told Jalette that it would convey the deed in six to eight weeks from the time the balance was paid in full.

85.     Jalette has not been provided a deed to the property.  On December 17, 2007, Jalette was provided documents purportedly to be corporate books for "Coral Fantasy, S.R.L.," a Costa Rican corporation.  (Jalette's Agreement did not contemplate a stock transfer).

86.     According to the Agreement for Deed, paragraph 3, Paragon was obligated to put in place infrastructure of roads and electricity within 24 months of January 24, 2007.

87.     As of today, no infrastructure is in place and any improvements to the land are minimal at best.

88.     Jalette has repeatedly attempted to contact Paragon to discuss the situation, but Paragon has not responded and it is believed has entirely shut down operations.

89.     Jalette is owed $71,750 in actual damages.

18
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

### Anne Smith

90.     Anne Smith signed two Agreements for Deed with Paragon.  The first Agreement for Deed is dated February 28, 2006, and was for Lots 5, 15, 35, 36, and 45 of Paragon's Punta Verde project.  *See* Exhibit D.  Smith made a $125,000 deposit by depositing funds with Neustein.

91.     The second Agreement for Deed is dated March 2, 2006 and was for Lots 66 and 67 of Paragon's Playa del Sol project.  *See* Exhibit E.  Smith made a $70,000 deposit by depositing funds with Neustein.

92.     The "seller" for the Smith Agreements for Deed is identified as All Star Consulting Group, Inc.  This is nothing more than a front for Paragon and its related entities.

93.     On August 25, 2006, Smith met Gale and Gale signed an amendment to extend Smith's refund request period to January 31, 2007.

94.     On or before October 4, 2006, Smith requested a refund of the entire $195,000 deposit.  The request for a refund was acknowledged by Soto.

95.     On December 22, 2006, Smith received $25,000 as a partial refund.

96.     In January 2007, Lyle Wexler, purporting to represent Paragon, convinced Smith to transfer the remaining deposit funds ($170,000) to "better" lots at Paragon's Palms North project with an additional six month refund request period.

97.     On or before April 18, 2007, Smith requested a full refund of the remaining $170,000 on deposit for the Palms North project.

98.     On May 11, 2007, and again on August 17, 2007, Smith received checks for $25,000 as a partial refund.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

99.     On September 19, 2007, Smith again requested a refund of the remaining deposit money through Soto, Gale and Neustein.

100.    On October 27, 2007 and November 5, 2007 Smith received checks for $12,500 for a partial refund.  Smith received an addition $12,000 on November 20, 2007.

101.    As of November 20, 2007, Smith is due an $83,000 refund from Paragon.

102.    Multiple requests to Gale, Soto and Neustein have gone unanswered, and it is believed that Paragon had completely shut down operations.

### Patrick A. and Susan J. Budin

103.    The Budins purchased two lots with Paragon – Lot 4 in the Ocean Palms project and Lot 69 in the Buena Vista project. Lot 4 was purchased on February 7, 2007 and the Budins paid a deposit of $45,900 to Neustein.  *See* Exhibit F (Budin Agreement for Deed).

104.    On April 17, 2007, Lyle Wexler, Paragon's Director of Operations, sent the Budins a letter indicating that one of Costa Rica's major banking institutions appraised the property for several times its original purchase price.  The actual bank is unidentified.

105.    After visiting the property, the Budins decided they wanted a full refund.  The Budins sent a written and timely demand for a refund.

106.    Paragon refunded the Budins the full $49,500 for Lot 69.  The refund was paid on two separate checks with different dates.

107.    Paragon refunded the Budins only $4,590 for Lot 4.  This constitutes a refund of only 10% of the deposit.  The Budins are owed $41,310 from Paragon constituting the remainder of the deposit on Lot 4.

108.    Multiple letters to Gale, Soto, Neustein and Paragon's attorney, Jeffrey Tew, went unanswered.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

**Richard Silverman**

109.     Silverman signed an Agreement for Deed dated April 20, 2005.  He purchased a lot in the Parrita Gables project and paid a $25,000 deposit to Neustein.  Unlike the other named Plaintiffs, Silverman's Agreement contemplated a stock transfer.

110.     On February 21, 2007, Silverman requested a full refund of his deposit.  The refund request was made because Silverman learned (via a site inspection and through third-parties) that Paragon had failed to fulfill its obligations to make certain improvements to the property and that the property was unmarketable.  Simply put, the land was still just dirt.  On March 12, 2007, Paragon, through Soto, informed Silverman that the lack of improvements was due to the Costa Rican government.  He also reminded Silverman that he would be entitled to a full refund at the end of the five-year period.

111.     On April 20, 2010, Silverman send a letter to Paragon and requested a full refund of his deposit.  April 20, 2010 was the end of the five-year period.  To date, Paragon has not responded to the request for a refund.  It is believed that Paragon is completely defunct.

**Michael L. Thornton**

112.     Thornton signed an Agreement for Deed on February 20, 2006 for Lot 5 in the Playa del Mar project.  *See* Exhibit G.  (Thornton swapped Lot 25 for Lot 5 at a later date and without any additional consideration).  He made a $35,000 deposit to Paragon via Neustein.  The seller is identified as Alliance Funding LLC and Alliance Funding SRL.

113.     On December 19, 2006, Thornton made a written demand for refund of his deposit money.  Paragon, through co-Defendant Lyle Wexler, Director of Operations, rejected the refund request as being untimely, but he reiterated that Thornton would receive a complete refund at the end of the five-year period.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

114.    On December 26, 2006, Thornton was encouraged by Wexler to pay off the balance due in exchange for a significant discount on the purchase price.  On January 16, 2007, Thornton paid an additional $12,500 to Paragon via Neustein in exchange for a $12,500 discount on the total purchase price (from $85,000 to $72,500).  Thornton's balance was (and remains) $25,000.

115.    Thornton has repeatedly contacted Paragon to discuss the status of the project, but Paragon, through co-Defendant David Valentine, has not explained the status and has stalled on providing updates.  Valentine also told Thornton that Gale had secured Italian investors to fund completion of the project.

116.    Thornton has $47,500 deposited with Paragon and wants the money returned.

### Charles L. Powell

117.    Powell purchased Lot 96 (later swapped for Lot 44) in Paragon's Buena Vista project on March 21, 2007.  *See* Exhibit H.  The purchase price was $100,000 and Powell made a $50,000 deposit via Neustein.

118.    On May 25, 2007, Powell visited the property and was given a $15,000 credit off the purchase price for travel expenses.

119.    On May 29, 2007, Powell made a written and timely demand for a refund of the $50,000 deposit.

120.    On June 4, 2007, Paragon, through Soto, rejected Powell's request for a refund because Powell completed a "client evaluation" that, in Paragon's view, constituted ratification of the Agreement and a waiver of the right to cancel.

121.    On July 3, 2007, Powell retained counsel to seek a refund of the $50,000 and a demand letter was sent to co-Defendants Soto and Wexler.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

122.    On August 17, 2007, Paragon, through Soto, reiterated that the fact that Powell completed a "client evaluation" constitutes a waiver of the right to a refund.

123.    After Paragon refused to refund the money, Paragon discounted Powell's purchase price to the point that his $50,000 deposit constituted payment in full.

124.    On February 22, 2008, Bob Street, Paragon's Director of Operations (post-Wexler), informed Powell that the remaining balance would be eliminated and that Paragon was "in the process of obtaining your title."

125.    On May 29, 2008, Paragon "confirmed" the purchase and informed Powell that the property was being transferred into a Costa Rican SRL that would be assigned to Powell. (Powell's Agreement for Deed did not contemplate a stock transfer).

126.    Paragon has not returned Powell's $50,000 and has not provided a deed (proper or otherwise).

127.    Powell's calls to Paragon have gone unanswered, except Paragon indicated that it was receiving new investment money from Italy.

**Mario Santilli**

128.    On April 16, 2007, Santilli (along with his sister who has since been bought out) purchased Lot 68 in the Las Brisas project.  *See* Exhibit I.  The purchase price was $60,000 and he paid a $30,000 deposit to Paragon via Neustein.

129.    On October 17, 2007, Santilli made an additional $4,000 payment to Paragon via Neustein.

130.    On April 7, 2008, Santilli made an additional $4,000 payment to Paragon via Neustein.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

131.    On March 2, 2010, Paragon contacted Santilli via David Valentine about an opportunity to take advantage of a $7,750 discount off the purchase price if he would only wire Paragon an additional $6,000 to its Wachovia account.  Santilli was given 3 days to decide.

132.    On May 1, 2010, Santilli made a written demand for a refund of his $38,000.  He routinely attempted to contact Paragon but was unsuccessful.  The May 1 letter went unanswered.

133.    Based upon his last conversation with Valentine, which occurred approximately one month ago, Santilli believes that Gale has recently left the country and that various liens have been placed on the property in Costa Rica.

134.    Santilli is owed $38,000 in actual damages from Paragon.

### Howard Coleman

135.    Coleman purchased one lot in the Playa Del Sol project on January 25, 2006.  *See* Exhibit J.  He paid a $35,000 deposit via Neustein.  The total purchase price was $85,000.

136.    On June 24, 2008, Coleman was offered an "opportunity" to expedite the transfer of the property.  He was offered a 25% discount on the balance ($50,000), in exchange for paying off the discounted balance ($37,500) by the end of 2009.  Coleman declined this offer.

137.    Coleman was offered another opportunity to take 25% off the balance due ($50,000) in exchange for an additional $10,000.  On June 28, 2008, Coleman paid an additional $10,000, leaving a new balance of $27,500.

138.    In January 2009, Coleman was provided another opportunity to take $10,500 off the new balance ($27,500) in exchange for Coleman paying $17,000 to satisfy the entire obligation.  Coleman agreed and by January 29, 2009, the full purchase price, after the discounts, was paid.

24
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

139.     On January 29, 2009, Coleman received a letter from Paragon, via Soto, confirming that full payment was made and that the funds had been released from escrow.  He was told that title to "his" lot was being transferred to an SRL and assigned to him.

140.     Coleman did not receive a deed (proper or otherwise).

141.     Coleman is owed $62,000 in actual damages.

### Lorraine Fox

142.     Fox purchased a total of four lots in two projects.

143.     She purchased Lot 21 in the Playa Del Sol project on April 28, 2006.  *See* Exhibit K.  The purchase price was $60,000.  She paid a $25,000 deposit via Neustein.  On July 17, 2006, Paragon, at Fox's request, swapped Lot 8 for Lot 21.  On September 28, 2007, Paragon offered Fox an "opportunity" to receive a 25% discount off the balance ($35,000) if she paid the discounted balance ($26,250) within three weeks.

144.     She purchased Lot 73 in the Las Brigas project on August 14, 2006.  *See* Exhibit L.  The purchase price was $55,000.  She paid a $25,000 deposit via Neustein.

145.     She purchased Lot 60 in the Ocean Palms project on August 18, 2006.  *See* Exhibit M.  The purchase price was $50,000.  She paid a $25,000 deposit via Neustein.

146.     She purchased Lot 91 in the Ocean Palms project on September 29, 2006.  *See* Exhibit N.  The purchase price was $85,000.  She paid a $35,900 deposit via Neustein.

147.     On March 25, 2009, Fox made an additional payment of $5,000 via credit card to co-Defendant Costa Rican Land & Development.  At the time, she did not know who this company was, it merely showed up on her credit card statement.  Thus, the recipient of the $5,000 was actually the purportedly independent construction company that was giving discounts

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

to Paragon.  Unbeknownst to her, Costa Rican Land is owned and operated by Tashman's son-in-law.

148.    Fox is owed $115,900 in actual damages.

### John E. Roscoe

149.    Roscoe purchased Lot 62 in the Playa Del Mar project on December 30, 2005. *See* Exhibit O.  The seller was Paramount International Sales of Costa Rica SRL and Paramount Consulting Group, Inc.  The purchase price was $85,000 and Roscoe paid a $35,000 deposit via Neustein.

150.    On April 19, 2006, Roscoe was offered an opportunity by Paragon, through Wexler, to receive 25% off the balance ($50,000) if Roscoe agreed to pay the discounted balance ($37,500) in full immediately.  Wexler's letter referenced another letter from Paragon's "designated" construction company indicating that the construction company was offering Paragon a 15% discount.

151.    The referenced letter was an October 10, 2005 letter from co-Defendant Costa Rica Land Sales & Development Corporation to Gale.  (The letter from the contractor to Gale thus predates Roscoe's purchase of the property).  Costa Rica Land Sales offered Paragon a 15% discount on the cost of construction.  The letter was signed Julian L. Siegel.  Siegel is actually co-Defendant Tashman's son-in-law.

152.    Roscoe did not accept the opportunity.  (The "opportunity" was presented to Roscoe on several other occasions).

153.    On or about May 1, 2006, Roscoe received a letter from Costa Rica Land Sales indicating that all permits have been obtained and that the building of the infrastructure could commence immediately.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

154.     On January 15, 2008, Roscoe sent a written demand for a refund of his $35,000 deposit.

155.     Roscoe is owed $35,000 in actual damages from Paragon.

**Steve Pavlik**

156.     Pavlik purchased two units with Paragon.  The first Agreement for Deed was dated February 2, 2006 and was for Lot 49 in the Playa del Sol project.  *See* Exhibit P.  The purchase price was $85,000 and Pavlik paid a $35,000 deposit to Paragon via Neustein.

157.     After viewing Lot 49, Pavlik hated the lot and the project and made a timely and written demand for a refund.  Paragon, through Wexler, told Pavlik that it would take months to get a refund and that he offered Pavlik a better lot without any additional compensation.  The parties agreed to transfer the lot to a lot in the Ocean Palms project.

158.     The second Agreement for Deed was dated October 10, 2006 and was for Lot 80 in the Ocean palms project.  *See* Exhibit Q.  The purchase price was $80,000 and Pavlik made a $35,900 deposit with Paragon via Neustein.

159.     To date, no infrastructure has been put in place.  Paragon has since stopped communicating with Pavlik.  Refund requests have gone unanswered.

160.     Pavlik is owed $65,900 in actual damages.

**Grant Moody**

161.     Moody purchased a single lot in the Las Brisas project on January 12, 2005.  *See* Exhibit R.  The purchase price was $60,000.  Moody paid a $25,000 deposit to Paragon via Neustein.

162.     On February 8, 2006, Moody was offered an opportunity to take title to the property on an expedited basis.  Paragon, through Les Masters, offered Moody a 15% discount

27
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

off the remaining balance in exchange for Moody immediately paying off the discounted balance in full.  Moody declined the opportunity.

163.    On January 13, 2010, one day past the five-year period, Moody made a timely and written request for a refund of his deposit money.  That request went unanswered.

164.    Moody is owed $25,000 in actual damages.

### Randall Lipsius

165.    Lipsius purchased two lots with Paragon.  The first Agreement for Deed was signed in February 2005 and was for Lot 70 in the Brisas project. Lipsius does not have a copy of the Agreement, but it is in the material same format as the Agreement for Deed on his second lot. Other documents confirm the amount and material terms of the first and lost Agreement.  The purchase price was $60,000 and Lipsius made a $25,000 deposit to Paragon via Neustein.

166.    In January 2006, Lipsius was offered an opportunity to receive a 15% discount off the balance due ($35,000) in exchange for immediately paying the discounted balance ($26,250).  Lipsius agreed and paid the discounted balance in full.

167.    Sometime after the first Agreement was signed but before May 15, 2006, Lipsius and Paragon swapped Lot 70 out and replaced it with Lot 28.

168.    On May 15, 2006, Lipsius' purchased was confirmed and he was provided corporate books to Van Hollen, SRL.  Unbeknownst to him, Paragon created Van Hollen SRL, purportedly for the benefit of Lipsius.  Van Hollen SRL is actually owned and controlled by Inri Robles Kelly and Vivian Soto.  In theory, Paragon's plan was to create Van Hollen SRL, then transfer the shares of the SRL to Lipsius, and then transfer the property to the SRL.  None of this was contemplated in the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

169.     On February 11, 2008 Lipsius signed the second lot.  The second lot was lot 144 in the Sunset Bay project.  *See* Exhibit S.  The purchase price was $59,925 and Lipsius made a deposit of $17,950 to Paragon via Neustein.

170.     In June 2008 Lipsius paid an additional $6,000 on lot 144.

171.     In July 2009 Lipsuis paid an additional $6,000 on lot 144.

172.     Lipsuis is owed $81,200 in actual damages.

### Katty Caron and Rene Girard

173.     Caron and Girard purchased a single lot in Paragon's Ocean Pointe project on July 14, 2005.  *See* Exhibit T.  The purchase price was $75,000 and they paid a $30,000 deposit to Paragon via Neustein.

174.     The rejected several opportunities to pay off the balance for a discount.

175.     On April 29, 2010 they requested a refund of the deposit.  The refund request went unanswered.

176.     Caron and Girard are owed $30,000 in actual damages.

### Sidney Crossley

177.     Crossley purchased a total of three units from Paragon.  The first two units were purchased via an Agreement for Deed dates October 27, 2004.  *See* Exhibit U.  The Agreement contemplated a stock transfer.

178.     At some point Crossley received what appears to be a corporate stock document in the name of a Costa Rican entity, Howard Realty, SRL.  Crossley did not open or approve this corporation.

179.     The third unit was purchased via a second Agreement for Deed dated February 13, 2008.  *See* Exhibit V.  This Agreement was for Lot 3 in the Sunset Bay project.  The

29
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

purchase price was $89,925.   Crossley made a $29,950 deposit to Paragon via Neustein. Crossley's second Agreement contemplates a 360 day rescission period (as opposed to 180 days for other investors).

180.    On September 4, 2008, Crossley made a timely written demand for a refund of his deposit on Lot 3 in Sunset Bay.  The request was made to Paragon and Neustein.

181.    In October 2008, Crossley and Paragon agreed that $25,000 of the deposit money from the first two lots would be applied to Lot 3 in Sunset Bay.  Lot 3's deposit was thus $54,950.

182.    On February 10, 2009, Crossley made a second timely written demand for a refund of his deposit on Lot 3.  The request went unanswered.

183.    Crossley has a default judgment of $54,950 against Properties of Costa Rica, Inc. only in the Broward County Circuit Court.

184.    Crossley is owed $ 54,950 in actual damages.

**Raymond Tougas**

185.    Tougas purchased six lots via three Agreements for Deed with Paragon.  The first Agreement was signed on July 7, 2006 and was for Lot 33 in the Ocean Point project.  *See* Exhibit W.  The purchase price was $85,000 and Tougas paid a $35,000 deposit to Paragon via Neustein.

186.    The second Agreement was signed on August 4, 2006 and was for Lots 34 and 35 in the Ocean Point project.  *See* Exhibit X.  The purchase price was $136,000 and Tougas paid a $70,000 deposit to Paragon via Neustein.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

187.     The third Agreement was signed on June 5, 2007 and was for Lots 38, 39 and 80 in the Playa Del Mar project.  *See* Exhibit Y.  The purchase price was $150,000 and Tougas paid a $75,000 deposit to Paragon via Neustein.

188.     Tougas was offered and accepted several discounts on the outstanding balances for each of the six lots.  For each of the six lots, Tougas paid all but the last $1,000 of the total purchase price.  None of the lots were paid in full.  A total of $274,000 was paid by Tougas to Paragon via Neustein.

189.     Tougas was repeatedly reassured by Gale that the infrastructure would be in place no later than the summer of 2009.  Tougas recently spoke with Valentine and was reassured, yet again, that Paragon was starting the infrastructure in April 2010.

190.     Tougas is owed $274,000 in actual damages.

### John Rossi

191.     Rossi purchased one unit in The Gables project with Paragon on April 7, 2005.  *See* Exhibit Z.  He made a $25,000 deposit to Paragon via Neustein.  Shortly thereafter, he made an additional $7,000 payment via Neustein.

192.     Rossi's Agreement for Deed contemplated a stock transfer.

193.     Rossi's seller is Checkmate Financial, Inc.

194.     At the conclusion of the five-year period, in April 2010, Rossi made several timely and written requests for a refund of his deposit money.  Those requests went unanswered.

195.     Rossi is owed $32,000 in actual damages.

### David Galloto

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

196.    Galloto purchased one unit with Paragon in January 2005.  He made a $25,000 deposit to Paragon via Neustein.  He has since lost the Agreement for Deed, however, Neustein confirmed the $25,000 deposit on January 24, 2005.

197.    On January 26, 2006, he was offered an opportunity to receive a 25% discount off the balance due if he agreed to immediately pay the balance due.  Galloto declined.

198.    The five year period expired in January 2010.  No deed was provided and no refund was made to Galloto.  Calls to Gale and Paragon went unanswered.

199.    Galloto is owed $25,000 in actual damages.

**Steven Wasserman**

200.    Wasserman purchased a single lot on or about April 21, 2006.  He paid a $35,000 deposit to Paragon via Neustein.  He has since lost the Agreement for Deed, but correspondence from Neustein confirm the transaction.

201.    On September 4, 2006, Wasserman made a timely and written demand for a refund.  Paragon, through Wexler, denied the request for a refund as being untimely.

202.    Wasserman paid an additional $4,000 in July 2009.

203.    Wasserman is owed $39,000 in actual damages.

**Krishen Iyer**

204.    Iyer purchased a single unit, Lot 68, from Paragon in 2007.  *See* Exhibit AA.  The original purchase price was $60,000 and he paid a $29,500 deposit via Neustein.

205.    Lot 66 was replaced by Lot 35, with a new full purchase price of $80,000.

206.    Iyer made an additional $10,000 payment on July 12, 2007.

207.    Iyer took advantage of a $16,500 discount (off the then balance of $40,500).

208.    Iyer made a $10,000 payment on September 24, 2008.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

209.    Iyer paid the final balance of $14,000 on or about October 28, 2008

210.    Iyer was provided a deed.  Iyer also requested a full refund on several occasions once it became obvious to him that Paragon was defunct and had no intention of fulfilling its obligations.

211.    Iyer is owed $66,000 in actual damages.

### William Hylwa

212.    Hylwa purchased Lot 76 in the Buena Vista project of Paragon on October 9, 2006.  *See* Exhibit BB.  The purchase price was $85,000 and Hylwa made a $35,900 deposit to Paragon via Neustein.  Hylwa was also given a $1,000 travel credit off the purchase price.

213.    On or about April 10, 2008, Hylwa paid an additional $18,000 to Paragon via Neustein for Lot 76.

214.    On November 2, 2006, Hylwa loaned Paragon $50,000.  *See* Exhibit CC.  The loan was purportedly secured by Ocean Palms Plaza shopping center – a shopping center Paragon was developing with the express goal of reselling it for $3M.  Paragon guaranteed Hylwa 24% interest on the loan payable 24 months after the loan money was sent by Hylwa.  The loan was never repaid.  The "Agreement for Secured Loan" was probably a fraud from the outset.

215.    Repeated communications to Paragon went unanswered.

216.    Hylwa is owed $53,900 in actual damages from the Agreement for Deed and $62,000 in actual damages from the Agreement for Secured Loan, for a total of $115,900 in damages.

### David Weber

217.    Weber purchased Lot 26 in Paragon's Ocean Point project on April 7, 2006.  *See* Exhibit DD.  The purchase price was $85,000 and Weber made a $35,000 deposit to Paragon via Neustein.

218.    Repeated calls to Paragon have gone unanswered.

219.    Weber is owed $35,000 in actual damages.

### Luther and Libby Hagen

220.    The Hagen's purchased a total of three lots with Paragon.  The first Agreement for Deed was for Lots 67 and 68 in the Ocean Palms project and was dated March 30, 2007.  *See* Exhibit EE.  The original purchase price was $190,000 and the Hagens paid a $91,800 deposit to Paragon via Neustein.

221.    The second Agreement for Deed was for Lot 69 in the Ocean Palms project and was dated April 16, 2007.  *See* Exhibit FF.  The original purchase price was $85,000 and the Hagens paid a $40,000 deposit to Paragon via Neustein.

222.    The original purchase prices were dropped to $164,700 and $73,375 respectfully.

223.    The Hagens ultimately paid the entire discounted purchase prices for all three lots.

224.    The Hagens are due $238,075 in actual damages.

### Count I – Breach of Contract

225.    Plaintiffs incorporate paragraphs 1 – 224.

226.    A valid and enforceable contract (*i.e.*, the Agreements for Deed) between Plaintiffs and Paragon exists.  Paragon is obligated to make certain improvements to the real property, to keep the property free and clear of liens and encumbrances, to provide a refund within six months of the date of the Agreement, and to provide a refund at the conclusion of the five-year period if the full amount of the purchase price is not paid.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

227.     Defendants failed to fulfill their obligations and, in doing so, breached the contract.

228.     Plaintiffs fulfilled all of their obligations under the contract.

229.     Plaintiffs have suffered financial damages as a result of the Defendants' breach.

### Count II – Fraud

230.     Plaintiffs incorporate paragraphs 1 – 224.

231.     Paragon made numerous false statements to Plaintiffs, including that the deposit money was 100% refundable, that the property would remain free and clear of liens and encumbrances, that the unimproved land would be improved with water, sewer, electricity and roads within 18 months, that it would provide a deed to the property, and that it would return the monies at the end of the five-year period.

232.     Despite no progress on the property, a slew of default judgments and dozens if not hundreds of unhappy investors, Paragon is continuing to make the same false statements and is continuing to market and sell the properties.

233.     Paragon knew that it could not and would not fulfill its obligations when it made these fraudulent statements.  The statements were not abstract pufferies.

234.     Paragon made the false statements with the intention of inducing the Plaintiffs to enter into Agreements for Deed and to make payments to Paragon.

235.     Plaintiffs relied on Defendants' false statements when they signed the Agreements.

236.     Had Paragon been truthful, Plaintiffs never would have contracted with Paragon.

237.     Plaintiffs have been damages as a result of the fraud.

### Count III – Alter Ego

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

238.    Plaintiffs incorporate paragraphs 1 – 224.

239.    Plaintiffs reasonably believe that Paragon's corporate entities are owned, operated and controlled by William Gale, Esteban Soto, Lyle Wexler, Larry Webman and Stephen Tashman.

240.    William Gale is chairman and owner of Paragon Properties of Costa Rica, S.A.

241.    Esteban Soto is president and owner of Paragon Properties of Costa Rica, S.A.

242.    Larry Webman and/or Stephen Tashman is/are the *de facto* ringleader(s) of Paragon.

243.    Lyle Wexler was Director of Operations for Paragon.

244.    Upon reasonable information and belief, the corporate co-Defendants were nothing more than shell corporations fraudulently incorporated to allow the individual co-Defendants to commit a major fraud.

245.    The corporate co-Defendants are defunct and have not responded to prior lawsuits.   Despite this, Paragon is still marketing vacant Costa Rican land and is still encouraging investors to deposit more money with Paragon.

246.    Upon reasonable information and belief, the corporate co-Defendants operated as a single enterprise for the individual benefit of Gale, Soto, Wexler, Webman and Tashman.

247.    The individual co-Defendants used the corporate co-Defendants to commit a fraud.

248.    Plaintiffs have been financially damaged as a result of the fraudulent use of the corporate entities.

### Count IV – Civil RICO/Racketeering (Violation of 18 U.S.C. § 1962(c))

249.    Plaintiffs incorporate paragraphs 1 – 224.

36
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

250.     This Count qualifies as Plaintiffs' civil RICO statement, as required by Local Rule 12.1.

251.     **RICO Sections.** This case involves violations of 18 U.S.C. § 1962(c).

252.     **Individual RICO Defendants.**

a.       Defendant Paragon Properties of Costa Rica, LLC is one of the entities used to create the R.I.C.O. enterprise and affect the racketeering. Defendant Paragon Properties of Costa Rica, LLC, through its agents, committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.  In particular, agents of Defendant Paragon Properties of Costa Rica, LLC induced Plaintiffs and the class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were purchasing lots in Costa Rica and the monies paid were 100% refundable.  In fact, the monies paid were not refundable and no lots were transferred.

b.        Defendant Properties of Costa Rica, Inc. is one of the entities that used to affect the racketeering. Defendant Properties of Costa Rica, Inc., through its agents, committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.  In particular, agents of Defendant Properties of Costa Rica, Inc. induced Plaintiffs and the class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were purchasing lots in Costa Rica and the monies paid were 100% refundable.   In fact, the monies paid were not refundable and no lots were transferred.

c.       Defendant Paragon Properties of Costa Rica, S.A. is one of the entities used to affect the racketeering. Defendant Paragon Properties of Costa Rica, S.A, through its agents, committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

In particular, agents of Defendant Paragon Properties of Costa Rica, S.A. induced Plaintiffs and the class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were purchasing lots in Costa Rica and the monies paid were 100% refundable.  In fact, the monies paid were not refundable and no lots were transferred.

   d. Defendant Esteban Soto is the sole member of Paragon Properties of Costa Rica, LLC.  He is one of the principals of the Paragon and related entities used to implement the racketeering and he exercised control over the Paragon entities including their fraudulent conduct.  He committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.  In particular, he induced Plaintiffs and the class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were purchasing lots in Costa Rica and the monies paid were 100% refundable.  In fact, the monies paid were not refundable and no lots were transferred.

   e. Defendant William Gale is an owner and principal of Paragon entities used to implement the racketeering and he exercised control over the Paragon entities including their fraudulent conduct.  He has exercised control over the Paragon entities.  He committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.  In particular, he induced Plaintiffs and the class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were purchasing lots in Costa Rica and the monies paid were 100% refundable.  In fact, the monies paid were not refundable and no lots were transferred.

   f. Defendant Charles L. Neustein, P.A., is a Florida law firm owned operated by Charles L. Neustein.  Defendant Charles L. Neustein, P.A. committed numerous acts of wire

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

fraud in violation 18 U.S.C. § 1343.  In particular, Defendant Charles L. Neustein, P.A received funds via wire transfer from Plaintiffs and members by falsely representing, through wire and U.S. mail, that it would hold the funds in escrow until the land sales were final. Contrary to its representations, Defendant Charles L. Neustein, P.A did not hold the funds in escrow.  Instead, the funds were disbursed among Defendants.

g.      Defendant Law Offices of Charles L. Neustein, P.A. is a Florida law firm owned operated by Charles L. Neustein.  Defendant Law Offices of Charles L. Neustein, P.A. committed numerous acts of wire fraud in violation 18 U.S.C. § 1343.  In particular, Defendant Law Offices of Charles L. Neustein, P.A. received funds via wire transfer from Plaintiffs and members by falsely representing, through wire and U.S. mail, that it would hold the funds in escrow until the land sales were final. Contrary to its representations, Defendant Law Offices of Charles L. Neustein, P.A.  did not hold the funds in escrow.  Instead, the funds were disbursed among Defendants.

h.      Defendant Charles L. Neustein is an attorney and he is the principal of Defendant Law Offices of Charles L. Neustein, P.A. and Defendant Charles L. Neustein, P.A. He committed numerous acts of wire fraud in violation 18 U.S.C. § 1343.   In particular, Defendant Charles L. Neustein received funds via wire transfer from Plaintiffs and members by falsely representing, through wire and U.S. mail, that he and his law firms would hold the funds in escrow until the land sales were final. Contrary to his representations, Defendant Charles L. Neustein, did not hold the funds in escrow.   Instead, the funds were disbursed among Defendants.

i.      Defendant Premier Realty Sales of Costa Rica, Ltda is a Costa Rican entity.  It is allegedly the parent company of Defendant Properties of Costa Rica, Inc.  Defendant

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Premier Realty Sales of Costa Rica, Ltda's misconduct is the same as that of Defendant Properties of Costa Rica, Inc. (discussed above).

j.     Defendant All Star Consulting Group, SRL, is a foreign for-profit corporation. It is allegedly the parent company of co-Defendant All Star Consulting Group, Inc. Its misconduct is the same as Defendant All Star Consulting Group, Inc. (discussed below).

k.     Defendant All Star Consulting Group, Inc. is a dissolved Florida corporation. It was one of the entities was used to effect the racketeering. Defendant All Star Consulting Group, Inc., through its agents, entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a. In particular, agents of Defendant All Star Consulting Group, Inc. induced class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were selling lots in Costa Rica and. In fact, it was selling nothing as the transactions were shams. For example, Defendant All Star Consulting Group was the purported seller in Plaintiff Anne Smith's transactions.

l.     Bruce Goldberg was the president and owner of Defendant All Star Consulting Group, Inc. He controlled All Star Consulting Group, Inc., including its involvement in the sham transactions.

m.     Defendant Alliance Funding, LLC, is a dissolved Florida limited liability company based in Hallandale Beach, Florida. It was one of the entities was used to effect the racketeering. In particular, agents of Defendant Alliance Funding, LLC entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a. For example, Defendant Alliance Funding, LLC is listed as a seller on Plaintiff Michael Thornton's transactions.

40
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

n.      Defendant Alliance Funding, SRL, is a Costa Rican corporation that owns Alliance Funding LLC.   It was one of the entities was used to effect the racketeering. In particular, agents of Defendant Alliance Funding, SRL entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.   For example, Defendant Alliance Funding, SRL is listed as a seller on Plaintiff Michael Thornton's transactions.

o.      Defendant Shelden Yablon was a manager and owner of Alliance Funding, LLC.   He controlled Alliance Funding, LLC including its participation in the racketeering.

p.      Murray Linder, was the managing member and owner of Alliance Funding, LLC.   He controlled Alliance Funding, LLC. including its participation in the racketeering.

q.      Defendant Stephen Tashman was and remains a principal member of the racketeering scheme although his exact role is currently unknown.   He held himself out as an officer or manager of the Paragon entities and interacted routinely with the Plaintiffs and other putative class members, inducing them to enter fraudulent land transactions that violated 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.

r.      Defendant Lyle Wexler was Paragon's Director of Operations.   He participated in the racketeering scheme by entering into fraudulent land sales contracts in violation of Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.

s.      Defendant Larry M. Webman was an active participant in the Paragon enterprise.   He routinely held himself out as an officer or manager of Paragon entities and he routinely communicated with investors, inducing them to enter fraudulent land transactions that

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

violated 18 U.S.C. § 1343and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.

        t.     David Valentine is the current Director of Operations for Paragon. He has been an active participant in the Paragon enterprise.    He routinely held himself out as an officer or manager of Paragon entities and he routinely communicated with investors, inducing them to enter fraudulent land transactions that violated 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.

        u.     Defendant Paramount International Sales of Costa Rica, SRL, is a Costa Rican corporation that purportedly owns co-Defendant Paramount Consulting Group, Inc.  It was one of the entities was used to effect the racketeering.  It entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a. For example, it identified as a seller in Plaintiff Roscoe's transaction.

        v.     Paramount Consulting Group, Inc., is a dissolved Florida corporation with its principal place of business in Miami-Dade County, Florida.   It was one of the entities was used to effect the racketeering.  It entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a. For example, it identified as a seller in Plaintiff Roscoe's transaction.

        w.     Costa Rican Land & Development Inc., is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.  It was one of the entities was used to effect the racketeering.  Plaintiffs and members of the class were induced to make additional payments to Costa Rican Land & Development company based on its misrepresentations that it was a company not affiliated with Paragon that would be involved in the construction phase of

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

the development.  In fact, Costa Rican Land & Development Inc. was controlled by Julian L. Siegel a participant in the racketeering and a close associate of the principals of the Paragon entities. The monies delivered to Costa Rican Land & Development Inc., like the deposits to Paragon, were not applied to the represented purpose and were never returned. For example, Plaintiff Fox paid Costa Rican Land & Development Inc. $5,000.

        x.     Defendant Julian L. Siegel is the president of Costa Rican Land & Development, Inc.  He exercised control over Costa Rican Land & Development, Inc. and its participation in the racketeering.

        y.     Defendant Checkmate Financial, Inc. is a dissolved Florida corporation that participated in the racketeering by purporting to sell units in Paragon.  It entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a. For example, Checkmate Financial, Inc. is identified as the seller in Plaintiff Rossi's transaction.

        z.     Defendant Checkmate Realty Sales of Costa Rica, SLR is a foreign corporation participated in the racketeering by purporting to sell units in Paragon.

        aa.     Chester Potash was the owner and chief executive officer of Checkmate Financial.  He exercised control over that company including its participation in the racketeering.

253.   **Wrong Doers Other than Defendants.**  It is believed there are additional participants in the scheme who have not yet been identified.  They are named as Doe Defendants in the Amended Complaint.

254.   **Victims.**  It is believed that there are approximately 900 to 1000 victims with out of pocket losses of approximately $50 million.  Each of the named Plaintiffs is a victim with quantifiable out of pocket losses.  The named Plaintiffs and their out of pocket losses are:

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

a.      Plaintiff Anne Oginsky is owed $19,100.

b.      Plaintiff Patricia Jalette is owed $71,750.

c.      Plaintiff Anne Smith is owed $83,000.

d.      Plaintiffs Patrick A. and Susan J. Budin are owed $41,310.

e.      Plaintiff Richard Silverman is owed $25,000.

f.      Plaintiff Richard Thornton is owed $47,500.

g.      Plaintiff Charles Powell is owed $50,000.

h.      Plaintiff Mario Santilli is owed $38,000.

i.      Plaintiff Howard Coleman is owed $62,000.

j.      Plaintiff Loraine Fox is owed $115,900.

k.      Plaintiff John Roscoe is owed $35,000.

l.      Plaintiff Steve Pavlik is owed $65,900.

m.      Plaintiff Grant Moody is owed $25,000.

n.      Plaintiff Randall Lipsuis is owed $81,200.

o.      Plaintiffs Katty Caron and Rene Girard are owed $30,000.

p.      Plaintiff Sidney Crossley is owed $ 54,950.

q.      Plaintiff Raymond Tougas is owed $274,000

r.      Plaintiff John Rossi is owed $32,000.

s.      Plaintiff David Galloto is owed $25,000.

t.      Plaintiff Steve Wasserman is owed $39,000.

u.      Plaintiff Krishen Iyer is owed $66,000.

v.      Plaintiff William Hylwa is owed $115,900.

w.      Plaintiff David Weber is owed $35,000

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

x.      Plaintiffs Luther and Libby Hagen are owed $238,075.

255.    **The Pattern of Racketeering.**  The racketeering in this case involved repeated mail and wire fraud violations from 2005 through 2010, and repeated violations of the criminal provision of the and the Interstate Land Sales Act.  All of the conduct was intended to, and did, induce Plaintiffs and members of the class to turn over substantial sums of money to the Paragon entities, which were controlled and operated by the individual Defendants.  Plaintiffs and members of the class were told they were making fully refundable deposits for lots in Costa Rica.  Plaintiffs were told the monies would be held in escrow by Defendant Charles Neustein's law firms until the transactions closed at which time Plaintiffs and members of the class would receive title to the Costa Rican land.   In fact, the monies were not held in escrow pending closing, they would not be refunded, and title to the lots would never be delivered.   As the money came in, it was simply transferred out of Neustein's account to Paramount without regard to the alleged land transactions.  Once Paramount received the monies, it distributed as directed by Defendants, again without regard or concern for the alleged land transactions.

256.    **The RICO Enterprise.**  The RICO Enterprises is Paragon Properties of Costa Rica, LLC ("Paragon").  Paragon is registered with the State of Florida as a limited liability company.  The State of Florida lists Paragon's principal place of business as 2035 Harding Street, Ste. 201, Hollywood, Florida 33020.  Paragon represented itself as a legitimate company, which was in the business of selling real estate in Costa Rica.  The land transactions that Paragon promoted, however, were shams.   Money that was to be held in escrow was immediately transferred to Paragon and Plaintiff and members of the class never received the land they were allegedly purchasing

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Defendant Esteban Soto is identified as Paragon's manager. Defendants Esteban Soto, William Gale, and Stephen Tashman are believed to be the three individuals that principally exercised control of Paragon. Defendant Charles Neustein and his law firms purported to act as escrow agents on Paragon's land transactions, when, in fact, the money was not held in escrow but was transferred to Paragon. Defendants Properties of Costa Rica, Inc., Paragon Properties of Costa Rica, S.A., are corporate affiliates of Paragon that participated in the racketeering activities. These Paragon corporate affiliates may be part of the RICO enterprise.

257. **Has the Racketeering Merged into a Single Enterprise.** Yes.

258. **The Relationship between the Racketeering and Paragon's Legitimate Business.** Paragon is not believed to have any legitimate business.

259. **Benefits from Racketeering.** It is estimated that Paragon received approximately $50 million from its racketeering activities.

260. **Effects on Interstate or foreign Commerce.** The victims of the racketeering are from throughout the United States. The mail and wire fraud emanated from South Florida to all parts of the United States. The effects of the racketeering have caused injury to the class members throughout the United States. The racketeering also involved foreign commerce, in particular commerce with Costa Rica as many of the class members travelled to Costa Rica to see the property they were allegedly purchasing.

261. **Section 1962(c) information.** The following individual Defendants were employed or associated with the Paragon Enterprise: Esteban Soto, William Gale, Charles Neustein, Bruce Goldberg, Sheldn Yablon, Murray Linder, Stephen Tashman, Lyle Wexler, Larry Webman, David Valentine, Julian Siegel, and Chester Potash. Their respective roles are described above. The following corporate Defendants were associated with the Paragon

46
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Enterprise: Paragon Properties of Costa Rica, LLC,  Properties of Costa Rica, Inc.,  Paragon Properties of Costa Rica, S.A.,  Charles L. Neustein, P.A.,  Law Offices of Charles L. Neustein, P.A., Premier Realty Sales of Costa Rica, Ltda,  All Star Consulting Group, SRL, All Star Consulting Group, Inc., Alliance Funding, LLC, Alliance Funding, SRL, Paramount International Sales of Costa Rica, SRL, Paramount Consulting Group, Inc.,  Costa Rican Land & Development Inc., Checkmate Financial, Inc., Checkmate Realty Sales of Costa Rica, SLR. Plaintiffs and member of the class were injured by the operation of the Paragon enterprise in that they were defrauded of the money that the paid towards what they believed were legitimate land transactions.  The individual Defendants are not the RICO Enterprise (*i.e.*, Paragon).  Some of the corporate Defendants, in particular the Paragon entities, also constitute the RICO Enterprise (*i.e.*, Paragon).

262. **Injury to Business or Property.**  Plaintiffs and the class members have been injured with respect to their property – namely, the money that has been misappropriated.

263. **Relationship Between Injury and Each Separate RICO Violation.**  Each transaction resulted in independent, identifiable damages.

264. **Damages for Each Violation.**   Each transaction resulted in independent, identifiable damages – *i.e.*, the amount each Plaintiff and member of the class paid toward the fraudulent transaction.

## Count V – Civil Theft (Fla. Stat. § 772.11).

265. Plaintiffs incorporate paragraphs 1 - 224.

266. The Defendants committed civil theft, when by clear and convincing evidence they violated Section 812.014 of the Florida Statutes.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

267.     Defendants fraudulently obtained significant sums from the Plaintiffs, and then intentionally and feloniously refused to refund monies that they were contractually obligated to refund.

268.     Defendants fraudulently and feloniously misappropriated deposit money for personal and non-business use.  For example, Gale routinely travelled to Europe and bragged to the investors that he has dined with entertainer Elton John and that he is close friends with and was invited to the wedding of actor Peter Weller (RoboCop).  (According to published sources, Weller is an investor and putative class member).

269.     Plaintiffs have been damaged financially as a result of the Defendants' civil theft.

270.     Plaintiffs are entitled to threefold actual damages.

271.     Plaintiffs are entitled to attorneys' fees and costs.

## Count VI – Injunction

272.     Plaintiffs incorporate paragraphs 1 - 224.

273.     Paragon is an ongoing enterprise and is continuing to unlawfully market and sell unimproved land in Costa Rica.

274.     Unless Paragon is enjoined from further sales and from accepting any additional monies, it will continue to flourish in some form and more investor money will be lost.

275.     The facts of this case warrant a temporary and permanent injunction enjoining Paragon from accepting any new monies and enjoining Neustein, the escrow agent, from dispersing any investor money held in his trust or operating account.

## Count VII – Class Action Allegations

276.     Plaintiffs incorporate paragraphs 1 – 224.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

277.     This is a Rule 23 opt-out class action.  There were approximately 2400 lots sold by Paragon.  It is believed that there are approximately 900-1100 individual investors, with some investors purchasing multiple lots.  The average investor (including those who bought multiple lots) deposited approximately $50,000 with Paragon.  The total amount of money in controversy is estimated at $50 million, not including treble damages.

278.     All of the named Plaintiffs and all of the putative class members seek rescission of the Agreements for Deed and a full refund of all monies paid to Paragon.

279.     The proposed class definition is: "All persons who entered into contracts for the sale of Costa Rican real estate with Paragon and any of its affiliated entities."

280.     The class is so numerous that joinder in one action is impracticable.  The number of class members likely exceeds 900 persons.

281.     Plaintiffs' claims are typical of the claims of the class members.  All are based on the same practice and the same fraudulent conduct.

282.     There are common questions of fact and law affecting members of the class, which questions predominate over questions that may affect individual members.

283.     Plaintiffs will fairly and adequately represent the class members.  Plaintiffs have no interests that conflict with interests of the other class members.   Plaintiffs have retained experienced and competent counsel.

284.     A class action is superior to other available means for adjudication of the claims of the class members.

### Count VIII – Restoration of Lost Document
(Jallete, Lipsius, Galloto and Wasserman only)

285.     Plaintiffs incorporate paragraphs 1 - 224.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

286.     Plaintiff Jalette, Lipsius, Galloto and Wasserman executed respective Agreements for Deed with Paragon and sent it to Paragon for Paragon's signature.   They paid Paragon through Neustein.  Neustein confirmed the transactions as indicated above.

287.     Plaintiffs Jalette, Lipsius, Galloto and Wasserman do not have an executed copy of the Agreement for Deed.   They may never have actually received an executed copy from Paragon.

288.     An unexecuted copy of Jalette's Agreement for Deed is attached as Exhibit C.

289.     Only Jalette, Lipsius, Galloto, and Wasserman the Defendants have an interest in the document.

290.     Jalette, Lipsius, Galloto and Wasserman request that the Court restore the executed copy of the Agreement for Deed pursuant to Section 71.011 of the Florida Statutes.

### Count IX – Anticipatory Breach of Contract

291.     Plaintiffs incorporate paragraphs 1 - 224.

292.     Plaintiffs and Defendants are contractually obligated to one another (i.e., the Agreements for Deed).

293.     The Defendants are obligated to make certain improvements to the property to make it buildable and marketable.  The Defendants have not done so.

294.     The Defendants are obligated to return 100% of the monies paid by the Plaintiffs to the Plaintiffs at the conclusion of the five-year period if the Plaintiffs have failed to pay the purchase price in full.  The Defendants have not done so.

295.     Plaintiffs, and several putative class members who have been identified by the Plaintiffs but who are not yet named parties, have repeatedly made written and verbal requests for refunds.  The requests went unanswered.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

296.    Paragon has refused to communicate with its investors and has refused to return deposit monies.  Properties of Costa Rica, despite being represented by Tew Cardenas (which also serves as its registered agent), has defaulted on several lawsuits in Broward Circuit Court.  It is reasonable to believe that Paragon is defunct.

297.    Plaintiffs reasonably believe that Paragon has no intention and no ability to comply with its contractual obligations.  Plaintiffs anticipate that Paragon will breach the contract.

298.    Plaintiffs have been harmed by Paragon's anticipated breach of contract.

**Count X – Interstate Land Sales Disclosure Act (15 U.S.C. §§ 1701 et. seq.)**

299.    Plaintiffs incorporate paragraphs 1 - 224.

300.    Paragon is a developer within the meaning of the Interstate Land Sales Full Disclosure Act ("ILSFDA").

301.    Paragon used a common promotional plan to sell unimproved vacant lots in Costa Rica.

302.    Paragon failed to issue the purchasers a property report, as required by the ILSFDA.

303.    Paragon violated 15 U.S.C. §§ 1703(1)(A)-(B) & 1703(2)(A)-(D).

304.    Paragon used fraud and deceit to sell and market the lots in Costa Rica.

305.    Plaintiffs invoke their right of rescission to cancel the Agreements for Deed and seek a full refund of all monies paid to Paragon.

306.    Plaintiffs have been damaged financially as a result of Paragon's intentional violation of the ILSFDA and as a result of Paragon's fraud.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

307.    Paragon's intentional violation of the ILSFDA constitutes a felony.  *See* 15 U.S.C. § 1717.

308.    Paragon's violation of the ILSFDA is a predicate act for purposes of the Plaintiffs' Civil RICO claims.

### Count XI -- Fraudulent Transfers (Fla. Stat. § 726.105)

309.    Plaintiffs incorporate paragraphs 1 – 224.

310.    Plaintiffs and the members of the class are creditors of the Paragon entities, by virtue of the monies transferred for the alleged land transactions and Paragon's breach of contract in refusing to refund the monies.

311.    Paragon transferred monies received from Plaintiffs and members of the class – monies that were to be held in escrow and which were to purchase land – to Defendants Judith Gale, Lisa Tashman and Julien Siegel.  For example, Paragon paid the personal credit cards of Defendants Judith Gale, Lisa Tashman, and Julien Siegel from funds that were supposed to be held in escrow and which were supposed to go toward land purchases.

312.    Paragon made the transfers to Defendants Judith Gale, Lisa Tashman, and Julien Siegel with the actual intent to hinder, delay, or defraud Plaintiffs and members of the class from obtaining the monies Paragon owed them.

313.    The transfers to Defendants Judith Gale, Lisa Tashman, and Julien Siegel were fraudulent transfers for purposes of Fla. Stat. § 726.105

314.    As a matter of law, all monies from a fraudulent transfer must be returned to the Plaintiffs.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

**Prayer for Relief**

All Plaintiffs (on their own behalf and on behalf of all others similarly situated) pray for the following relief: rescission of the Agreements for Deed, actual damages in the amount equal to the amount of money they respectfully paid the Defendants; treble damages equal to three times the amount of their actual damages pursuant to Section 772.11 of the Florida Statutes and 18 U.S.C. § 1964; disgorgement of profits from Neustein and Paragon's unnamed counsel, punitive damages as a result of the Defendants' fraud; pre- and post-judgment interest and reasonably attorneys' fees and costs.

All Plaintiffs (on their own behalf and on behalf of all others similarly situated) request an injunction to temporarily and permanently enjoin the Defendants from accepting any additional funds from additional "buyers," and an injunction to temporarily and permanently enjoin Neustein from dispersing any of the buyers' property (either money or deeds) to anyone without Court approval.

All Plaintiffs (on their own behalf and on behalf of all others similarly situated) request restitution from all Defendants and yet unidentified co-Defendants/third-parties who were the recipients of fraudulent transfers. The Plaintiffs further request a constructive trust and lien on all assets of all Defendants and any yet unidentified co-Defendants/third-parties who were the recipients of fraudulent transfers.  All money deposited with Paragon via Neustein is tainted and no one may retain the tainted funds.

Plaintiffs' actual damages are liquidated in the following amounts:  Oginsky -- $19,100; Jalette -- $71,750; Smith -- $83,000; the Budins -- $41,310; Silverman -- $25,000; Thornton -- $47,500; Powell -- $50,000; Santilli -- $38,000; Coleman -- $62,000; Fox -- $115,900; Roscoe -- $35,000; Pavlik -- ; Moody -- $25,000; Lipsius -- $81,200; Caron and Girard -- $30,000; Crossly

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

-- $54,950; Tougas -- $274,000; Rossi -- $32,000; Galotto -- $25,000; Wasserman -- $39,000; Iyer -- $65,000; Hylwa -- $115,900; Weber -- $35,000; the Hagens -- $238,075.  Accordingly, the Plaintiffs' treble damages are also liquidated.

Respectfully submitted,

/s/ Matthew Sarelson
Matthew Seth Sarelson, Esq.
Fla. Bar No. 888281
**SARELSON LAW FIRM, P.A.**
1401 Brickell Avenue, Suite 510
Miami, Florida 33131
305-379-0305
800-421-9954 (fax)
msarelson@sarelson.com


/s/ Paul B. Kunz
Paul B. Kunz, Esq.
Fla. Bar No. 159492
**BANDER & ASSOCIATES, P.A.**
444 Brickell Avenue, Suite 300
Miami, Florida 33131
305-358-5800
305-374-6593 (fax)
paul@bandervisa.com

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com