**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**Case No.: 10-21720-civ-KING/Bandstra**

**ANITA OGINSKY, PATRICIA JALETTE,
ANNE SMITH, PATRICK J. BUDIN,
SUSAN A. BUDIN, RICHARD SILVERMAN,
MICHAEL L. THORNTON, CHARLES L. POWELL,
MARIO SANTILLI, HOWARD COLEMAN,
LORRAINE FOX, JOHN E. ROSCOE, STEVE
PAVLIK, GRANT MOODY, RANDALL
LIPSIUS, KATTY CARON, RENE GIRARD,
SIDNEY CROSSLEY, RAYMOND J. TOUGAS,
JOHN ROSSI, DAVID GALOTTO, STEVEN
WASSERMAN, KRISHEN IYER, WILLIAM
HYLWA, DAVID WEBER, LUTHER J HAGEN
LIBBY A. HAGEN, KEN THALL, RONALD ERB,
KATHLEEN ERB, JOSHUA SWEDLUND,
LOWELL ENLOW, BARBARA ENLOW, PATRICK
SCHNEIDER, CYNTHIA STEELE, LEIGH STEELE,
JANICE KINCAID, TERRY COLE, SUSAN MOSER,
MAUREEN COCKBURN, GEORGE COCKBURN,
PAUL BATOR, ROBERT DIGIORGIO, SCOTT
CORRIDON, JERRY PARK, FRANCES DELUCA,
SAMUEL REEDER, CAMILLE REEDER, NICOLAS
MURO, REGINA MURO, JAMES KRAUSE, MARY
KRAUSE, ERIC WALLACE, CAROLYN WALLACE,
DANIEL R. HARRISON, DONALD SCHAEFER,
DEBORAH SCHAEFER, RHONDA BREWER,
YOUNG K. YOO, SUN S. YOO, ROCCO MORELLI,
CHRISTINE MORELLI, JAMES NEUBER, DENNIS
CALCATERRA, DIANNA CALCATERRA, JO-ANN
DURDOCK, FADY DAKDOUK, JOHN HAY, EUGENE S.
WILLARD, ROBERTA WILLARD, B. KIM DAVIS,
DAVID GRAVES, PATRICIA GRAVES, ROBERT HURST,
SARA HURST, KIM COUTURE, PATRICK O'CONNOR,
ALICIA O'CONNOR, MARTIN GRABOSKI, MARK
LIGHT, CYNTHIA LIGHT, KAROLY SZEP, RENATA
VIDEKI, RICHARD SCOTT, DOUGLAS THACKSTON,
CYNTHIA THACKSTON, KURT MITCHELL, DONALD
WELLS, DENISE BRAITHWAITE,  JOHN WITTBOLD,
PAULETTE WITTBOLD, ROBERT SLOAN, JASON
MARTIN, SYLVIA MARTIN, JUAN CAMPOS, RANDALL
SCAGLIOTTI, JAMES SOUTHCOMB, MIKE SPATARO,**

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

**KRAIG MCGREGOR, PAULA BROADFOOT, LINDA ADAMS, CRAIG ADAMS, JOHN A. FRANK, TAMARA D. FRANK, MIKE CHERNICKY, GREG TWOMEY, ANN COLLARAS, RICH KLANG, THOMAS GULHEANY, JOANNA MYERS, HOPE LAROSE, RICHARD MALEK, DEANNA MALEK, ROBERT CROWE, MICHAEL BROWN, ROBERT RUYAK, JENNIFER RUYAK, RICHARD KESSLER & BRUCE JOHNSON,**
on behalf of themselves and all others similarly situated

       Plaintiffs,

v.

**PARAGON PROPERTIES OF COSTA RICA, LLC** a Florida limited liability company, **PROPERTIES OF COSTA RICA, INC.,** a Florida corporation, **PARAGON PROPERTIES OF COSTA RICA, S.A.,** a foreign for-profit corporation, **ESTEBAN SOTO,** a/k/a ESTEBAN SOTO CAMPOS**, WILLIAM GALE, CHARLES L. NEUSTEIN, P.A.**, a Florida corporation, **LAW OFFICES OF CHARLES L. NEUSTEIN, P.A.**, a Florida corporation, **CHARLES L. NEUSTEIN, PREMIER REALTY SALES OF COSTA RICA, LTDA,** a foreign for-profit corporation, **ALL STAR CONSULTING GROUP, SPL**, a foreign for-profit corporation, **ALL STAR CONSULTING GROUP, INC.** a Florida corporation, **BRUCE GOLDBERG, ALLIANCE FUNDING, LLC**, a Florida limited liability company, **ALLIANCE FUNDING SRL**, a foreign for-profit corporation, **SHELDEN YABLON, MURRAY LINDER, STEPHEN TASHMAN, LYLE WEXLER, LARRY M. WEBMAN, DAVID VALENTINE, PARAMOUNT INTERNATIONAL SALES OF COSTA RICA, S.R.L.**, a foreign for-profit corporation, **PARAMOUNT CONSULTING GROUP, INC.,** a Florida corporation **COSTA RICAN LAND & DEVELOPMENT, INC.**, a Florida corporation, a/k/a COSTA RICA LAND SALES & DEVELOPMENT CORP., **JULIAN L. SIEGEL, CHECKMATE FINANCIAL, INC.,** a Florida corporation, **CHECKMATE REALTY SALES OF COSTA RICA SRL**, a foreign corporation, **CHESTER POTASH, JUDITH GALE, LISA TASHMAN,** a/k/a Lisa Siegel, **LTS MANAGEMENT, INC**. a Florida corporation, **SVE PROPERTIES OF COSTA RICA SRL**, a foreign corporation, **SVE PROPERTIES, INC.**, a Florida corporation, **MARILAND TASHMAN**

2
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

& **JOHN DOES 1-100,**

     Defendants.

_____/

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, on their own behalf and on behalf of all others similarly situated, sue the Defendants.  As their Second Amend Complaint, Plaintiffs assert and allege:

## I.  Introduction, Parties, Jurisdiction, and Venue

1.    This lawsuit arises from a massive land fraud orchestrated by a number of individuals and the entities they controlled.  The entities utilized to effectuate the scheme include Defendants Paragon Properties of Costa Rica, LLC, Properties of Costa Rica, Inc., Paragon Properties of Costa Rica, S.A., Premier Realty Sales of Costa Rica, LTDA, All Star Consulting Group, SPL, All Star Consulting Group, Inc., Alliance Funding, LLC, Alliance Funding SRL, Paramount International Sale of Costa Rica, S.R.L., Paramount Consulting Group, Inc., Cost Rican Land Sales and Development Corp., Checkmate Financial, Inc., Checkmate Realty Sales of Costa Rica S.R.L., LTS Management, Inc., SVE Properties of Costa Rica SRL and SVE Properties, Inc.  These entities will be referred to collectively as "Paragon" or the "Paragon Entities."  The common enterprise undertaken by the Paragon Entities and many of the individual defendants will be referred to collectively as the "Paragon Enterprise."

2.    Paragon marketed and sold lots of vacant and unimproved land in Costa Rica. Paragon required their customers, many of whom are at or near retirement, to make substantial deposits as part of the contract for the sale of the land.  The deposits are purportedly 100% completely refundable in the event that the buyer provides written notice of intent to cancel and request for a refund.  In fact, one of the major selling points is that the deposits are 100% refundable. Paragon promised buyers that it would, at its own expense, build infrastructure of

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

electricity and roads on the vacant land and that it would provide the buyers with title to the property within a reasonable time after the full purchase price was paid.

3.  In addition, the Paragon would solicit additional installment payments beyond the initial deposit by offering a discount off the final purchase price if the purchaser made the installment payment prior to the closing date.  These payments were also purportedly refundable if the transaction did not close.

4.  Paragon, like the paradise it purported to sell, is a myth.  Years after making these promises, the vacant and unimproved land remains vacant and unimproved, the deposit money and the installment payments are gone, and valid deeds have not been provided to those buyers who made their full payments.

5.  On multiple occasions, Paragon promised its buyers refunds of the deposit money, which it is contractually obligated to do, once additional investment money is received from new buyers.  This is a classic Ponzi-scheme.

6.  The contracts, known as Agreements for Deed, are all virtually identical except various Paragon Entities are identified as the "seller."  Some of the Agreements purport to transfer the property directly to the buyers, while other Agreements purport to transfer 100% of the shares of a Costa Rican entity to the buyer.  (*I.e.*, Paragon is purportedly incorporating business entities under Costa Rican law, and then transferring the shares of the Costa Rican company to the buyers in the United States.).  Where the Agreement purports to be a stock transfer, the stock of the Costa Rican corporation and the deed to the property are transferred to Paragon's escrow agent when the deposit is paid (not when the transaction actually closes).  The escrow agent thus retains physical possession of the corporate books and the deed to the property pending full payment by the buyer.  In either case, the Agreement obligates Paragon to make a

4
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

full refund of any monies paid if the buyer fails to make all payments due within five years of the date of the Agreement ("the five-year period").  (*I.e.*, the buyer is, theoretically, given a 100% refund at the end of the five-year period if the buyer is even $1 short of the full purchase price). If the buyer has not paid in full at the conclusion of the five-year period, the land is retained by or re-transferred to Paragon and Paragon is entitled to keep any interest earned on the deposit money and to retain any benefit gained by the deposit money.

7.     Paragon requires deposits, theoretically 100% refundable, of at least $25,000 per lot before Paragon will even allow buyers to visit the property in Costa Rica.  Prospective buyers may not visit the property before making the deposit.

8.     According to the Broward County clerk of courts, there are now at least eight lawsuits pending against the Defendants (or related entities) for the same conduct.  *See Charles Arena v. Paragon Properties of Costa Rica, S.A.*, et al, Case No. 09036826 (Broward County Circuit Court); *Charles Arena v. Paragon Properties of Costa Rica, S.A.*, et al, Case No. 08016933 (Broward County Circuit Court); *Stephen D. Benson, Ph.D. v. Paragon Properties of Costa Rica, S.A.*, et al, Case No. 08047677 (Broward County Circuit Court); *Louis J. Weinstein v. William Gale, et al*, Case No. 09058841 (Broward County Circuit Court); *George Rosenthal v Paragon Properties of Costa Rica, S.A., et al*, Case No. 07010322 (Broward County Circuit Court); *Steven S. Maves v. Paragon Properties of Costa Rica, S.A., et al,* Case No. 09065141 (Broward County Circuit Court); *Sid Crossly v. Paragon Properties of Costa Rica, S.A., et al,* Case No. 09039344 (Broward County Circuit Court); *Oginsky v. Properties of Costa Rica, Inc.*, Case No. 10004326 (Broward County Circuit Court).  Upon information and belief, none of the lawsuits except *Oginsky* is being actively prosecuted (no doubt as a result of Paragon defaulting

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

and closing up shop) and she is represented in that action by the same counsel who represents the Plaintiffs here.

9.      The scheme is clear. Paragon required significant but fully refundable deposits on foreign land, solicited additional payments by offering discounts off the final purchase price; but the neither the land sales or guaranteed refunds ever materialized.  Initially Paragon paid off dissatisfied some clients with new funds received from new clients.  This is a fraud.  Now, however, Paragon has run out of funds to repay disgruntled buyers and has essentially ceased all operations (lawful or otherwise).

10.      Plaintiff, Anita Oginsky, is a resident of Corunna, Michigan.  She purchased a single lot and the seller is identified as "Properties of Costa Rica, Inc." and "Premier Realty Sales of Costa Rica, Ltda."

11.      Plaintiff, Patricia Jalette, is a resident of Massachusetts.  The seller is identified as "Properties of Costa Rica, Inc." and "Premier Realty Sales of Costa Rica, Ltda."

12.      Plaintiff, Anne Smith, is a resident of Vero Beach, Florida.  She purchased numerous lots in two different Paragon projects.  The seller is identified as "All Star Consulting Group, Inc.," a wholly owned subsidiary of All Star Properties of Costa Rica SLR, and "All Star Consulting Group, S.R.L."

13.      Plaintiffs, Patrick A. and Susan J. Budin, are residents of Middletown, Ohio.  The sellers are identified as "Properties of Costa Rica, Inc." and "Premier Realty Sales of Costa Rica, Ltda."

14.      Plaintiff, Richard Silverman, is a resident of Dallas, Texas.  He purchased a lot in the Parrita Gables project on April 20, 2005 and he made a $25,000 deposit to Paragon's escrow agent.  His Agreement for Deed is in the form of a stock transfer.  The seller is identified as

6

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Properties of Costa Rica, Inc., a wholly owned subsidiary of Premier Realty Sales of Costa Rica, Ltda.

15.     Plaintiff, Michael L. Thornton, is a resident of Queen Anne, Maryland.   He purchased one lot in the Playa del Mar project on February 20, 2006 and he made a $35,000 deposit to Paragon's escrow agent.   The seller is identified as "Alliance Funding LLC" and "Alliance Funding SRL."

16.     Plaintiff, Charles L. Powell, is a resident of Mechanicsville, Virginia.   He purchased one lot in the Buena Vista project on March 21, 2007 and he made a $50,000 deposit to Paragon via its escrow agent.   The seller is identified as "Properties of Costa Rica, Inc," and "Premier Realty Sales of Costa Rica, Ltda."

17.     Plaintiff, Mario Santilli, is a resident of Clackamas, Oregon.   He (along with his sister who has since been bought out by Santilli) purchased one lot in the Las Brisas project on April 16, 2007.   He made a $30,000 deposit.   The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

18.     Plaintiff, Howard Coleman, is a resident of Illinois.   On January 25, 2006 he purchased one lot in the Playa Del Sol project.   He made a $35,000 deposit to Paragon via Neustein.   The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

19.     Plaintiff, Lorraine Fox, is a resident of Broward County, Florida.   She purchased four lots in two different projects with Paragon.   The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

20.     Plaintiff, John E. Roscoe, is a resident of Vero Beach, Florida.  He purchased a single lot with Paragon.  The seller is identified as "Paramount International Sales of Costa Rica, SRL" and "Paramount Consulting Group, Inc."

21.     Plaintiff, Steve Pavlik, is a resident of Colorado.  He purchased two units with Paragon.  The seller is identified as "Paramount International Sales of Costa Rica, SRL" and "Paramount Consulting Group, Inc."

22.     Plaintiff, Grant Moody, is a resident of South Carolina.  He purchased a single lot with Paragon.  The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

23.     Plaintiff, Randall Lipsius, is a resident of Pennsylvania.  He purchased two lots with Paragon.  The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

24.     Plaintiffs, Katty Caron and Rene Girard, are residents of Sarasota, Florida.  They purchased a single lot with Paragon.  The seller is identified as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

25.     Plaintiff, Sidney Crossley, is a resident of California.  He purchased three units with Paragon.  The first Agreement (for two units) identifies the seller as "Paramount International Sales of Costa Rica, SRL" and "Paramount Consulting Group, Inc."  The first Agreement also contemplates a stock transfer.  The second Agreement identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

26.     Plaintiff, Raymond J. Tougas, is a resident of Hawaii.  He purchased a total of six units pursuant to three Agreements for Deed.  Two Agreements (totaling three lots) identify the seller as "Paramount International Sales of Costa Rica, SRL" and "Paramount Consulting Group,

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Inc." and one Agreement identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

27. Plaintiff, John Rossi, is a resident of California. He purchased one unit in the Parrita project in April 2005. The seller is identified as "Checkmate Financial, Inc." and Checkmate Realty Sales of Costa Rica SRL."

28. Plaintiff, David Galloto, is a resident of Connecticut. He purchased one unit in January 2005 but has since lost the Agreement for Deed.

29. Plaintiff, Steven Wasserman, is a resident of New York. Wasserman purchased a single lot in April 2006 but has since lost the Agreement for Deed.

30. Plaintiff, Krishen Iyer, is a resident of California. Iyer purchased a single lot in 2007. The Agreement for Deed identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

31. Plaintiff, William Hylwa, is a resident of Connecticut. The Agreement for Deed identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

32. Plaintiff, David Webber, is a resident of New York. Weber purchased a single lot in 2006. The Agreement for Deed identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

33. Plaintiffs, Luther and Libby Hagen, are residents of Minnesota. The Hagens purchased three lots with Paragon. The Agreements for Deed identifies the seller as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

34.     Plaintiff, Ken Thall, is a resident of Florida.  The Agreement for Deed identifies the seller as "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL" signed by Larry Webman.

35.     Plaintiffs, Ronald and Kathleen Erb, are residents of Washington.  The Agreement for Deed identifies the seller as "All Star Consulting Group, Inc." and "All Star Consulting Group, SRL." signed by Bruce Goldberg.

36.     Plaintiff, Joshua Swedlund, is a resident of Minnesota.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

37.     Plaintiffs, Lowell and Barbara Enlow, are residents of Florida.  They purchased a total of 3 units pursuant to three Agreements for Deed.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

38.     Plaintiff, Patrick Schneider, is a resident of North Carolina.  He purchased a total of 3 units pursuant to two Agreements for Deed.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

39.     Plaintiffs, Janice Kincaid, Terry Cole, Cynthia and Leigh Steele, are residents of Pennsylvania.  The Agreement for Deed identifies the seller as "Paramount International Sales of Costa Rica SRL."

40.     Plaintiff, Susan Moser, is a resident of Washington.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

41.     Plaintiffs, Maureen and George Cockburn, are residents of South Carolina.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

42.     Plaintiff, Paul Bator, is a resident of Florida.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

43.     Plaintiff, Robert DiGiorgio, is a resident of Florida.  The Agreement for Deed identifies the sellers as "Checkmate Financial, Inc." and "Checkmate Realty Sales of Costa Rica SRL."

44.     Plaintiff, Scott Corridon, is a resident of Pennsylvania.  The Agreement for Deed identifies the seller as "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL" signed by Larry Webman.

45.     Plaintiff, Jerry Park, is a resident of Washington.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

46.     Plaintiff, Frances DeLuca, is a resident of New Jersey.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

47.     Plaintiffs, Samuel & Camille Reeder, are residents of Oregon.  They purchased a total of 2 units pursuant to two Agreements for Deed.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc." and "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL"

48.     Plaintiffs, Nicolas and Regina Muro, are residents of New York.  They purchased a total of 2 units pursuant to two Agreements for Deed.  The Agreements for Deed identifies the

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc." and "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL"

49.     Plaintiffs, James and Mary Krause and Eric and Carolyn Wallace, are residents of California.   They purchased a total of 2 units pursuant to two Agreements for Deed.   The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

50.     Plaintiff, Daniel R. Harrison, is a resident of California.   He purchased a total of 2 units pursuant to one Agreement for Deed.   The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

51.     Plaintiffs, Donald and Deborah Schaefer, are residents of Delaware.    The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

52.     Plaintiff, Rhonda Brewer, is a resident of Illinois.   The Agreement for Deed identifies the seller as "All Star Consulting Group, Inc." and "All Star Consulting Group, SRL."

53.     Plaintiffs, Young K. and Sun S. Yoo, are residents of Texas.   The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

54.     Plaintiffs, Rocco and Christine Morelli, are residents of Florida.   The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

55.     Plaintiff, James Neuber, is a resident of Wisconsin.   He purchased a total of 4 units pursuant to two Agreements for Deed.   The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

56.     Plaintiffs, Dennis and Diana Calcaterra and Jo-Ann Durdock, are residents of Colorado.  They purchased a total of 2 units pursuant to two Agreements for Deed.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

57.     Plaintiff, Fady Dakdouk, is a resident of Ohio.  He purchased a total of 3 units pursuant to two Agreements for Deed.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc." and "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL"

58.     Plaintiff, John Hay, is a resident of Florida.  He purchased a total of 2 units pursuant to two Agreements for Deed.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

59.     Plaintiffs, Eugene S. and Roberta Willard, are residents of Maryland.  He purchased a total of 3 units pursuant to two Agreements for Deed.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc." the second agreement is unknown.

60.     Plaintiff, B. Kim Davis, is a resident of Virginia.  The Agreement for Deed identifies the sellers as "SVE Properties of Costa Rica SRL" and "SVE Properties Inc."

61.     Plaintiffs, David and Patricia Graves, are residents of Michigan.  They purchased a total of 2 units pursuant to two Agreements for Deed.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

62.     Plaintiffs, Robert and Sara Hurst and Kim Couture, are residents of Florida.  They purchased a total of 2 units pursuant to two Agreements for Deed.  The Agreements for Deed

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

63.    Plaintiffs, Patrick and Alicia O'Connor, are residents of Florida.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

64.    Plaintiff, Martin Graboski, is a resident of Florida.  He purchased a total of 2 units but has since lost the Agreement for Deed.

65.    Plaintiffs, Mark and Cynthia Light, are residents of Florida.  The Agreements for Deed identifies the sellers as "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL."

66.    Plaintiffs, Karoly Szep and Renata Videki, are residents of Rhode Island.  They purchased a total of 2 units pursuant to two Agreements for Deed.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

67.    Plaintiff, Richard Scott, is a resident of New Jersey.  He purchased a total of 4 units pursuant to four Agreements for Deed.  The Agreement for Deed identifies the sellers as "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL"

68.    Plaintiffs, Douglas and Cynthia Thackston, are residents of Pennsylvania.  The Agreements for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

69.    Plaintiff, Kurt Mitchell, is a resident of Nebraska.  The Agreement for Deed identifies the sellers as "Checkmate Financial, Inc." and "Checkmate Realty Sales of Costa Rica SRL."

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

70.     Plaintiff, Donald Wells, is a resident of Washington.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

71.     Plaintiff, Denise Braithwaite, is a resident of Connecticut.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

72.     Plaintiffs, John and Paulette Wittbold, are residents of Florida.  The Agreements for Deed identifies the sellers as "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL"

73.     Plaintiff, Robert Sloan, is a resident of Washington.  He purchased a total of 5 units pursuant to four Agreements for Deed.  The Agreement for Deed identifies the sellers as "Alliance Funding LLC" and "Alliance Funding SRL."

74.     Plaintiffs, Jason and Sylvia Martin, are residents of Florida.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

75.     Plaintiff, Juan Campos, is a resident of California.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

76.     Plaintiff, Randall Scagliotti, is a resident of California.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

77.     Plaintiffs, James Southcomb is resident of New Jersey and Mike Spataro is a resident of Massachusetts.   The Agreement for Deed identifies the sellers as "Checkmate Financial, Inc." and "Checkmate Realty Sales of Costa Rica SRL."

78.     Plaintiff, Kraig McGregor, is a resident of Texas.   The Agreement for Deed identifies the sellers as "Alliance Funding LLC" and "Alliance Funding SRL."

79.     Plaintiff, Paula Broadfoot, is a resident of Arkansas.   The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

80.     Plaintiff, Linda Adams, is a resident of Louisiana.   She purchased a total of 2 units pursuant to two Agreements for Deed.   The Agreement for Deed identifies the sellers as "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL"

81.     Plaintiff, Craig Adams, is a resident of Arkansas.   The Agreement for Deed identifies the sellers as "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL"

82.     Plaintiffs, John A and Tamara D. Frank, are residents of Kentucky.   The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

83.     Plaintiff, Mike Chernicky, is a resident of Florida.   He purchased a total of 3 units pursuant to three Agreements for Deed.   The Agreement for Deed identifies the sellers as "Paramount Consulting Group, Inc." and "Paramount International Sales of Costa Rica SRL"

84.     Plaintiffs, Greg Twomey, Ann Collaras, Rich Klang, and Thomas Gulheany, are residents of New York.   They purchased a total of 2 units pursuant to two Agreements for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

85.     Plaintiff, Joanna Myers, is a resident of Hawaii.  The Agreement for Deed identifies the sellers as "Checkmate Financial, Inc." and "Checkmate Realty Sales of Costa Rica SRL."

86.     Plaintiff, Hope Larose, is a resident of New Jersey.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

87.     Plaintiffs, Richard and Deanna Malek, are residents of California.  They purchased a total of 1 unit but have since lost the Agreement for Deed.

88.     Plaintiff, Robert Crowe, is a resident of Florida.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

89.     Plaintiff, Michael Brown, is a resident of Arizona.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

90.     Plaintiffs, Robert and Jennifer Ruyak, are residents of Pennsylvania.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda." and "Properties of Costa Rica, Inc."

91.     Plaintiffs, Richard Kessler and Bruce Johnson, are residents of Illinois.  The Agreement for Deed identifies the sellers as "Premier Realty Sales of Costa Rica, Ltda.", "Costa Rican Land, Co." and "Properties of Costa Rica, Inc."

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

92.     Defendant, Paragon Properties of Costa Rica, LLC, is a Florida limited liability company with its principal place of business in Miami-Dade County.  According to Sunbiz, its sole member is co-Defendant Esteban Soto.  It had an office on Harding Street in Hollywood, Florida but by all accounts the office is closed and there is no signage on the door.  It did not respond to the Amended Complaint.

93.     Defendant, Properties of Costa Rica, Inc., is a Florida corporation with its principal place of business in Miami-Dade County, Florida.  It is a wholly owned subsidiary of co-defendant Paragon Properties of Costa Rica, S.A and/or co-defendant Premier Realty Sales of Costa Rica, Ltda.  Upon information and belief, Properties of Costa Rica, Inc. is defunct.  It has defaulted on several lawsuits.  It did not respond to the Amended Complaint.

94.     Defendant, Paragon Properties of Costa Rica, S.A., is a Costa Rican company.  Upon information and belief, Paragon Properties of Costa Rica, S.A. is defunct.  Paragon Properties of Costa Rica, S.A. entered into "Independent Sales Organization" contracts with various Florida based corporations (the "ISO").  The ISOs, at least theoretically, were named as the "seller" for the investor's Agreements for Deed but did not actually own title to the property being sold.  The ISOs were offered options to purchase the property from Paragon once the ISO sold property to a third-party investor (*i.e.*, the plaintiffs in this lawsuit).  Paragon's ISOs included the following companies (many of which are defendants):  All Star Consulting, Inc., Alliance Funding, LLC, Checkmate Financial, Inc., Costa Rica Associates, Costa Rica Properties, Inc., Coastal Properties of Costa Rica Corp., SVE Properties, Inc., Pacifica Management, Inc., Internet Responders, Inc., Sunshine Ventures, Paramount Consulting, Inc., Properties of Costa Rica, Inc.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

95.     Defendant, Esteban Soto, a/k/a Esteban Soto Campos, is believed to be a Costa Rican national living in Costa Rica. He is the president, officer and an owner of Paragon. Most of his "signatures" appear to be from a signature stamp. He received money directly from Neustein's trust account. It is also possibly that he is just an employee set up by the other Paragon defendants to sign documents and authorize wire transfers.

96.     Defendant, William Gale, is a United States citizen who resides in Miami-Dade County, Florida. He is the chairman, officer and owner of Paragon. He resides in a house in Miami-Dade County that is titled in his wife's name only. He defaulted in the original state court action brought by Oginsky.

97.     Defendant, Charles L. Neustein, P.A., is a Florida corporation owned and operated by attorney Charles L. Neustein, Esq and based on Miami Beach, Florida. Charles L. Neustein P.A. was the recipient of the buyer's funds, purportedly as "escrow agent" for the corporate defendants. According to the Florida Department of State, the P.A. was dissolved in 1986. All Agreements for Deed identify "Charles L. Neustein, P.A." as the escrow agent, despite being dissolved twenty four years ago.

98.     Defendant, Law Offices of Charles L. Neustein, P.A., is a Florida corporation owned and operated by attorney Charles L. Neustein, Esq. and based on Miami Beach, Florida. Law Offices of Charles L. Neustein, P.A. was the recipient of the buyer's funds, purported as "escrow agent" for the corporate defendants.

99.     Defendant, Charles L. Neustein, is a Florida licensed attorney who owns and operates Charles L. Neustein, P.A. Neustein, through his attorney trust account, was the recipient of the buyer's funds, purportedly as "escrow agent" for the corporate defendants. The term "Neustein" shall collectively refer to Neustein personally and his two corporations.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Neustein was served with a subpoena duces tecum in the state court action but he refused to accept the subpoena and, so far, has not responded to it.  A motion to hold Neustein in contempt for failing to respond to the subpoena had to be filed and Neustein agreed to produce documents on the eve of that hearing.  Neustein has also represented (and may be continuing to represent) co-Defendant Tashman.  Paragon would send potential investors copies of Neustein's resume in an effort to make them feel more comfortable with the entire transaction.  Paragon specifically emphasized that Neustein was a judge.  According to his resume, Neustein served as municipal judge for the City of North Miami Beach for one year.  Neustein was routinely wiring money from his trust account to accounts other than Paragon's operating account.

100.    Defendant, Premier Realty Sales of Costa Rica, Ltda, is a foreign for-profit corporation.  It is allegedly the sole owner of co-Defendant Properties of Costa Rica, Inc.

101.    Defendant, All Star Consulting Group, SRL, is a foreign for-profit corporation.  It claims to be the sole parent of co-Defendant All Star Consulting Group, Inc.

102.    Defendant, All Star Consulting Group, Inc., is a Florida corporation, now dissolved, that was based in Miami, Florida.

103.    Defendant, Bruce Goldberg, was the president and owner of All Star Consulting Group, Inc.  Goldberg now owns various corporations that operate out of similar locations but appear to be shell corporations.

104.    Defendant, Alliance Funding, LLC, is a dissolved Florida limited liability company based in Hallandale Beach, Florida.  It has two members – co-Defendants Murray Linder and Shelden Yablon.  Purportedly is it a wholly owned subsidiary of Alliance Funding SRL.  It did not respond to the Amended Complaint.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

105.    Defendant, Alliance Funding, SRL, is a Costa Rican corporation that owns Alliance Funding LLC.

106.    Defendant, Shelden Yablon, was a manager and owner of Alliance Funding, LLC. It is believed that he resides in South Florida.

107.    Defendant, Murray Linder, was the managing member and owner of Alliance Funding, LLC.  It is believed that he resides in South Florida.

108.    Defendant, Stephen Tashman, was and remains a principal member of the conspiracy although his exact role is currently unknown.  He held himself out as an officer or manager of Paragon and interacted routinely with the Plaintiffs and other putative class members.  He also referred to himself as a consultant to and spokesman for Paragon.  He is a resident of South Florida.  He has a long history of fraudulent business activity in South Florida, most notably being sued by the Federal Trade Commission and being ordered to pay $28 million for a fraudulent calling card scheme.  *See Federal Trade Commission v. Steven I. Tashman*, Case No. 98-civ-07058 (S.D. Fla.) (Ryskamp, J.).  Judge Ryskamp permanently enjoined Tashman from engaging in any business activity and requiring Tashman to provide any prospective business partner or investor with a copy of the injunction.  *Id*. at D.E. 210.  Tashman was also sued by the SEC for fraudulently selling partnerships in an ostrich farming business.  He is notorious for keeping his name off of corporate books and documents and for hiding his role in various entities.  (For example, he is widely believed to be the owner of Junction Financial Corporation, but he is not on the corporate books at all).  Tashman's counsel in the FTC enforcement action was the law firm of Tew Cardenas, the same firm that is counsel to Paragon. Tashman's counsel in a prior bankruptcy was Charles Neustein, Paragon's "escrow agent." Tashman also uses Michael Fingar as his legal counsel, and Fingar is also identified as

21
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

representing Paragon.  This is further proof that Tashman is the *de facto* head (or at least one of the major players) of the Paragon Enterprise.

109.    Defendant, Lyle Wexler, was Paragon's Director of Operations.  He is a resident of South Florida.  He had authority to enter into contracts on behalf of Paragon.  Upon information and belief he actively participated in the conspiracy to defraud investors.  He has a long history of fraudulent business activity, most notably being in sued in 2005 by the Commodity Futures Trading Commission for unlawfully selling and marketing foreign currencies. *See Commodities Futures Trading Commission v. Larry M. Webman, Lyle Wexler, et al*, Case No. 05-civ-4819 (S.D.N.Y.).  One of his co-conspirators in the CFTC enforcement action was co-Defendant Larry M. Webman.

110.    Defendant, Larry M. Webman, was an active participant in the Paragon enterprise.  He routinely held himself out as an officer or manager of Paragon and he routinely communicated with investors.  He is a resident of South Florida.  He has a long history of fraudulent business activity, most notably being sued in 2005 by the Commodity Futures Trading Commission for unlawfully selling and marketing foreign currencies.   Webman was the ringleader of the conspiracy, and one of his co-conspirators in the CFTC enforcement action was co-Defendant Lyle Wexler.  (The 2005 lawsuit against Webman accused him of violating a consent judgment entered against him in 1982, *i.e.*, Webman has a 30 year history of fraud).  Webman was also sentenced to 18 months in federal prison for wire fraud and for engaging in a scheme to defraud.  *See United States v. Larry Webman, et al,* Case No. 91-cr-00917 (S.D. Fla.) (Graham, J.).  Webman was recently sued by the Securities and Exchange Commission for selling fraudulent investments in violation of SEC regulations and for soliciting over $6 million in fraudulent investor monies from senior citizens.  *See S.E.C. v. Larry Webman, et al*, Case No.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

06-civ-22440 (S.D. Fla.) (Lenard, J.).  Webman failed to answer the complaint and Judge Lenard assessed a $400,000 penalty on Webman in 2008.

111.    Defendant, David Valentine, is the current Director of Operations for Paragon. He replaced Bob Street, who replaced Lyle Wexler.  He is a resident of South Florida, although it is highly likely that he has recently relocated to Costa Rica.  As recently as April 2010, Valentine was still interacting with investors and promising them that the projects were still on as planned and that they should send additional money to Paragon.

112.    Defendant, Paramount International Sales of Costa Rica, SRL, is a Costa Rican corporation that purportedly owns co-Defendant Paramount Consulting Group, Inc.

113.    Defendant, Paramount Consulting Group, Inc., is a dissolved Florida corporation with its principal place of business in Miami-Dade County, Florida. Co-Defendant Webman is its president.  It did not respond to the Amended Complaint.

114.    Defendant, Costa Rican Land & Development Inc., is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.  Its president is Julian L. Siegel. Siegel is the son-in-law of co-Defendant Tashman.  Siegel is aware of his father-in-law's history of fraud and he is listed as an officer of several corporations that are believed to be fronts for Tashman.  Costa Rican Land & Development, Inc. is also known as Costa Rica Land Sales & Development Corporation.  The second name is the name identified on its letterhead, but it is not a registered Florida corporation.  The company is the "designated" contractor for Paragon.  Its registered agent, like most of the Paragon corporate Defendants, is Jeffrey Tew.  At one point its registered agent was Michael Fingar – the attorney who, like Tew, represented Tashman in the FTC enforcement action and represents Paragon.  Costa Rican Land & Development received money directly from investors.  It did not respond to the Amended Complaint.

23
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

115.    Defendant, Julian L. Siegel, is the president of Costa Rican Land & Development, Inc.  He is a resident of South Florida.  He is co-Defendant Tashman's son-in-law.  Siegel has known about his father-in-law's fraudulent business activity and has been involved in them as well.  According to bank records, Siegel's Capital One credit card was routinely paid via funds from the Paragon operating account.  He received funds directly from Neustein's trust account.

116.    Defendant, Checkmate Financial, Inc., is a dissolved Florida corporation that sold units in Paragon.  It claims to be a wholly owned subsidiary of co-Defendant Checkmate Realty Sales of Costa Rica, SRL.  It is owned and operated by co-Defendants Chester Potash and Melvin Webman.  Checkmate Financial was used to run a check cashing fraud scheme.  Most of the owners and operators, including several defendants here, were indicted for conspiracy to commit mail and wire fraud.  *See United States v. Melvin Webman, et al* Case No. 06-cr-20069 (S.D. Fla.) (Altonaga, J.).  Checkmate Financial's corporate vice president and secretary, Melvin Webman, pled guilty to conspiracy to commit mail and wire fraud.  Judge Altonaga sentenced him to 8 years.  Melvin Webman is the brother of co-Defendant Larry Webman.  The Webman brothers had conspired before and were indicated in other matters together.  Melvin Webman died in prison.  It did not respond to the Amended Complaint.

117.    Defendant, Checkmate Realty Sales of Costa Rica, SLR is a foreign corporation that sold units in Paragon.

118.    Defendant, Chester Potash, was the owner and chief executive officer of Checkmate Financial.  On July 7, 2006, Potash pled guilty to conspiracy to commit mail and wire fraud.  Judge Altonaga sentenced him to 8 years in federal prison.  He is a resident of FCI – Miami.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

119.     Defendant, Judith Gale, is the wife of co-Defendant William Gale.  The marital home is titled in her name only.  Upon information and belief, other marital assets, or assets of Gale, are titled in her name.  According to bank records, Judith Gale's American Express card was routinely paid electronically out of Paragon's corporate account.  She is the recipient of fraudulent transfers, and all of her assets are subject to seizure for the benefit of the Plaintiffs.

120.     Defendant, Lisa Tashman, a/k/a Lisa Siegel, is the daughter of co-Defendant Steve Tashman and the wife of co-Defendant Julien Siegel. According to bank records, Lisa Tashman's American Express card was routinely paid electronically out of Paragon's corporate account.  She is the recipient of fraudulent transfers, and all of her assets are subject to seizure for the benefit of the Plaintiffs.  She is also the owner of co-Defendant LTS Management, Inc. She received money directly from Neustein's trust account.  She is a teacher in Broward County, Florida.

121.     Defendant, LTS Management Corporation is a Florida corporation based in South Florida.  It is owned and/or operated by co-Defendant Lisa Tashman, who serves as President. LTS is the managing and controlling member of Paragon Properties of Costa Rica LLC.  LTS's registered agent is Jeffrey Tew.  Upon information and belief, LTS Management is actually being controlled by co-Defendant Stephen Tashman.

122.     Defendant, SVE Properties of Costa Rica, SRL is a Costa Rican company that allegedly owns SVE Properties, Inc.

123.     Defendant, SVE Properties, Inc. is a dissolved Florida corporation based in Deerfield Beach, Florida.  SVE was an ISO for Paragon.

124.     Defendant, Mariland Tashman, is a resident of Broward County, Florida. Plaintiffs have been informed that she is the former wife of Stephen Tashman, however she

25
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

informed Plaintiffs' process server that she is the aunt of Mr. Tashman.  She performed no services for Paragon but received funds from the Paragon operating account.

125.    Defendants, John Does 1-100, are yet unidentified corporations, entities, accountants, escrow agents, banks, lenders, investors, law firms and other third-parties who knew or should have known of Paragon's fraud.  Plaintiffs have identified several individuals and other corporations that are likely unnamed co-conspirators, and Plaintiffs will amend this Complaint as warranted.

126.    Plaintiff is unaware of the exact corporate and legal relationship between and among the corporate co-defendants, but upon information and belief, the entities are legally related to each other.  Co-defendants Soto, Gale, Tashman, Wexler, Webman and Siegel are the persons behind all these corporate entities and are the persons most responsible for the failed development in Costa Rica and the fraudulent business practices associated with the company. The corporate books to the various Paragon corporate entities are not consistent with the information publicly available with the Division of Corporations and the corporations did not respect the corporate form.

127.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1336 (supplemental jurisdiction over state law claims).  In addition, the Court has diversity jurisdiction over the state law claims pursuant to the Class Action Fairness Act because at least one plaintiff and one defendant are diverse, the amount at issue exceeds $5 million, there are over 100 Named Plaintiffs, and several of the Named Plaintiffs have claims exceeding $75,000.00.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

128.    Venue is proper because the majority of the Defendants are based in Miami-Dade County, Florida and because the escrow agent who handled the fraudulent transactions resides in Miami Beach, Florida.

129.    Florida law governs this lawsuit.   The Agreements for Deed do not contain a choice of law provision.

130.    Plaintiffs have retained counsel and are obligated to compensate them.

131.    All allegations are made against all of the co-Defendants individually and as a single conspiracy, unless otherwise noted.  All co-Defendants engaged in a conspiracy to defraud the Plaintiffs and putative class members.   They are all jointly and severally liable to the Plaintiffs and are also responsible for making the Plaintiffs whole.

132.    The co-Defendants are all part of a single enterprise known as Paragon.  The big picture is clear, the details remain hidden.

## II.  Facts: The Named Plaintiffs' Transactions

133.    Approximately 900 to 1,100 individuals were victimized by the Paragon scheme. The transactions always involved the same form contracts, substantial upfront payments, and the guarantee that all monies paid were 100% refundable if the transaction did not close – a promise that Paragon knew it could not keep because it was transferring the funds it received to its principals and their designees, thus intentionally undercapitalizing itself.

134.    Five years after Paragon started marketing its lots, most of the transactions have not closed, and the guaranteed refunds are not forthcoming.

135.    In the few transactions that did close, the buyers were provided what appear to be worthless documents.  For example, Named Plaintiff Paulette Wittbold retained a Costa Rican attorney to determine if the land she paid for had been transferred to her from Paragon.  It was

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

not.  Based upon an inspection of Costa Rican land and corporate records, her Costa Rican

counsel concluded as of August 4, 2010:

> You have been sold a corporation that is currently hollow, has no assets registered to it and the legal representation was never transferred to you.  As your intent was to the owner NOT of a corporation (any) but ultimately of the assets that the corporation you purchased was to hold, this would conform FRAUD under our system.  It would seem that you where presented with a transfer process for the land that was normal under our system (purchasing a corporation that supposedly owned and asset), received the corporate books but that the asset was never transferred to this corporation, making it impossible to receive title to the land until Paragon decided to complete the process.

(Ex. A hereto, at page 3.)

136.    The Named Plaintiffs' transactions demonstrate how the scheme worked:

### Anita Oginsky

137.    Anita Oginsky signed an Agreement for Deed on October 31, 2007 with

Properties of Costa Rica.  *See* Composite Exhibits B-L.  The Agreement was for Lot 29 on

Paragon's Sunset Bay project.  Oginsky paid a deposit of $29,900 to Paragon via Neustein.  The

total purchase price was $69,900.

138.    The Agreement states that all monies paid are 100% refundable if the transaction

does not close.  This statement is false and was false at the time it was made.  This false

statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire

prior to execution of the Agreement for Deed.

139.    On February 21, 2008, Oginsky requested a timely refund of the deposit money.

The request for a refund went unanswered.  On the same day, Paragon, through Soto, sent

Oginsky a letter confirming the purchase.

140.    On August 7, 2008, Oginsky sent a demand letter to Paragon via its counsel, Tew

Cardenas.  On August 16, 2008, and in response to the demand letter, Paragon entered into a

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

settlement agreement with Oginsky and agreed to return the deposit in several payments.  The settlement agreement is attached as Composite Exhibits B-L.  Paragon was represented in the settlement by the Tew Cardenas law firm.

141.    Paragon made the first two payments pursuant to the settlement agreement, and paid part of the third and final payment.  According to the terms of the settlement agreement, the release was conditioned on full payment.  Thus, Oginsky's release has no legal consequence.

142.    Oginsky filed suit in Broward County Circuit Court against the first four named defendants here on January 29, 2010.  Properties of Costa Rica, Inc. has since defaulted by failing to respond.  Gale failed to respond as well and a default judgment is imminent.  (The Costa Rican entity and national were not served).  By all accounts, the enterprise known as Paragon is defunct.

143.    Oginsky is owed $19,100 in actual damages.

### Patricia Jalette

144.    Patricia Jalette signed an Agreement for Deed on or about January 24, 2007 with Properties of Costa Rica, Inc.  (The signed Agreement for Deed is in the exclusive possession, custody and control of the Defendants, and accordingly Jalette is seeking restoration of a lost document).  An unexecuted copy of the Agreement for Deed is attached as Composite Exhibits B-L.  She purchased Lot 42 in the Playa del Sol project.  The total purchase price was $85,000.00.

145.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

29
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

146.   She placed a deposit of $39,500.00 with Neustein contemporaneously with the execution of the Agreement for Deed.   The deposit was made via money order from Massachusetts to Florida.

147.   On March 7, 2007, Paragon offered her "an opportunity" to take title to the property sooner than anticipated if she agreed to pay the remaining balance due ($45,500), minus a 25% discount, in three payments.  Jalette agreed and the parties agreed that Jalette would make three additional payments of $11,250 within the next year.

148.   On March 16, 2007, Paragon agreed to lower the final (third) payment by one-thousand dollars ($1,000).

149.   In March 2007 she made an additional payment of $11,250.00

150.   In July 2007 she made an additional payment of $11,250.00

151.   In September 2007 she made an additional payment of $10,250.00

152.   Jalette made total payments of $71,750, all in 2007.

153.   Jalette paid the purchase price, as modified by the parties, in full.

154.   According to the Agreement for Deed, paragraph 2, Paragon was obligated to provide Jalette with a deed to the property at the time that she paid the balance in full.  Paragon told Jalette that it would convey the deed in six to eight weeks from the time the balance was paid in full.

155.   Jalette has not been provided a deed to the property.  On December 17, 2007, Jalette was provided documents purportedly to be corporate books for "Coral Fantasy, S.R.L," a Costa Rican corporation.  (Jalette's Agreement did not contemplate a stock transfer).

156.   According to the Agreement for Deed, paragraph 3, Paragon was obligated to put in place infrastructure of roads and electricity within 24 months of January 24, 2007.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

157.    As of today, no infrastructure is in place and any improvements to the land are minimal at best.

158.    Jalette has repeatedly attempted to contact Paragon to discuss the situation, but Paragon has not responded and it is believed has entirely shut down operations.

159.    Jalette is owed $71,750 in actual damages.

### Anne Smith

160.    Anne Smith signed two Agreements for Deed with Paragon.  The first Agreement for Deed is dated February 28, 2006, and was for Lots 5, 15, 35, 36, and 45 of Paragon's Punta Verde project.  Smith made a $125,000 deposit by depositing funds with Neustein.

161.    The second Agreement for Deed is dated March 2, 2006 and was for Lots 66 and 67 of Paragon's Playa del Sol project.  *See* Composite Exhibits B-L.  Smith made a $70,000 deposit by depositing funds with Neustein.

162.    The Agreements state that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

163.    The "seller" for the Smith Agreements for Deed is identified as All Star Consulting Group, Inc.

164.    On August 25, 2006, Smith met Gale and Gale signed an amendment to extend Smith's refund request period to January 31, 2007.

165.    On or before October 4, 2006, Smith requested a refund of the entire $195,000 deposit.  The request for a refund was acknowledged by Soto.

166.    On December 22, 2006, Smith received $25,000 as a partial refund.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

167.    In January 2007, Lyle Wexler, purporting to represent Paragon, convinced Smith to transfer the remaining deposit funds ($170,000) to "better" lots at Paragon's Palms North project with an additional six month refund request period.

168.    On or before April 18, 2007, Smith requested a full refund of the remaining $170,000 on deposit for the Palms North project.

169.    On May 11, 2007, and again on August 17, 2007, Smith received checks for $25,000 as a partial refund.

170.    On September 19, 2007, Smith again requested a refund of the remaining deposit money through Soto, Gale and Neustein.

171.    On October 27, 2007 and November 5, 2007 Smith received checks for $12,500 for a partial refund.  Smith received an addition $12,000 on November 20, 2007.

172.    As of November 20, 2007, Smith is due an $83,000 refund from Paragon.

173.    Multiple requests to Gale, Soto and Neustein have gone unanswered, and it is believed that Paragon had completely shut down operations.

### Patrick A. and Susan J. Budin

174.    The Budins purchased two lots with Paragon – Lot 4 in the Ocean Palms project and Lot 69 in the Buena Vista project. Lot 4 was purchased on February 7, 2007 and the Budins paid a deposit of $45,900 to Neustein.  *See* Composite Exhibits B-L. (Budin Agreement for Deed).

175.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

176.    On April 17, 2007, Lyle Wexler, Paragon's Director of Operations, sent the Budins a letter indicating that one of Costa Rica's major banking institutions appraised the property for several times its original purchase price.  The actual bank is unidentified.

177.    After visiting the property, the Budins decided they wanted a full refund.  The Budins sent a written and timely demand for a refund.

178.    Paragon refunded the Budins the full $49,500 for Lot 69.  The refund was paid on two separate checks with different dates.

179.    Paragon refunded the Budins only $4,590 for Lot 4.  This constitutes a refund of only 10% of the deposit.  The Budins are owed $41,310 from Paragon constituting the remainder of the deposit on Lot 4.

180.    Multiple letters to Gale, Soto, Neustein and Paragon's attorney, Jeffrey Tew, went unanswered.

### Richard Silverman

181.    Silverman signed an Agreement for Deed dated April 20, 2005. *See* Composite Exhibits B-L.  He purchased a lot in the Parrita Gables project and paid a $25,000 deposit to Neustein.   Unlike the other named Plaintiffs, Silverman's Agreement contemplated a stock transfer.

182.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

183.    On February 21, 2007, Silverman requested a full refund of his deposit.  The refund request was made because Silverman learned (via a site inspection and through third-

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

parties) that Paragon had failed to fulfill its obligations to make certain improvements to the property and that the property was unmarketable.  Simply put, the land was still just dirt.  On March 12, 2007, Paragon, through Soto, informed Silverman that the lack of improvements was due to the Costa Rican government.  He also reminded Silverman that he would be entitled to a full refund at the end of the five-year period.

184.    On April 20, 2010, Silverman send a letter to Paragon and requested a full refund of his deposit.  April 20, 2010 was the end of the five-year period.  To date, Paragon has not responded to the request for a refund.  It is believed that Paragon is completely defunct.

### Michael L. Thornton

185.    Thornton signed an Agreement for Deed on February 20, 2006 for Lot 5 in the Playa del Mar project.  *See* Composite Exhibits B-L.  (Thornton swapped Lot 25 for Lot 5 at a later date and without any additional consideration).  He made a $35,000 deposit to Paragon via Neustein.  The seller is identified as Alliance Funding LLC and Alliance Funding SRL.

186.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

187.    On December 19, 2006, Thornton made a written demand for refund of his deposit money.  Paragon, through co-Defendant Lyle Wexler, Director of Operations, rejected the refund request as being untimely, but he reiterated that Thornton would receive a complete refund at the end of the five-year period.

188.    On December 26, 2006, Thornton was encouraged by Wexler to pay off the balance due in exchange for a significant discount on the purchase price.  On January 16, 2007,

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Thornton paid an additional $12,500 to Paragon via Neustein in exchange for a $12,500 discount on the total purchase price (from $85,000 to $72,500).  Thornton's balance was (and remains) $25,000.

189.    Thornton has repeatedly contacted Paragon to discuss the status of the project, but Paragon, through co-Defendant David Valentine, has not explained the status and has stalled on providing updates.  Valentine also told Thornton that Gale had secured Italian investors to fund completion of the project.

190.    Thornton has $47,500 deposited with Paragon and wants the money returned.

### Charles L. Powell

191.    Powell purchased Lot 96 (later swapped for Lot 44) in Paragon's Buena Vista project on March 21, 2007.  *See* Composite Exhibits B-L.  The purchase price was $100,000 and Powell made a $50,000 deposit via Neustein.

192.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

193.    On May 25, 2007, Powell visited the property and was given a $15,000 credit off the purchase price for travel expenses.

194.    On May 29, 2007, Powell made a written and timely demand for a refund of the $50,000 deposit.

195.    On June 4, 2007, Paragon, through Soto, rejected Powell's request for a refund because Powell completed a "client evaluation" that, in Paragon's view, constituted ratification of the Agreement and a waiver of the right to cancel.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

196.    On July 3, 2007, Powell retained counsel to seek a refund of the $50,000 and a demand letter was sent to co-Defendants Soto and Wexler.

197.    On August 17, 2007, Paragon, through Soto, reiterated that the fact that Powell completed a "client evaluation" constitutes a waiver of the right to a refund.

198.    After Paragon refused to refund the money, Paragon discounted Powell's purchase price to the point that his $50,000 deposit constituted payment in full.

199.    On February 22, 2008, Bob Street, Paragon's Director of Operations (post-Wexler), informed Powell that the remaining balance would be eliminated and that Paragon was "in the process of obtaining your title."

200.    On May 29, 2008, Paragon "confirmed" the purchase and informed Powell that the property was being transferred into a Costa Rican SRL that would be assigned to Powell. (Powell's Agreement for Deed did not contemplate a stock transfer).

201.    Paragon has not returned Powell's $50,000 and has not provided a deed (proper or otherwise).

202.    Powell's calls to Paragon have gone unanswered, except Paragon indicated that it was receiving new investment money from Italy.

**Mario Santilli**

203.    On April 16, 2007, Santilli (along with his sister who has since been bought out) purchased Lot 68 in the Las Brisas project.  *See* Composite Exhibits B-L.  The purchase price was $60,000 and he paid a $30,000 deposit to Paragon via Neustein.

204.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false

36
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

205.    On October 17, 2007, Santilli made an additional $4,000 payment to Paragon via Neustein.

206.    On April 7, 2008, Santilli made an additional $4,000 payment to Paragon via Neustein.

207.    On March 2, 2010, Paragon contacted Santilli via David Valentine about an opportunity to take advantage of a $7,750 discount off the purchase price if he would only wire Paragon an additional $6,000 to its Wachovia account.  Santilli was given 3 days to decide.

208.    On May 1, 2010, Santilli made a written demand for a refund of his $38,000.  He routinely attempted to contact Paragon but was unsuccessful.   The May 1 letter went unanswered.

209.    Based upon his last conversation with Valentine, which occurred approximately one month ago, Santilli believes that Gale has recently left the country and that various liens have been placed on the property in Costa Rica.

210.    Santilli is owed $38,000 in actual damages from Paragon.

### Howard Coleman

211.    Coleman purchased one lot in the Playa Del Sol project on January 25, 2006.  *See* Composite Exhibits B-L.  He paid a $35,000 deposit via Neustein.  The total purchase price was $85,000.

212.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

213.    On June 24, 2008, Coleman was offered an "opportunity" to expedite the transfer of the property.  He was offered a 25% discount on the balance ($50,000), in exchange for paying off the discounted balance ($37,500) by the end of 2009.  Coleman declined this offer.

214.    Coleman was offered another opportunity to take 25% off the balance due ($50,000) in exchange for an additional $10,000.  On June 28, 2008, Coleman paid an additional $10,000, leaving a new balance of $27,500.

215.    In January 2009, Coleman was provided another opportunity to take $10,500 off the new balance ($27,500) in exchange for Coleman paying $17,000 to satisfy the entire obligation.  Coleman agreed and by January 29, 2009, the full purchase price, after the discounts, was paid.

216.    On January 29, 2009, Coleman received a letter from Paragon, via Soto, confirming that full payment was made and that the funds had been released from escrow.  He was told that title to "his" lot was being transferred to an SRL and assigned to him.

217.    Coleman did not receive a deed (proper or otherwise).

218.    Coleman is owed $62,000 in actual damages.

### Lorraine Fox

219.    Fox purchased a total of four lots in two projects.

220.    She purchased Lot 21 in the Playa Del Sol project on April 28, 2006.  *See* Composite Exhibits B-L.  The purchase price was $60,000.  She paid a $25,000 deposit via Neustein.  On July 17, 2006, Paragon, at Fox's request, swapped Lot 8 for Lot 21.  On

38
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

September 28, 2007, Paragon offered Fox an "opportunity" to receive a 25% discount off the balance ($35,000) if she paid the discounted balance ($26,250) within three weeks.

221.    She purchased Lot 73 in the Las Brigas project on August 14, 2006.  *See* Composite Exhibits B-L.  The purchase price was $55,000.  She paid a $25,000 deposit via Neustein.

222.     She purchased Lot 60 in the Ocean Palms project on August 18, 2006.  *See* Composite Exhibits B-L.  The purchase price was $50,000.  She paid a $25,000 deposit via Neustein.

223.    She purchased Lot 91 in the Ocean Palms project on September 29, 2006.  *See* Composite Exhibits B-L.  The purchase price was $85,000.  She paid a $35,900 deposit via Neustein.

224.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

225.    On March 25, 2009, Fox made an additional payment of $5,000 via credit card to co-Defendant Costa Rican Land & Development.  At the time, she did not know who this company was, it merely showed up on her credit card statement.  Thus, the recipient of the $5,000 was actually the purportedly independent construction company that was giving discounts to Paragon.  Unbeknownst to her, Costa Rican Land is owned and operated by Tashman's son-in-law.

226.    Fox is owed $115,900 in actual damages.

**John E. Roscoe**

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

227.     Roscoe purchased Lot 62 in the Playa Del Mar project on December 30, 2005. *See* Composite Exhibits B-L.  The seller was Paramount International Sales of Costa Rica SRL and Paramount Consulting Group, Inc.  The purchase price was $85,000 and Roscoe paid a $35,000 deposit via Neustein.

228.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

229.     On April 19, 2006, Roscoe was offered an opportunity by Paragon, through Wexler, to receive 25% off the balance ($50,000) if Roscoe agreed to pay the discounted balance ($37,500) in full immediately.  Wexler's letter referenced another letter from Paragon's "designated" construction company indicating that the construction company was offering Paragon a 15% discount.

230.     The referenced letter was an October 10, 2005 letter from co-Defendant Costa Rica Land Sales & Development Corporation to Gale.  (The letter from the contractor to Gale thus predates Roscoe's purchase of the property).  Costa Rica Land Sales offered Paragon a 15% discount on the cost of construction.  The letter was signed Julian L. Siegel.  Siegel is actually co-Defendant Tashman's son-in-law.

231.     Roscoe did not accept the opportunity.  (The "opportunity" was presented to Roscoe on several other occasions).

232.     On or about May 1, 2006, Roscoe received a letter from Costa Rica Land Sales indicating that all permits have been obtained and that the building of the infrastructure could commence immediately.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

233.   On January 15, 2008, Roscoe sent a written demand for a refund of his $35,000 deposit.

234.   Roscoe is owed $35,000 in actual damages from Paragon.

**Steve Pavlik**

235.   Pavlik purchased two units with Paragon.  The first Agreement for Deed was dated February 2, 2006 and was for Lot 49 in the Playa del Sol project.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and Pavlik paid a $35,000 deposit to Paragon via Neustein.

236.   The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

237.   After viewing Lot 49, Pavlik hated the lot and the project and made a timely and written demand for a refund.  Paragon, through Wexler, told Pavlik that it would take months to get a refund and that he offered Pavlik a better lot without any additional compensation.  The parties agreed to transfer the lot to a lot in the Ocean Palms project.

238.   The second Agreement for Deed was dated October 10, 2006 and was for Lot 80 in the Ocean palms project.  *See* Composite Exhibits B-L.  The purchase price was $80,000 and Pavlik made a $35,900 deposit with Paragon via Neustein.

239.   The Agreement states that all monies paid are 100% refundable if the transaction does not close.  .  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

240.    To date, no infrastructure has been put in place.   Paragon has since stopped communicating with Pavlik.  Refund requests have gone unanswered.

241.    Pavlik is owed $65,900 in actual damages.

## Grant Moody

242.    Moody purchased a single lot in the Las Brisas project on January 12, 2005.  *See* Composite Exhibits B-L.  The purchase price was $60,000.  Moody paid a $25,000 deposit to Paragon via Neustein.

243.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

244.    On February 8, 2006, Moody was offered an opportunity to take title to the property on an expedited basis.  Paragon, through Les Masters, offered Moody a 15% discount off the remaining balance in exchange for Moody immediately paying off the discounted balance in full.  Moody declined the opportunity.

245.    On January 13, 2010, one day past the five-year period, Moody made a timely and written request for a refund of his deposit money.  That request went unanswered.

246.    Moody is owed $25,000 in actual damages.

## Randall Lipsius

247.    Lipsius purchased two lots with Paragon.  The first Agreement for Deed was signed in February 2005 and was for Lot 70 in the Brisas project. Lipsius does not have a copy of the Agreement, but it is in the material same format as the Agreement for Deed on his second lot.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Other documents confirm the amount and material terms of the first and lost Agreement.  The purchase price was $60,000 and Lipsius made a $25,000 deposit to Paragon via Neustein.

248.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

249.    In January 2006, Lipsius was offered an opportunity to receive a 15% discount off the balance due ($35,000) in exchange for immediately paying the discounted balance ($26,250).  Lipsius agreed and paid the discounted balance in full.

250.    Sometime after the first Agreement was signed but before May 15, 2006, Lipsius and Paragon swapped Lot 70 out and replaced it with Lot 28.

251.    On May 15, 2006, Lipsius' purchased was confirmed and he was provided corporate books to Van Hollen, SRL.  Unbeknownst to him, Paragon created Van Hollen SRL, purportedly for the benefit of Lipsius.  Van Hollen SRL is actually owned and controlled by Inri Robles Kelly and Vivian Soto.  In theory, Paragon's plan was to create Van Hollen SRL, then transfer the shares of the SRL to Lipsius, and then transfer the property to the SRL.  None of this was contemplated in the Agreement for Deed.

252.    On February 11, 2008 Lipsius signed the second lot.  The second lot was lot 144 in the Sunset Bay project.  *See* Composite Exhibits B-L.  The purchase price was $59,925 and Lipsius made a deposit of $17,950 to Paragon via Neustein.

253.    In June 2008 Lipsius paid an additional $6,000 on lot 144.

254.    In July 2009 Lipsuis paid an additional $6,000 on lot 144.

255.    Lipsuis is owed $81,200 in actual damages.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

**Katty Caron and Rene Girard**

256.    Caron and Girard purchased a single lot in Paragon's Ocean Pointe project on July 14, 2005.  *See* Composite Exhibits B-L.  The purchase price was $75,000 and they paid a $30,000 deposit to Paragon via Neustein.

257.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

258.    The rejected several opportunities to pay off the balance for a discount.

259.    On April 29, 2010 they requested a refund of the deposit.  The refund request went unanswered.

260.    Caron and Girard are owed $30,000 in actual damages.

**Sidney Crossley**

261.    Crossley purchased a total of three units from Paragon.  The first two units were purchased via an Agreement for Deed dates October 27, 2004.  *See* Composite Exhibits B-L.  The Agreement contemplated a stock transfer.

262.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  .  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

263.    At some point Crossley received what appears to be a corporate stock document in the name of a Costa Rican entity, Howard Realty, SRL.  Crossley did not open or approve this corporation.

44
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

264.    The third unit was purchased via a second Agreement for Deed dated February 13, 2008.  *See* Composite Exhibits B-L.  This Agreement was for Lot 3 in the Sunset Bay project.  The purchase price was $89,925.  Crossley made a $29,950 deposit to Paragon via Neustein.  Crossley's second Agreement contemplates a 360 day rescission period (as opposed to 180 days for other investors).

265.    On September 4, 2008, Crossley made a timely written demand for a refund of his deposit on Lot 3 in Sunset Bay.  The request was made to Paragon and Neustein.

266.    In October 2008, Crossley and Paragon agreed that $25,000 of the deposit money from the first two lots would be applied to Lot 3 in Sunset Bay.  Lot 3's deposit was thus $54,950.

267.    On February 10, 2009, Crossley made a second timely written demand for a refund of his deposit on Lot 3.  The request went unanswered.

268.    Crossley has a default judgment of $54,950 against Properties of Costa Rica, Inc. only in the Broward County Circuit Court.

269.    Crossley is owed $ 54,950 in actual damages.

### Raymond Tougas

270.    Tougas purchased six lots via three Agreements for Deed with Paragon.  The first Agreement was signed on July 7, 2006 and was for Lot 33 in the Ocean Point project.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and Tougas paid a $35,000 deposit to Paragon via Neustein.

271.    The second Agreement was signed on August 4, 2006 and was for Lots 34 and 35 in the Ocean Point project.  *See* Composite Exhibits B-L.  The purchase price was $136,000 and Tougas paid a $70,000 deposit to Paragon via Neustein.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

272.     The third Agreement was signed on June 5, 2007 and was for Lots 38, 39 and 80 in the Playa Del Mar project.  *See* Composite Exhibits B-L.  The purchase price was $150,000 and Tougas paid a $75,000 deposit to Paragon via Neustein.

273.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

274.     Tougas was offered and accepted several discounts on the outstanding balances for each of the six lots.  For each of the six lots, Tougas paid all but the last $1,000 of the total purchase price.  None of the lots were paid in full.  A total of $274,000 was paid by Tougas to Paragon via Neustein.

275.     Tougas was repeatedly reassured by Gale that the infrastructure would be in place no later than the summer of 2009.  Tougas recently spoke with Valentine and was reassured, yet again, that Paragon was starting the infrastructure in April 2010.

276.     Tougas is owed $274,000 in actual damages.

**John Rossi**

277.     Rossi purchased one unit in The Gables project with Paragon on April 7, 2005. *See* Composite Exhibits B-L.  He made a $25,000 deposit to Paragon via Neustein.  Shortly thereafter, he made an additional $7,000 payment via Neustein.

278.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

279.    Rossi's Agreement for Deed contemplated a stock transfer.

280.    Rossi's seller is Checkmate Financial, Inc.

281.    At the conclusion of the five-year period, in April 2010, Rossi made several timely and written requests for a refund of his deposit money.  Those requests went unanswered.

282.    Rossi is owed $32,000 in actual damages.

### David Galloto

283.    Galloto purchased one unit with Paragon in January 2005.  He made a $25,000 deposit to Paragon via Neustein.  He has since lost the Agreement for Deed, however, Neustein confirmed the $25,000 deposit on January 24, 2005.

284.    Upon information and belief, the Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

285.    On January 26, 2006, he was offered an opportunity to receive a 25% discount off the balance due if he agreed to immediately pay the balance due.  Galloto declined.

286.    The five year period expired in January 2010.  No deed was provided and no refund was made to Galloto.  Calls to Gale and Paragon went unanswered.

287.    Galloto is owed $25,000 in actual damages.

### Steven Wasserman

288.    Wasserman purchased a single lot on or about April 21, 2006.  He paid a $35,000 deposit to Paragon via Neustein.  He has since lost the Agreement for Deed, but correspondence from Neustein confirm the transaction.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

289.    Upon information and belief, the Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.   Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

290.    On September 4, 2006, Wasserman made a timely and written demand for a refund.  Paragon, through Wexler, denied the request for a refund as being untimely.

291.    Wasserman paid an additional $4,000 in July 2009.

292.    Wasserman is owed $39,000 in actual damages.

## Krishen Iyer

293.    Iyer purchased a single unit, Lot 68, from Paragon in 2007.  *See* Composite Exhibits B-L.   The original purchase price was $60,000 and he paid a $29,500 deposit via Neustein.

294.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.   This statement is false and was false at the time it was made.   This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

295.    Lot 66 was replaced by Lot 35, with a new full purchase price of $80,000.

296.    Iyer made an additional $10,000 payment on July 12, 2007.

297.    Iyer took advantage of a $16,500 discount (off the then balance of $40,500).

298.    Iyer made a $10,000 payment on September 24, 2008.

299.    Iyer paid the final balance of $14,000 on or about October 28, 2008

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

300.    Iyer was provided a deed.  Iyer also requested a full refund on several occasions once it became obvious to him that Paragon was defunct and had no intention of fulfilling its obligations.

301.    Iyer is owed $66,000 in actual damages.

### William Hylwa

302.    Hylwa purchased Lot 76 in the Buena Vista project of Paragon on October 9, 2006.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and Hylwa made a $35,900 deposit to Paragon via Neustein.  Hylwa was also given a $1,000 travel credit off the purchase price.

303.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

304.    On or about April 10, 2008, Hylwa paid an additional $18,000 to Paragon via Neustein for Lot 76.

305.    On November 2, 2006, Hylwa loaned Paragon $50,000.  *See* Composite Exhibits B-L.  The loan was purportedly secured by Ocean Palms Plaza shopping center – a shopping center Paragon was developing with the express goal of reselling it for $3M.  Paragon guaranteed Hylwa 24% interest on the loan payable 24 months after the loan money was sent by Hylwa.  The loan was never repaid.  The "Agreement for Secured Loan" was probably a fraud from the outset.

306.    Repeated communications to Paragon went unanswered.

49
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

307.     Hylwa is owed $53,900 in actual damages from the Agreement for Deed and $62,000 in actual damages from the Agreement for Secured Loan, for a total of $115,900 in damages.

### David Weber

308.     Weber purchased Lot 26 in Paragon's Ocean Point project on April 7, 2006.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and Weber made a $35,000 deposit to Paragon via Neustein.

309.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

310.     Repeated calls to Paragon have gone unanswered.

311.     Weber is owed $35,000 in actual damages.

### Luther and Libby Hagen

312.     The Hagen's purchased a total of three lots with Paragon.  The first Agreement for Deed was for Lots 67 and 68 in the Ocean Palms project and was dated March 30, 2007.  *See* Composite Exhibits B-L.  The original purchase price was $190,000 and the Hagens paid a $91,800 deposit to Paragon via Neustein.

313.     The second Agreement for Deed was for Lot 69 in the Ocean Palms project and was dated April 16, 2007.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and the Hagens paid a $40,000 deposit to Paragon via Neustein.

314.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

statement was made through the U.S. mail. Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

315.     The original purchase prices were dropped to $164,700 and $73,375 respectfully.

316.     The Hagens ultimately paid the entire discounted purchase prices for all three lots.

317.     The Hagens are due $238,075 in actual damages.

**Ken Thall**

318.     Thall purchased Lot 7 in Paragon's Vista Del Mar project on May 25, 2005. *See See* Composite Exhibits B-L. The purchase price was $75,000 and Thall made a $30,000 deposit to Paragon via Neustein.

319.     The Agreement states that all monies paid are 100% refundable if the transaction does not close. This statement is false and was false at the time it was made. This false statement was made through the U.S. mail. Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

320.     Thall took advantage of an $11,250 discount (off the then balance of $45,000).

321.     Thall made an additional $5,125 payment on March 24, 2009.

322.     Thall paid the final balance of $4,000 on or about May 20, 2009.

323.     Thall has not been provided the deed to the property.

324.     Repeated calls to Paragon have gone unanswered.

325.     Thall is owed $39,125 in actual damages.

**Ronald and Kathleen Erb**

326.     The Erbs purchased a single unit, Lot 51, from Paragon's Playa Del Mar project on February 22, 2006. *See* Composite Exhibits B-L. The original purchase price was $85,000 and the Erbs paid a $35,000 deposit via Neustein.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

327.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

328.    The Erbs took advantage of a $12,500 discount (off the then balance of $50,000).

329.    The Erbs paid the final balance of $37,500 on or about August 21, 2007.

330.    The Erbs have not been provided a deed to the property.  On December 21, 2007, the Erb's were provided documents purportedly to be corporate books for "Moderna Artist SRL" a Costa Rican corporation.

331.    According to the Agreement for Deed, paragraph 3, Paragon was obligated to put in place infrastructure of roads and electricity within 18 months of February 22, 2006.

332.    As of today, no infrastructure is in place and any improvements to the land are minimal at best.

333.    The Erbs have repeatedly attempted to contact Paragon to discuss the situation, but Paragon has not responded and it is believed has entirely shut down operations.

334.    The Erbs are owed $72,500 in actual damages.

**Joshua Swedlund**

335.    Swedlund purchased Lot 33 in Paragon's Parrita project on March 18, 2005.  *See* Composite Exhibits B-L.  The purchase price was $60,000 and Swedlund made a $25,000 deposit to Paragon via Neustein.

336.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false

52
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

337.     Swedlund took advantage of an $8,750 discount (off the then balance of $35,000).

338.     Swedlund made an additional $5,000 payment on September 3, 2008.

339.     Swedlund made an additional $5,000 payment on July 7, 2009.

340.     Repeated calls to Paragon have gone unanswered.

341.     Swedlund is owed $35,000 in actual damages.

**Lowell and Barbara Enlow**

342.     The Enlows purchased a total of three lots with Paragon.  The first Agreement for Deed was for Lot 72 in Ocean Point project and was dated July 29, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $68,000 and the Enlows paid a $35,000 deposit to Paragon via Neustein.

343.     The second Agreement for Deed was for Lot 37 in the Vista Del Mar project and was dated June 6, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and the Enlows paid a $25,000 deposit to Paragon via Neustein.

344.     The third Agreement for Deed was for Lot 22 in the Playa Del Sol project and was dated July 27, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $68,000 and the Enlows paid a $35,000 deposit to Paragon via Neustein.

345.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

346.    The Enlows took advantage of an $18,000 discount (off the then balance of $33,000) for Lot 72.

347.    The Enlows made an additional $2,500 payment on July 13, 2009 for Lot 72.

348.    The Enlows took advantage of an $8,750 discount (off the then balance of $35,000) for Lot 37.

349.    The Enlows paid the final balance of $26,250 on or about March 28, 2008 for Lot 37

350.    The Enlows took advantage of an $8,250 discount (off the then balance of $33,000) for Lot 22.

351.    The Enlows paid the final balance of $24,750 on or about April 10, 2008 for Lot 22.

352.    The Enlows ultimately paid the entire discounted purchase prices for Lot 37 and Lot 22.

353.    The Enlows have not been provided a deed to the property.  On June 10, 2008, the Enlows were provided documents purportedly to be corporate books for "The Loom of Good, S.R.L." a Costa Rican corporation for Lot 37.  On August 20, 2008, the Enlows were provided documents purportedly to be corporate books for "Chaos and Fractals, S.R.L." a Costa Rican corporation for Lot 22.

354.    As of today, no infrastructure is in place and any improvements to the land are minimal at best.

355.    The Enlows are due $148,500 in actual damages.

**Patrick Schneider**

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

356.    Schneider purchased Lot 61 in Paragon's Playa Del Mar project on February 1, 2006.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and Schneider made a $35,000 deposit to Paragon via Neustein.

357.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

358.    Schneider visited the lot in May 2006.  Lot 61 was not an ocean view as indicated and decided to purchase another lot with ocean view.  Schneider kept Lot 61 at a discounted price due to the location.

359.    Schneider revised the purchase price on Lot 61 in Paragon's Playa Del Mar project on May 11, 2006.  *See* Composite Exhibits B-L.  The revised purchase price was $60,000 and the deposit was already paid from February 1, 2006.

360.    Schneider purchased Lots 38 and 39 in Paragon's Bahia Mar project on May 11, 2006.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and Schneider made a $25,000 deposit to Paragon via Neustein.

361.    Repeated calls to Paragon have gone unanswered.

362.    Schneider is owed $60,000 in actual damages.

### Cynthia & Leigh Steele
### Janice Kincaid & Terry Cole

363.    The Steeles, Kincaid & Cole purchased Lot 49 in Paragon's Playa Del Sol Barranca project on August 18, 2006.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and they made a $35,000 deposit to Paragon via Neustein.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

364.     The Steeles purchased Lot 55 in Paragon's Playa Del Mar project on August 22, 2006.  *See* Composite Exhibits B-L.  The purchase price was $68,000 and they made a $35,000 deposit to Paragon via Neustein.

365.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

366.     Lot 49 and Lot 55 were replaced by Lot 41, Buena Vista, with a new full purchase price of $225,000.

367.     The Steeles, Kincaid & Cole were offered and declined a 25% discount on the remaining balance.

368.     Repeated calls to Paragon have gone unanswered.

369.     The Steeles, Kincaid & Cole are owed $70,000 in actual damages.

### Susan Moser

370.     Moser purchased a total of three lots with Paragon.  The first Agreement for Deed was for Lot 39 in Paragon's Playa Del Mar Miramar project and was dated April 3, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Moser paid a $35,000 deposit to Paragon via Neustein.

371.     The second Agreement for Deed was for Lot 4 in Paragon's Playa Del Mar Miramar project and was dated May 19, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Moser paid a $35,000 deposit to Paragon via Neustein.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

372.    The third Agreement for Deed was for Lot 61 in Paragon's Ocean Palms South project and was dated August 30, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Moser paid a $35,000 deposit to Paragon via Neustein.

373.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

374.    Moser made an additional $34,000 payment on June 7, 2006.

375.    On or about December 15, 2006, Moser swapped from Lot 39 to Lot 67 with no additional cost.

376.    Moser ultimately paid the entire discounted purchase prices for Lot 67 and Lot 4.

377.    Moser has not been provided a deed to the property.  On January 24, 2007, Moser was provided documents purportedly to be corporate books for "McCotter Realty, S.R.L." a Costa Rican corporation for Lots 4 and 67.

378.    As of today, no infrastructure is in place and any improvements to the land are minimal at best.

379.    Moser is due $139,000 in actual damages.

**Maureen & George Cockburn**

380.    The Cockburns purchased Lot 49 in Paragon's Buena Vista Miramar project on October 27, 2006.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and the Cockburns made a $35,900 deposit to Paragon via Neustein.

381.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

382.    After viewing Lot 49, and hitting a personal hardship situation the Cockburns had written a demand for a refund.

383.    The rescission date was Sunday, May 20, 2007 and the Cockburns faxed and mailed their request on May 21, 2007.

384.    To date, no infrastructure has been put in place.  Paragon has since stopped communicating with the Cockburns.  Refund requests have gone unanswered.

385.    The Cockburns are owed $35,900 in actual damages.

### Paul Bator

386.    Bator purchased Lot 97 in Paragon's Vista Del Mar project on June 13, 2005.  *See* Composite Exhibits B-L.  The purchase price was $75,000 and Bator made a $30,000 deposit to Paragon via Neustein.

387.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

388.    On May 7, 2010, Bator made a written demand for a refund of his $30,000.  He routinely attempted to contact Paragon but was unsuccessful.

389.    Repeated calls to Paragon have gone unanswered.

390.    Bator is owed $30,000 in actual damages.

### Robert DiGiorgio

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

391.     DiGiorgio purchased Lot 31 in Paragon's Ocean Point project on June 29, 2005. *See* Composite Exhibits B-L.  The purchase price was $85,000 and DiGiorgio made a $35,000 deposit to Paragon via Neustein.

392.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

393.     On April 26, 2010, DiGiorgio received an email from Valentine indicating he can request the refund on June 10, 2010.  DiGiogio routinely attempted to contact Paragon but was unsuccessful.

394.     Repeated calls to Paragon have gone unanswered.

395.     DiGiorgio is owed $35,000 in actual damages.

**Scott Corridon**

396.     Corridon purchased Lot 10 in Paragon's Ocean Point project on June 25, 2005. *See* Composite Exhibits B-L.  The purchase price was $75,000 and Corridon made a $30,000 deposit to Paragon via Neustein.

397.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

398.     On July 1, 2010, Corridon made a written demand for a refund of his $30,000.  He routinely attempted to contact Paragon but was unsuccessful.

399.     Repeated calls to Paragon have gone unanswered.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

400.    Corridon is owed $30,000 in actual damages.

**Jerry Park**

401.    Park purchased Lot 27 in Paragon's Sunset Bay Miramar project on August 20, 2007.  *See* Composite Exhibits B-L.  The purchase price was $69,900 and Park made a $29,900 deposit to Paragon via Neustein.

402.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

403.    Park made an additional $5,000 payment on June 5, 2009 for Lot 72.

404.    Repeated calls to Paragon have gone unanswered.

405.    Park is owed $34,900 in actual damages.

**Frances DeLuca**

406.    DeLuca purchased Lot 64 in Paragon's Vista Del Mar project on July 1, 2005.  *See* Composite Exhibits B-L.  The purchase price was $60,000 and DeLuca made a $25,000 deposit to Paragon via Neustein.

407.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

408.    On March 27, 2006, DeLuca made a written demand for a refund.  Paragon, through Masters, denied the request for a refund as being untimely.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

409.    The five year period expired in July 2010.  No deed was provided and no refund was made to DeLuca.  Calls to Gale and Paragon went unanswered.

410.    DeLuca is owed $25,000 in actual damages.

### Samuel & Camille Reeder

411.    The Reeders purchased Lot 38 in Paragon's Vista Del Mar project on November 29, 2005.  *See* Composite Exhibits B-L.  The purchase price was $60,000 and the Reeders made a $25,000 deposit to Paragon via Neustein.

412.    The Reeders purchased another Lot 97 in Paragon's Sunset Bay project on October 28, 2008.  *See* Composite Exhibits B-L.   (Reeder swapped Lot 97 for Lot 99 at a later date and without any additional consideration).  The purchase price was $30,000 and the Reeders made a $15,000 deposit to Paragon via Neustein.

413.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

414.    The Reeders were offered and accepted a 25% discount on the outstanding balance for Lot 38 and made an additional payment of $13,125.

415.    On June 27, 2007, the Reeders made a final payment of $13,125 for lot 38.

416.    The Reeders made an additional payment of $7,000 for lot 99.

417.    On January 19, 2009, the Reeders made a final balance payment of $8,000 for Lot 99.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

418.    The Reeders have not been provided a deed to the property.  The Reeders were provided documents purportedly to be corporate books for "Ocean Waves S.R.L." a Costa Rican corporation for Lots 38 and 99.

419.    Repeated calls to Paragon have gone unanswered.

420.    The Reeders are owed $81,250 in actual damages.

### Nicolas & Regina Muro

421.    The Muros purchased Lot 22 in Paragon's Heights of Pacifica project and was dated November 16, 2004.  *See* Composite Exhibits B-L.  The original purchase price was $19,500 and the Muros paid a $19,500 full payment to Paragon via Neustein.

422.    The second Agreement for Deed was for Lot 61 purchased in Paragon's unknown project on March 4, 2005.  *See* Composite Exhibits B-L.  The purchase price was $60,000 and the Muros made a $25,000 deposit to Paragon via Neustein.

423.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

424.    The Muros have not been provided a deed to the property.  The Muros were provided documents purportedly to be corporate books for "Warren Realty S.R.L." a Costa Rican corporation for Lot 22.

425.    On or before July 9, 2008, the Muros requested a full refund of $25,000 for Lot 61.  The request for a refund was acknowledged and denied by Soto.

426.    On or before February 19, 2010, the Muros again requested a full refund of $25,000 for Lot 61 and $19,500 for Lot 22.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

427.    Repeated calls and letters to Paragon have gone unanswered.

428.    The Muros are owed $44,500 in actual damages.

**James & Mary Krause**
**Eric & Carolyn Wallace**

429.    Mary Krause purchased Lot 54 in Paragon's Buena Vista project and was dated January 9, 2007.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and the Krause paid a $35,900 deposit to Paragon via Neustein.

430.    The second Agreement for Deed was for Lot 55 purchased in Paragon's Buena Vista project on January 16, 2007.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and the Eric Wallace made a $35,900 deposit to Paragon via Neustein.

431.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

432.    On or before June 4, 2007, Wallace requested a refund of the entire $35,900 deposit.  The request for a refund was acknowledged and denied the request for a refund as being untimely by Soto.

433.     On July 27, 2007, Eric Wallace authorized the transfer of Lot 55 deposit to Lot 54.  Constituting full payment of Lot 54.  The Wallaces and Krauses are joint partners in the investment of Lot 54.

434.    On July 27, 2007, James Krause authorized the transfer of Lot 55 to Lot 54 and the new names on the deeds were to be the Wallaces and Krauses.

435.    The Wallaces and Krauses were offered and a discount on the outstanding balance for Lot 45 and therefore confirmed the full payment of Lot 54.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

436.     A letter from Lyle Wexler confirms the full payment of Lot 54.

437.     The Wallaces and Krauses have not been provided a deed.   The Wallaces and Krauses were provided documents purportedly to be corporate books for "Gem of the Ocean S.R.L." a Costa Rican corporation for Lot 54.

438.     Repeated calls and letters to Paragon have gone unanswered.

439.     The Wallaces and Krauses are owed $71,800 in actual damages.

### Daniel R. Harrison

440.     Harrison purchased Lot 84 and 89 in Paragon's Las Brisa project and was dated February 16, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 each lot and the Harrison paid a $25,000 deposit for each lot to Paragon via Neustein (Harrison swapped Lot 84 and 89 for Lots 66 and 58 at a later date and without any additional consideration).

441.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

442.     Harrison was offered and accepted a 25% discount on the outstanding balance for Lot 66 and 58 and made an additional payment of $26,250 each lot (total of $52,500).

443.     On February 16, 2007, Harrison swapped Lot 66 and 58 for Lot 1 and 2 in the Ocean Palms project.  Harrisons new purchase price was $95,000 for each lot and the deposits from the previous lots were transferred.

444.     Harrison was offered and another discount for Lot 1 & 2 to pay off the lots.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

445.     On February 28, 2007, Harrison swapped Lot 1 & 2 for Lot 24 & 38 without any additional consideration.

446.     Harrison made an additional $41,800 payment on or about March 7, 2007.

447.     On June 19, 2007, Harrison was offered and accepted yet another discount for Lot 24 and 38 and made an additional $11,250 payment for each lot.

448.     Harrison received a letter from Soto confirming receipt of funds and a title transfer.  No deed or corporate books were provided.

449.     Repeated calls to Paragon have gone unanswered.

450.     Harrison is owed $166,800 in actual damages.

### Donald & Deborah Schaefer

451.     The Schaefers purchased Lot 1 in Paragon's Ocean Palms project on July 11, 2005.  *See* Composite Exhibits B-L.  The purchase price was $85,000 and the Schaefers made a $34,900 deposit to Paragon via Neustein.

452.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

453.     On April 10, 2007, the Schaefers made a written demand for a refund of their $35,000 deposit.  Paragon, through Soto, denied the request for a refund as being untimely.

454.     The five year period expired in July 2010.  No deed was provided and no refund was made to the Schaefers.  Calls to Gale and Paragon went unanswered.

455.     The Schaefers are owed $34,900 in actual damages.

### Rhonda P. Brewer

65
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

456.    Brewer purchased Lot 16 in Paragon's Playa Del Mar project on June 12, 2006. *See* Composite Exhibits B-L.   The purchase price was $85,000 and Brewer made a $35,000 deposit to Paragon via Neustein.

457.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.   This statement is false and was false at the time it was made.   This false statement was made through the U.S. mail.   Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

458.    According to the Agreement for Deed, paragraph 3, Paragon was obligated to put in place infrastructure of roads and electricity within 18 months of June 16, 2006.

459.    As of today, no infrastructure is in place and any improvements to the land are minimal at best.

460.    Brewer is owed $35,000 in actual damages.

### Young K. & Sun S. Yoo

461.    The Yoos purchased Lot 3 in Paragon's Ocean Palms North project and was dated March 21, 2007.   *See* Composite Exhibits B-L.   The original purchase price was $95,000 and the Yoos paid a $49,900 deposit to Paragon via Neustein.

462.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.   This statement is false and was false at the time it was made.   This false statement was made through the U.S. mail.   Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

463.    The Yoos was offered and accepted a 25% discount on the outstanding balance for Lot 3 and made an additional payment of $11,025 on May 13, 2007.

464.    The Yoos made an additional $11,025 payment on or about August 31, 2007.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

465.    On or about December 1, 2007, the Yoos made a final balance payment of $11,025 for Lot 3.

466.    The Yoos have not been provided a deed to the property.   The Yoos were provided documents purportedly to be corporate books for "Holy Roman Empire S.R.L." a Costa Rican corporation for Lot 3.

467.    Repeated calls and letters to Paragon have gone unanswered.

468.    The Yoos are owed $82,975 in actual damages.

**Rocco & Christine Morelli**

469.    The Morellis purchased Lot 20 in Paragon's Vista Del Mar project and was dated September 8, 2005, under the name Ocean Breeze Property Trust.   *See* Composite Exhibits B-L. The original purchase price was $75,000 and the Morellis paid a $30,000 deposit to Paragon via Neustein.

470.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.   This statement is false and was false at the time it was made.   This false statement was made through the U.S. mail.   Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

471.    On or before January 9, 2007, the Morellis requested Lot 20 to be subdivided.   A check for $400 was issued to Paragon to subdivide the lot.

472.    On or before January 9, 2006, the Morellis requested a full refund of $30,000 for the deposit of Lot 22.

473.    Instead of providing the Morellis with the refund, Masters offered a discount for Lot 20.

474.    The Morellis paid the final balance of $33,750 on or about February 3, 2006.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

475.     The Morellis have been provided a deed but does not know the authenticity of the document.   The Morellis were provided documents purportedly to be corporate books for "Bakersfield Realty, S.R.L." a Costa Rican corporation for Lot 20.

476.     The Morellis were also provided corporate books for "Myfanway, S.R.L." a Costa Rican corporation for Lot 20.  The Morellis purchase for Lot 20 was subdivided per their request.

477.     Repeated calls and letters to Paragon have gone unanswered.

478.     The Morellis are owed $64,150 in actual damages.

### James Neuber

479.     Neuber purchased Lot 25 in Paragon's Playa Del Sol project and was dated January 27, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Neuber paid a $35,000 deposit to Paragon via Neustein.

480.     The second Agreement for Deed, Neuber purchased Lots 5 & 6 in Paragon's Bahia Mar project and was dated April 28, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Neuber paid a $35,000 deposit to Paragon via Neustein.

481.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

482.     On April 25, 2006, Neuber swapped Lot 25 to Log 48 and Lot 49 with no additional cost.

483.     On April 27, 2006, Neuber swapped Lot 48 to Lot 50 with no additional cost.

484.     Neuber was offered and accepted a 25% discount on the outstanding balance for Lot 5, 6, 49 & 50 and made an additional payment of $25,000 on or about May 22, 2007.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

485.    Neuber made an additional $25,000 payment on or about September 24, 2007.

486.    On or about December 5, 2007, Neuber made a final balance payment of $25,000 for Lot 5, 6, 49, and 50.

487.    On December 21, 2009, Neuber made a written demand for a refund of his $145,000 deposit.

488.    Neuber have not been provided a deed to the property.  Neuber was provided documents purportedly to be corporate books for "Cross the Galaxy S.R.L." a Costa Rican corporation.

489.    Repeated calls and letters to Paragon have gone unanswered.

490.    Neuber is owed $145,000 in actual damages.

**Dennis & Dianna Calcaterra**
**Jo-Ann Durdock**

491.    The Calcaterras purchased Lot 35 in Paragon's Punta Verde project on February 2, 2007.  *See* Composite Exhibits B-L.  The original purchase price was $55,000 and the Calcaterras paid a $29,500 deposit to Paragon via Neustein.

492.    The second Agreement for Deed, the Calcaterras and Eric Kammerer purchased Lots 62 & 63 in Paragon's Sunset Bay project and was dated January 4, 2008.  *See* Composite Exhibits B-L.  The original purchase price was $54,425 for each lot and the Calcaterras paid a $14,950 deposit to Paragon via Neustein for Lot 63.

493.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

*69*

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

494.     The Calcaterras were offered and accepted a 25% discount on the outstanding balance for Lot 35.

495.     On May 1, 2008, the Calcaterras made a written demand for a refund of their deposit.  Soto acknowledge request for refund.

496.     On or about June 13, 2008, the Calcaterras swapped Lot 63 to the Lot 35 to pay off the lot.

497.     Dennis Calcaterra and Jo-Ann Durdock have not been provided a deed to the property.  Dennis Calcaterra and Jo-Ann Durdock were provided documents purportedly to be corporate books for "Broomfield Realty S.R.L." a Costa Rican corporation for Lot 35.

498.     Repeated calls and letters to Paragon have gone unanswered.

499.     The Calcaterras and Jo-Ann Durdock are owed $44,450 in actual damages.

### Fady Dakdouk

500.     Dakdouk purchased Lot 19 & 64 in Paragon's Playa Del Sol project and was dated February 7, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $136,000 and Dakdouk paid a $70,000 deposit to Paragon via Neustein (Dakdouk swapped Lot 64 for Lots 71 in the Ocean Palms South project at a later date and without any additional consideration).

501.     The second Agreement for Deed, Dakdouk purchased Lots 113 in Paragon's Sunset Bay project and was dated September 2, 2008.  *See* Composite Exhibits B-L.  The original purchase price was $30,000 and Dakdouk paid a $10,000 deposit to Paragon via Neustein.

502.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false

70
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

503.    On March 3, 2009, Dakdouk released lot 113 and the funds from the deposit was equally split with Lot 71 and 19.

504.    Dakdouk was offered and accepted a 25% discount on the outstanding balance for Lots 19 and 71 and made an additional payment of $10,000.

505.    Dakdouk made a final payment of $5,000 on February 25, 2009 to pay balance of Lots 19 and 71.

506.    Repeated calls and letters to Paragon have gone unanswered.

507.    Dakdouk is owed $95,000 in actual damages.

## John Hay

508.    Hay purchased Lot 1 in Paragon's Presidential Estates project and was dated March 21, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Hay paid a $35,000 deposit to Paragon via Neustein.

509.    The second Agreement for Deed, Hay purchased Lot 48 in Paragon's Gables project and was dated June 6, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Hay paid a $25,000 deposit to Paragon via Neustein.

510.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

511.    On August 25, 2006, Hay made an additional payment of $12,500 for Lot 1.

512.    On October 27, 2006, Hay made an additional payment of $8,750 for Lot 48.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

513.    On February 19, 2007, Hay made an additional payment of $12,500 for Lot 1.

514.    On March 18, 2009, Hay made a final payment of $10,000 for Lot 1.

515.    On March 23, 2009, Hay made a final payment of $10,000 for Lot 48

516.    Hay was offered and accepted a 25% discount on the outstanding balance for Lot 1.

517.    Repeated calls and letters to Paragon have gone unanswered.

518.    Hay is owed $113,750 in actual damages.

### Eugene S. Willard & Roberta Willard

519.    The Willards purchased Lot 70 & 110 in Paragon's Heights of Pacifica project and was dated in 2005. Purchase price was $19,500 for each lot and has been paid in full.  They have since lost the Agreement for Deed but correspondence from Neustein and corporate books confirm the full purchase of the lots.

520.    The second Agreement for Deed, Willard purchased Lot 95 in Paragon's Ocean Palms project and was dated October 3, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Willard paid a $35,000 deposit to Paragon via Neustein.

521.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

522.    On March 5, 2008, Willard made an additional payment of $12,500 for Lot 95.

523.    On December 29, 2008, Willard made a final payment of $6,250 for Lot 95.

524.    Willard was offered and accepted 25% discount on the outstanding balance for Lot 95.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

525.     The Willards have not been provided a deed to the property.  The Willards were provided documents purportedly to be corporate books for "Broomfield Realty S.R.L." a Costa Rican corporation for Lot 110.

526.     The Willards have not been provided a deed to the property.  The Willards were provided documents purportedly to be corporate books for "Barret Realty S.R.L." a Costa Rican corporation for Lot 170.

527.     Repeated calls and letters to Paragon have gone unanswered.

528.     The Willards are owed $92,750 in actual damages.

### B. Kim Davis

529.     Davis purchased Lot 36 in Paragon's Playa Del Sol project and was dated July 26, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Davis paid a $35,000 deposit to Paragon via Neustein.

530.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

531.     On April 21, 2006, Davis was offered and accepted 25% discount on the outstanding balance for Lot 36 and made a final payment for $37,500.

532.     Davis has not been provided a deed to the property.  Davis was provided documents purportedly to be corporate books for "Mullins Realty S.R.L." a Costa Rican corporation for Lot 36.

533.     Repeated calls and letters to Paragon have gone unanswered.

534.     Davis is owed $72,500 in actual damages.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

**David & Patricia Graves**

535.    The Graves purchased Lot 23 in Paragon's Gables Parrita project and was dated March 9, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and the Graves paid a $35,000 deposit to Paragon via Neustein.  (the Graves swapped Lot 23 for Lot 57 in the Punta Verde project at a later date and without any additional consideration).

536.    The second Agreement for Deed, the Graves purchased Lot 9 in Paragon's Ocean Palms North project and was dated January 30, 2008.  *See* Composite Exhibits B-L.  The original purchase price was $71,250 and the Graves paid a $45,900 deposit to Paragon via Neustein.

537.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

538.    On December 21, 2006, the Graves requested a refund of their deposits for Lots 57 and 9.  The request was denied and acknowledged by Les Masters.

539.    On April 5, 2007, the Graves was offered and accepted a discount on the outstanding balance for Lot 57 and made a final payment of $15,000.

540.    On March 26, 2009, the Graves was offered and accepted a discount on the outstanding balance for Lot 9 and made a final payment for $9,500.

541.    The Graves have not been provided a deed or corporate books for Lot 9.

542.    The Graves have not been provided a deed to the property.  The Graves were provided documents purportedly to be corporate books for "Castelano Enterprises S.R.L." a Costa Rican corporation for Lot 57.

543.    Repeated calls and letters to Paragon have gone unanswered.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

544.     The Graves are owed $105,400 in actual damages.

**Robert and Sara Hurst**
**Kim Couture**

545.     Robert Hurst and Couture purchased Lot 3 in Paragon's Vista Del Mar project and was dated June 8, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $75,000 and Hurst and Couture paid a $30,000 deposit to Paragon via Neustein. (Hurst and Couture swapped Lot 3 for Lot 47 in the Vista Del Mar project at a later date and without any additional consideration).

546.     The second Agreement for Deed, the Hursts and the Allgoods purchased Lots 1 in Paragon's Vista Del Mar project and was dated unknown.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and the Hurst paid a $25,000 deposit to Paragon via Neustein. (The Hurst swapped Lot 1 for Lot 53 in the Vista Del Mar project at a later date and without any additional consideration)

547.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

548.     On January 28, 2006, the Hursts wrote a check to the Allgoods for their share of the lot and the Allgoods no longer have any interest for Lot 1.

549.     The Hursts and Couture was offered and accepted a 25% discount on the outstanding balance for Lots 53 and 47.

550.     On May 9, 2006, the Hursts made final payment of $26,250 to pay off the balance of Lot 53.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

551.    On June 1, 2006, the Hursts made final payment of $22,500 to pay off the balance of Lot 47.

552.    The Hursts and Couture have not been provided a deed to the property.  The Hurst and Couture were provided documents purportedly to be corporate books for "Hobart Realty S.R.L." a Costa Rican corporation for Lot 47 and 53.

553.    Repeated calls and letters to Paragon have gone unanswered.

554.    The Hursts and Couture are owed $103,750 in actual damages.

### Patrick and Alicia O'Connor

555.    The O'Connors purchased Lot 61 in Paragon's Vista Del Mar project on October, 2005.  The purchase price was $60,000 and the O'Connors made a $25,000 deposit to Paragon via Neustein.  They have since lost the Agreement for Deed but correspondence from Neustein confirms the deposit.

556.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

557.    On March 12, 2009, the O'Connors made an additional payment of $5,000.

558.    The five year period will expire in October 2010.

559.    Calls to Gale and Paragon went unanswered.

560.    The O'Connors are owed $30,000 in actual damages.

### Martin Graboski

561.    Graboski purchased Lot 44 and 45 in Paragon's Bahia Mar project and was dated in March 24, 2005. Purchase price is unknown for each lot and Graboski paid a $25,000 deposit

76
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

to Paragon via Neustein.  He has since lost the Agreement for Deed but correspondence from Neustein and corporate books confirm the full purchase of the lots.

562.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

563.    On January 5, 2006, Graboski made an additional payment of $26,250.

564.    On March 20, 2006, Graboski made an additional payment of $25,000.

565.    On November 7, 2006, Graboski made a final payment of $25,000.

566.    Graboski has not been provided a deed to the property.  Graboski was provided documents purportedly to be corporate books for "De Mint Realty S.R.L." a Costa Rican corporation for Lot 45 and "Lisianthus S.R.L." for Lot 44.

567.    Repeated calls and letters to Paragon have gone unanswered.

568.    Graboski is owed $101,250 in actual damages.

**Mark and Cynthia Light**

569.    The Lights purchased Lot 48 in Paragon's Playa Del Sol project and was dated in August 17, 2005. *See* Composite Exhibits B-L.  The original purchase price was $85,000 and the Lights paid a $35,000 deposit to Paragon via Neustein.

570.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

571.    The Lights were offered and accepted a discount on the outstanding balance for Lot 48 and made an additional payment of $15,000 on May 12, 2006.

572.    The Lights made a final payment of $22,500.

573.    The Lights have not been provided a deed to the property.  The Lights were provided documents purportedly to be corporate books for "Ode to Joy S.R.L." a Costa Rican corporation for Lot 48.

574.    Repeated calls and letters to Paragon have gone unanswered.

575.    The Lights are owed $72,500 in actual damages.

**Karoly Szep and Renata Videki**

576.    Szep purchased Lot 73 in Paragon's Buena Vista project and was dated January 8, 2007.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Szep paid a $25,900 deposit to Paragon via Neustein. (Szep swapped Lot 73 for Lot 54 in the Vista Del Mar project at a later date and without any additional consideration).

577.    The second Agreement for Deed, Szep and Videki purchased Lot 163 in Paragon's Sunset Bay project and was dated February 7, 2008.  *See* Composite Exhibits B-L. The original purchase price was $52,425 and Szep and Videki paid a several deposits to Paragon via Neustein.

578.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

579.    On April 5, 2007, Szep and Videki made a wire transfer to Neustein for $11,516.80.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

580.     On June 27, 2008, Szep and Videki made a wire transfer to Neustein for $4900.

581.     On September 4, 2007, Szep and Videki made a wire transfer to Neustein for $12,000.

582.     On January 19, 2009, Szep and Videki made an additional payment of $6,000 for Lot 163.

583.     On January 23, 2009, Szep and Videki made an additional payment of $6,000 for Lot 54.

584.     Szep and Videki have not been provided a deed to the property.  Szep and Videki were provided documents purportedly to be corporate books for "Sunset S.R.L." a Costa Rican corporation for Lot 163.

585.     Repeated calls and letters to Paragon have gone unanswered.

586.     Szep and Videki are owed $66,316.80 in actual damages.

### Richard Scott

587.     Scott purchased Lot 15 in Paragon's HOP project and was dated June 12, 2006. *See* Composite Exhibits B-L.  The original purchase price was $25,000 and Scott paid the lot in full to Paragon via Neustein.

588.     The second Agreement for Deed, Scott purchased Lot 25 in Paragon's Playa Del Mar project and was dated June 16, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Scott paid a $35,000 deposit to Paragon via Neustein.

589.     The third Agreement for Deed, Scott purchased Lot 23 in Paragon's Ocean Palms project and was dated June 16, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $125,900 and Scott paid a $50,900 deposits to Paragon via Neustein.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

590.    The forth Agreement for Deed, Scott purchased Lot 22 in Paragon's Ocean Palms project and was dated August 26, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $76,500 and Scott paid a $35,000 deposits to Paragon via Neustein.  (Scott swapped Lot 22 for Lot 23 and transferred the deposit to the second Agreement for Deed).

591.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

592.    On or before November 21, 2006 and December 18, 2006, Scott requested a full refund for the deposit of Lot 22 and 23.

593.    The request was denied and acknowledged by Lyle Wexler.

594.    Scott was offered and accepted a discount on the outstanding balance for Lot 23 and made a final payment of $10,000 on February 26, 2007.

595.    Scott has not been provided a deed to the property.  Scott was provided documents purportedly to be corporate books for "Grazia Mares Enterprise S.R.L." a Costa Rican corporation for Lot 23.

596.    Repeated calls and letters to Paragon have gone unanswered.

597.    Scott is owed $155,900 in actual damages.

**Douglas and Cynthia Thackston**

598.    The Thackstons purchased Lot 29 in Paragon's Ocean Palms North project on January 16, 2007.  *See* Composite Exhibits B-L.  The purchase price was $95,000 and the Thackstons made a $45,900 deposit to Paragon via Neustein.  (The Thackstons swapped Lot 29

80
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

for Lot 24 in the Ocean Palms North project at a later date and without any additional consideration).

599.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

600.     According to the Agreement for Deed, paragraph 3, Paragon was obligated to put in place infrastructure of roads and electricity within 18 months of January 16, 2007.

601.     As of today, no infrastructure is in place and any improvements to the land are minimal at best.

602.     Repeated calls and letters to Paragon have gone unanswered.

603.     The Thackstons are owed $45,900 in actual damages.

**Kurt Mitchell**

604.     Mitchell purchased Lot 3 in Paragon's Ocean Palms project on June 1, 2005.  *See* Composite Exhibits B-L.  The purchase price was $75,000 and Mitchell made a $30,000 deposit to Paragon via Neustein.

605.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

606.     According to the Agreement for Deed, paragraph 3, Paragon was obligated to put in place infrastructure of roads and electricity within 18 months of June 1, 2005.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

607.     As of today, no infrastructure is in place and any improvements to the land are minimal at best.

608.     On December 9, 2009, Mitchell requested a refund of his deposit.

609.     The five year period expired on June 2010.

610.     Repeated calls and letters to Paragon have gone unanswered.

611.     Mitchell is owed $30,000 in actual damages.

### Donald L. Wells

612.     Wells purchased Lot 76 in Paragon's Las Brisas project and was dated January 4, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $59,500 and Wells paid a $25,000 deposit to Paragon via Neustein.

613.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

614.     Wells was offered and accepted a discount on the outstanding balance for Lot 76 and made additional payments.

615.     On April 16, 2009, Soto received an additional payment of $10,000.

616.     On December 8, 2009, Soto received an additional payment of $3,500.

617.     On February 10, 2010, Soto received the final payment of $1,500.

618.     Wells has not been provided a deed or corporate books to the property.  Repeated calls and letters to Paragon have gone unanswered.

619.     Wells is owed $40,000 in actual damages.

### Denise Braithwaite

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

620.     Braithwaite purchased Lot 76 in Paragon's Vista Del Mar project on August 1, 2005.  *See* Composite Exhibits B-L.  The purchase price was $60,000 and Braithwaite made a $25,000 deposit to Paragon via Neustein.

621.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

622.     According to the Agreement for Deed, paragraph 3, Paragon was obligated to put in place infrastructure of roads and electricity within 18 months of August 1, 2005.

623.     As of today, no infrastructure is in place and any improvements to the land are minimal at best.

624.     The five year period expired in August 2010.

625.     Repeated calls and letters to Paragon have gone unanswered.

626.     Braithwaite is owed $25,000 in actual damages.

### John and Paulette Wittbold

627.     The Wittbolds purchased Lot 24 in Paragon's Playa Del Sol project and was dated July 17, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and the Wittbolds paid a $35,000 deposit to Paragon via Neustein. (The Wittbolds swapped Lot 24 for Lot 20 and 21 in the Bahia Mar project at a later date and without any additional consideration).

628.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

629.     On April 10, 2008, Soto received an additional payment of $9,000.

630.     On June 11, 2008, the Wittbolds made an additional payment of $31,000.

631.     The Wittbolds have not been provided a deed to the property.  The Wittbolds were provided documents purportedly to be corporate books for "Tolomosso S.R.L." a Costa Rican corporation for Lot 20 and 21.

632.     Repeated calls and letters to Paragon have gone unanswered.

633.     The Wittbolds retained Costa Rican counsel to investigate the status of their title to the property.  According to counsel, Tolomosso SRL is based out of Paragon's San Jose office and lists Mr. Celimo Soto (Esteban Soto) as its sole legal representative and general manager. Tolomoso SRL has no real property and no assets registered in its name.  The Costa Rican attorney concluded that the sale was a fraud and that the Wittbolds should commence suit in Florida against the parent companies.  *See* Composite Exhibits B-L.

634.     The Wittbolds are owed $75,000 in actual damages.

### Robert Sloan

635.     Sloan purchased Lot 75 in Paragon's Playa Del Mar project and was dated September 14, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Sloan paid a $35,000 deposit to Paragon via Neustein.

636.     The second Agreement for Deed, Sloan purchased Lot 117-118 in Paragon's Heights of Pacifica Phase 3 project and was dated March 23, 2006.  *See* Composite Exhibits B-L. The original purchase price was $50,000 for both lots and Sloan paid in full $50,000 to Paragon via Neustein. (Sloan swapped Lot 117-118 for Lot 108 and 109 in the Heights of Pacifica project at a later date and without any additional consideration).

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

637.    The third Agreement for Deed, Sloan purchased Lot 40 in Paragon's Buena Vista project and was dated August 14, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $150,000 and Sloan paid a $70,000 deposit to Paragon via Neustein.

638.    The forth Agreement for Deed, Sloan purchased Lot 45 in Paragon's Punta Verde project and was dated October 23, 2006.  *See* Composite Exhibits B-L.   The original purchase price was $50,000 and Sloan paid a $25,000 deposit to Paragon via Neustein.

639.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

640.    Sloan was offered and accepted a discount on the outstanding balance for Lot 75 and made an additional payment of $5,000 for Lot 75.

641.    On February 7, 2007, Sloan made an additional payment of $6,000 for Lot 45.

642.    On March 29, 2007, Sloan made an additional payment of $800.

643.    Sloan has not been provided a deed to the property.  Sloan were provided documents purportedly to be corporate books for "Gum Tree Investment S.R.L." a Costa Rican corporation for Lot 108 and 109.

644.    Repeated calls and letters to Paragon have gone unanswered.

645.    Sloan is owed $191,800 in actual damages.

**Jason and Sylvia Martin**

646.    The Martins purchased Lot 16 in Paragon's Punta Verde project and was dated December 19, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $60,900 and the Martins paid a $25,900 deposit to Paragon via Neustein.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

647.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

648.    On March 27, 2007, the Martins made an additional payment of $7,000.

649.    On April 10, 2007, Soto received an additional payment of $5,000.

650.    On July 31, 2007, Soto received an additional payment of $5,000.

651.    On November 20, 2007, the Martins made an additional payment of $1000.

652.    The Martins was offered and accepted a discount on the outstanding balance for Lot 46 and made an additional payment of $15,875.

653.    The Martins have not been provided a deed to the property.  The Martins were provided documents purportedly to be corporate books for "ZYZZXX S.R.L." a Costa Rican corporation.

654.    Repeated calls and letters to Paragon have gone unanswered.

655.    The Martins are owed $59,775 in actual damages.

### Juan Campos

656.    Campos purchased Lot 8 and 9 in Paragon's Las Brisas, Parrita project and was dated February 3, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $120,000 and Campos paid a $50,000 deposit to Paragon via Neustein. (Campos swapped Lot 8 and 9 for Lot 16 in the Ocean Palms North project at a later date and without any additional consideration).

657.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

658.    Campos was offered and accepted a discount on the outstanding balance for Lot 16 and made an additional payment of $26,250.

659.    Campos has not been provided a deed to the property.  Campos were provided documents purportedly to be corporate books for "Come Away With Me, S.R.L." a Costa Rican corporation for 16.

660.    Repeated calls and letters to Paragon have gone unanswered.

661.    Campos is owed $76,250 in actual damages.

### Randall Scagliotti

662.    Scagliotti purchased Lot 59 in Paragon's Playa Del Mar project and was dated September 11, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Scagliotti paid a $35,000 deposit to Paragon via Neustein.

663.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

664.    Scagliotti was offered and accepted a discount on the outstanding balance for Lot 59 and made an additional payment of $37,500.

665.    Scagliotti has not been provided a deed to the property.  Scagliotti was provided documents purportedly to be corporate books for "Tinker Realty S.R.L." a Costa Rican corporation for Lot 59.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

666.    On November 21, 2006, Scagliotti loaned Paragon $25,000.  *See* Composite Exhibits B-L.  The loan was purportedly secured by Ocean Palms Plaza shopping center – a shopping center Paragon was developing with the express goal of reselling it for $3M.  Paragon guaranteed Scagliotti 24% interest on the loan payable 24 months after the loan money was sent by Scagliotti.  The loan was never repaid.  The "Agreement for Secured Loan" was probably a fraud from the outset.

667.    Repeated communications to Paragon went unanswered.

668.    Scagliotti is owed $72,500 in actual damages from the Agreement for Deed and $25,000 in actual damages from the Agreement for Secured Loan, for a total of $97,500 in damages.

### James Southcomb & Mike Spataro

669.    Southcomb and Spataro purchased Lot 12 in Paragon's Vista Del Mar project and were dated June 3, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Southcomb and Spataro paid a $25,000 deposit to Paragon via Neustein.

670.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

671.    Southcomb and Spataro were offered and accepted a discount on the outstanding balance for Lot 12 and made an additional payment of $27,000.

672.    Southcomb and Spataro have not been provided a deed to the property.

673.    Repeated calls and letters to Paragon have gone unanswered.

674.    Southcomb and Spataro are owed $52,000 in actual damages.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

**Kraig McGregor**

675.     McGregor purchased Lot 14 in Paragon's Ocean Palms project and was dated August 20, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and McGregor paid a $35,000 deposit to Paragon via Neustein.

676.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

677.     McGregor was offered and accepted a discount on the outstanding balance for Lot 14 and made an additional payment of $18,750.

678.     On April 16, 2008, Soto received an additional payment of $10,000.

679.     On November 28, 2007 McGregor made a timely request for refund.

680.     The request was denied and acknowledged by Esteban Soto.

681.     McGregor have not been provided a deed to the property or corporate books

682.     Repeated calls and letters to Paragon have gone unanswered.

683.     McGregor is owed $63,750 in actual damages.

**Paula Broadfoot**

684.     Broadfoot purchased Lot 94 in Paragon's Buena Vista project and was dated November 14, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $180,000 and Broadfoot paid a $75,900 deposit to Paragon via Neustein.

685.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

686.    Broadfoot was offered and accepted a discount on the outstanding balance for Lot 94 and made an additional payment of $24,150.

687.    On December 29, 2008, Broadfoot made a final payment of $24,150.

688.    Broadfoot have not been provided a deed to the property or corporate books.

689.    Repeated calls and letters to Paragon have gone unanswered.

690.    Broadfoot is owed $124,200 in actual damages.

### Linda Adams

691.    Linda Adams purchased Lot 30 in Paragon's Playa Del Sol project and was dated January 24, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Linda Adams paid a $35,000 deposit to Paragon via Neustein. (Linda Adams swapped Lot 30 and for Lot 80 in the Playa Del Sol project at a later date and without any additional consideration).

692.    The second Agreement for Deed, Linda Adams purchased Lot 17 in Paragon's Punta Verde project and was dated February 16, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $75,000 and Linda Adams paid deposit from the first Agreement for Deed transferred deposit to Paragon via Neustein. (Linda Adams swapped Lot 17 for Lot 78 in the Ocean Palms South project at a later date and without any additional consideration).

693.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

694.     Linda Adams was offered and accepted a discount on the outstanding balance for Lot 78 and made an additional payment of $11,250.

695.     Repeated calls and letters to Paragon have gone unanswered.

696.     Linda Adams is owed $46,250 in actual damages.

**Craig Adams**

697.     Craig Adams purchased Lot 4 in Paragon's Playa Del Sol project and was dated January 19, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $68,000 and Craig Adams paid a $35,000 deposit to Paragon via Neustein. (Craig Adams swapped Lot 44 and for Lot 17 in the Punta Verde project at a later date and without any additional consideration).

698.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

699.     Craig Adams was offered and accepted a discount on the outstanding balance for Lot 17 and made an additional payment of $7,500.

700.     Repeated calls and letters to Paragon have gone unanswered.

701.     Craig Adams is owed $42,500 in actual damages.

**John A. & Tamara D. Frank**

702.     The Franks purchased Lot 48 in Paragon's Buena Vista project and was dated July 3, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $150,000 and the Franks paid a $60,000 deposit to Paragon via Neustein. (the Franks swapped Lot 48 and for Lot 14 in the Buena Vista project at a later date and without any additional consideration).

91
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

703.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

704.    On January 10, 2007, the Franks made an additional payment of $30,000.

705.    On June 7, 2010, the Franks made a timely request for refund.

706.    Repeated calls and letters to Paragon have gone unanswered.

707.    The Franks are owed $90,000 in actual damages.

### Mike Chernicky

708.    Chernicky purchased Lot 12 in Paragon's Ocean Pointe project and was dated December 5, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Chernicky paid a $30,000 deposit to Paragon via Neustein.

709.    The second Agreement for Deed, Chernicky purchased Lot 36 in Paragon's Ocean Pointe project and was dated December 5, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Chernicky paid a $30,000 deposit to Paragon via Neustein.

710.    The third Agreement for Deed, Chernicky purchased Lot 16 in Paragon's Playa Del Sol project and was dated December 5, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $68,000 and Chernicky paid a $35,000 deposit to Paragon via Neustein. (Chernicky swapped Lot 16 and for Lot 81 in the Playa Del Sol project at a later date and without any additional consideration).

711.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

712.    On January 2007, Chernicky released Lot 81 and applied the deposits to Lots 12 and 36.

713.    On January 26, 2007, Chernicky made an additional payment of $9,000.

714.    On February 12, 2008, Chernicky made a final payment of $500 for lot 36.

715.    Chernicky have not been provided a deed to the property.   Chernicky was provided documents purportedly to be corporate books for "Open the Barn Door, S.R.L." a Costa Rican corporation for Lot 36.

716.    Repeated calls and letters to Paragon have gone unanswered.

717.    Chernicky is owed $104,500 in actual damages.

### Greg Twomey, Ann Collaras, Rich Klang & Thomas Gulheany

718.    Twomey and Collares purchased Lot 21 in Paragon's Vista Del Mar project and were dated January 23, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Twomey and Collaras paid $25,000 deposit to Paragon via Neustein.

719.    The second Agreement for Deed, Twomey, Klang, and Gulheany purchased Lot 19 in Paragon's Playa Del Mar project and were dated September 25, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Twomey, Klang, and Gulheany paid a $23,800 deposit to Paragon via Neustein.

720.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.   This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

721.    Repeated calls and letters to Paragon have gone unanswered.

722.    Twomey, Collaras, Klang, and Gulheany are owed $48,800 in actual damages.

**Joanna Myers**

723.    Myers purchased Lot 17 in Paragon's Parrita project and was dated April, 2005. *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Myers paid $25,000 deposit to Paragon via Neustein.

724.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

725.    On April 21, 2008, Soto received a payment of $10,000.

726.    On November 11, 2006, Myers made an additional payment of $5,000.

727.    On April 3, 2009, Myers made an additional payment of $1,165.51

728.    On February 2009, Myers made an additional payment of $2,250 to Costa Rican Land & Dev.

729.    Myers was offered and accepted a discount on the outstanding balance for Lot 17 and made paid off the balance in several installments.

730.    Myers has not been provided the Deed or corporate books.

731.    Repeated calls and letters to Paragon have gone unanswered.

732.    Myers is owed $48,800 in actual damages.

**Hope Larose**

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

733.    Larose purchased Lots 34 and 44 in Paragon's Ocean Point and Las Brisas project and was dated February 8, 2006.  *See* Composite Exhibits B-L.  The original purchase price was $145,000 for both lots and Larose paid a $60,000 deposit to Paragon via Neustein.

734.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

735.    According to the Agreement for Deed, paragraph 3, Paragon was obligated to put in place infrastructure of roads and electricity within 18 months of February 8, 2006.

736.    As of today, no infrastructure is in place and any improvements to the land are minimal at best.

737.    Larose has repeatedly attempted to contact Paragon to discuss the situation, but Paragon has not responded and it is believed has entirely shut down operations.

738.    Larose is owed $60,000 in actual damages.

**Richard and Deanna Malek**

739.    The Maleks purchased Lot 29 in Paragon's Punta Verdo project and was dated in May 2005.  The original purchase price was $60,000 and the Maleks paid a $25,000 deposit to Paragon via Neustein. They have since lost the Agreement for Deed, but correspondence from Neustein confirms the transaction.

740.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

741.    The Maleks were offered and accepted a discount on the outstanding balance for Lot 29 and made a final payment of $26,250 for Lot 29.

742.    The Maleks have not been provided a deed to the property.  The Maleks were provided documents purportedly to be corporate books for "Variegata Tree Ferm S.R.L." a Costa Rican corporation for Lot 29.

743.    Repeated calls and letters to Paragon have gone unanswered.

744.    The Maleks are owed $51,250 in actual damages.

### Robert Crowe

745.    Crowe purchased Lot 79 in Paragon's Vista Del Mar project and was dated in July 11, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $60,000 and Crowe paid a $25,000 deposit to Paragon via Neustein.

746.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

747.    Crowe as offered and accepted a discount on the outstanding balance for Lot 79 and made an additional payment of $6,250.

748.    On December 19, 2008, Crowe was offered an additional discount made a final payment of $7,500.

749.    Crowe have not been provided a deed to the property or corporate books.

750.    Repeated calls and letters to Paragon have gone unanswered.

751.    Crowe is owed $38,750 in actual damages.

### Michael Brown

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

752.    Brown purchased Lot 1 in Paragon's Ocean Point project and was dated July 25, 2005.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Brown paid a $35,000 deposit to Paragon via Neustein.

753.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

754.    According to the Agreement for Deed, paragraph 3, Paragon was obligated to put in place infrastructure of roads and electricity within 18 months of July 25, 2005.

755.    As of today, no infrastructure is in place and any improvements to the land are minimal at best.

756.    Brown has repeatedly attempted to contact Paragon to discuss the situation, but Paragon has not responded and it is believed has entirely shut down operations.

757.    Brown is owed $35,000 in actual damages.

**Robert and Jennifer Ruyak**

758.    The Ruyaks purchased Lot 42 in Paragon's Ocean Palm North project and was dated April 2, 2007.  *See* Composite Exhibits B-L.  The original purchase price was $95,000 and the Ruyaks paid a $45,900 deposit to Paragon via Neustein.

759.    The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

760.    On May 30, 2008, the Ruyaks made an additional payment of $17,000.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

761.     On January 18, 2008, the Ruyaks made an additional payment of $11,000.

762.     As of today, no infrastructure is in place and any improvements to the land are minimal at best.

763.     The Ruyaks have not been provided a deed to the property.  The Ruyaks were provided documents purportedly to be corporate books for "Afraima, S.R.L." a Costa Rican corporation for Lot 42.

764.     The Ruyaks have repeatedly attempted to contact Paragon to discuss the situation, but Paragon has not responded and it is believed has entirely shut down operations.

765.     The Ruyaks are owed $73,900 in actual damages.

### Richard Kessler and Bruce Johnson

766.     Kessler and Johnson purchased Lot 66 in Paragon's Buena Vista project.  *See* Composite Exhibits B-L.  The original purchase price was $85,000 and Kessler and Johnson paid a $35,900 deposit to Paragon via Neustein.

767.     The Agreement states that all monies paid are 100% refundable if the transaction does not close.  This statement is false and was false at the time it was made.  This false statement was made through the U.S. mail.  Similar oral misrepresentations were made via wire prior to execution of the Agreement for Deed.

768.     Kessler and Johnson were offered and accepted a discount on the outstanding balance for Lot 66 and made a final payment of $32,825 on June 28, 2007.

769.     As of today, no infrastructure is in place and any improvements to the land are minimal at best.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

770.     Kessler and Johnson have not been provided a deed to the property.  The Ruyaks were provided documents purportedly to be corporate books for "Summer Mornings, S.R.L." a Costa Rican corporation for Lot 66.

771.     Kessler and Johnson have repeatedly attempted to contact Paragon to discuss the situation, but Paragon has not responded and it is believed has entirely shut down operations.

772.     Kessler and Johnson are owed $68,725 in actual damages.

### Class Action Allegations

773.     This is a Rule 23(b)(3) opt-out class action.  There were approximately 2400 lots sold by Paragon.  It is believed that there are approximately 900-1100 individual investors, with some investors purchasing multiple lots.  The average investor (including those who bought multiple lots) deposited approximately $50,000 with Paragon.  The total amount of money in controversy is estimated at $50 million, not including treble damages.

774.     All of the named Plaintiffs and all of the putative class members seek rescission of the Agreements for Deed and a full refund of all monies paid to Paragon.

775.     The proposed class definition is: "All persons who entered into contracts for the sale of Costa Rican real estate with Paragon and any of its affiliated entities."

776.     The class is so numerous that joinder in one action is impracticable.  The number of class members likely exceeds 900 persons.

777.     Plaintiffs' claims are typical of the claims of the class members.  All are based on the same practice and the same fraudulent conduct.

778.     There are common questions of fact and law affecting members of the class, which questions predominate over questions that may affect individual members.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

779.    Plaintiffs will fairly and adequately represent the class members.  Plaintiffs have no interests that conflict with interests of the other class members.    Plaintiffs have retained experienced and competent counsel.

780.    A class action is superior to other available means for adjudication of the claims of the class members.

### III. Causes of Action

### Count I – Breach of Contract

781.    This Count is asserted against each of the Paragon Entities that are parties to the contracts (*i.e.,* Agreements for Deed) with the Named Plaintiffs.

782.    Plaintiffs incorporate Section II above.

783.    A valid and enforceable contract (*i.e.*, the Agreements for Deed) between Plaintiffs and the Paragon entities exists.  The Paragon entities are obligated to make certain improvements to the real property, to keep the property free and clear of liens and encumbrances, to provide a refund within six months of the date of the Agreement, and to provide a refund at the conclusion of the five-year period if the full amount of the purchase price is not paid.

784.    The Paragon entities failed to fulfill their obligations and, in doing so, breached the contract.

785.    Plaintiffs fulfilled all of their obligations under the contract.

786.    The Paragon Entities have ceased operations and have not provided any reasonable assurance to its investors that it intends to or has the ability to otherwise comply with their contractual obligations.  Plaintiffs reasonably believe and anticipate that the Paragon Entities will breach any future obligations to them.

787.    Plaintiffs have suffered financial damages as a result of the Defendants' breach.

100
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

## Count II – Fraudulent Inducement

788. This Count is asserted against each of the Paragon Entities that are parties to the contracts (*i.e.,* Agreements for Deed) with the Named Plaintiffs.

789. Plaintiffs incorporate Section II above.

790. Each of the Named Plaintiffs' transaction included material misrepresentations that were included both in the sales pitch and the contracts themselves. Those misrepresentations were the deposit money was 100% refundable, that the property would remain free and clear of liens and encumbrances, that the unimproved land would be improved with water, sewer, electricity and roads within 18 months, that it would provide a deed to the property, and that it would return the monies at the end of the five-year period.

791. Paragon knew that it could not and would not fulfill its obligations when it made these fraudulent statements. In particular, Paragon knew it could never refund the deposits because it was dispersing the money as it came in to individuals and entities for purposes unrelated to the project. Paragon was not keeping itself capitalized because it s had intention of refunding the money it received. Thus, the statements were not abstract pufferies.

792. Paragon made the false statements with the intention of inducing the Plaintiffs to enter into Agreements for Deed and to make payments to Paragon.

793. Plaintiffs relied on Defendants' false statements when they signed the Agreements.

794. Had Paragon been truthful, Plaintiffs never would have contracted with Paragon.

795. Plaintiffs have been damages as a result of the fraud.

## Count III – Alter Ego/Pierce Corporate Veil

101
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

796.    This Count is asserted against William Gale, Esteban Soto, Lyle Wexler, Larry Webman, Julien Siegel and Stephen Tashman.  This Count seeks to hold William Gale, Esteban Soto, Lyle Wexler, Larry Webman, Julien Siegel and Stephen Tashman liable for wrongdoing of the corporate entities they controlled.

797.    Plaintiffs reasonably believe that the Paragon Entities were owned, operated and controlled by William Gale, Esteban Soto, Lyle Wexler, Larry Webman, Julien Siegel and Stephen Tashman.

798.    William Gale is chairman and owner of Paragon Properties of Costa Rica, S.A.

799.    Esteban Soto is president and owner of Paragon Properties of Costa Rica, S.A.

800.    Larry Webman and/or Stephen Tashman is/are the *de facto* ringleader(s) of Paragon.

801.    Lyle Wexler was Director of Operations for Paragon.

802.    Julien Siegel is the owner and operator of Costa Rican Land.

803.    Upon reasonable information and belief, the Paragon Entities were nothing more than shell corporations  incorporated to allow individual co-Defendants to commit a major fraud.

804.    The Paragon Entities  are defunct and have not responded to prior lawsuits. Despite this, Paragon is still marketing vacant Costa Rican land and is still encouraging investors to deposit more money with Paragon.

805.    Upon reasonable information and belief, the Paragon Entities  operated as a single enterprise for the individual benefit of Gale, Soto, Wexler, Webman and Tashman.  That is, the corporate form was a mere instrametality through which Gale, Soto, Wexler, Webman and Tashman perpetrated their fraudulent scheme.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

806.   The individual Gale, Soto, Wexler, Webman, and Tashman used the Paragon Entities commit fraud.

807.   Plaintiffs have been financially damaged as a result of the fraudulent use of the corporate entities.

808.   The corporate veil of the Pargaon Entities should therefore be piereced and Gale, Soto, Wexler, Webman, and Tashman should held personally liable for the acts committed under the auspices of the Paragon Entities.

### Count IV – Civil RICO/Racketeering (Violation of 18 U.S.C. § 1962(c))

809.   Each of the individual transactions detailed in Section II above constitute separate acts of mail and wire fraud.  Plaintiffs therefore incorporate Section II above.

810.   This is a classic land sales fraud case.  The fraud was implemented by a number of related, but independent entities and individuals that were brought together under the Paragon umbrella.

811.   This Count qualifies as Plaintiffs' civil RICO statement, as required by Local Rule 12.1.

812.   **RICO Sections.** This case involves violations of 18 U.S.C. § 1962(c).

813.   **Individual RICO Defendants.**

a.   Defendant Paragon Properties of Costa Rica, LLC is one of the entities used to create the R.I.C.O. enterprise and effect the racketeering. Defendant Paragon Properties of Costa Rica, LLC, through its agents, committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.  In particular, agents of Defendant Paragon Properties of Costa Rica, LLC induced Plaintiffs and the class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail

103
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

that they were purchasing lots in Costa Rica and the monies paid were 100% refundable.   In fact, the monies paid were not refundable and no lots were transferred.   Moreover, Paragon Properties of Costa Rica, LLC caused false land sales documents to be sent to buyers through the mail, such as the false transfer documents sent to Paulette Wittbold

      b.     Defendant Properties of Costa Rica, Inc. is one of the entities  used to effect the racketeering. Defendant Properties of Costa Rica, Inc., through its agents, committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.  In particular, agents of Defendant Properties of Costa Rica, Inc. induced Plaintiffs and the class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were purchasing lots in Costa Rica and the monies paid were 100% refundable.   In fact, the monies paid were not refundable and no lots were transferred.

      c.     Defendant Paragon Properties of Costa Rica, S.A. is one of the entities used to effect the racketeering. Defendant Paragon Properties of Costa Rica, S.A, through its agents, committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343. In particular, agents of Defendant Paragon Properties of Costa Rica, S.A. induced Plaintiffs and the class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were purchasing lots in Costa Rica and the monies paid were 100% refundable.  In fact, the monies paid were not refundable and no lots were transferred.

      d.     Defendant Esteban Soto is the sole member of Paragon Properties of Costa Rica, LLC.  He is one of the principals of the Paragon and related entities used to implement the racketeering and he exercised control over the Paragon entities including their fraudulent

104
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

conduct. He committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343. In particular, he induced Plaintiffs and the class members to turn over millions of dollars by falsely representing correspondence sent via U.S. mail they were purchasing lots in Costa Rica and the monies paid were 100% refundable. In fact, the monies paid were not refundable and no lots were transferred.

e.      Defendant William Gale is an owner and principal of Paragon entities used to implement the racketeering and he exercised control over the Paragon entities including their fraudulent conduct. He has exercised control over the Paragon entities. He committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343. In particular, he induced Plaintiffs and the class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were purchasing lots in Costa Rica and the monies paid were 100% refundable. In fact, the monies paid were not refundable and no lots were transferred.

f.      Defendant Premier Realty Sales of Costa Rica, Ltda is a Costa Rican entity. It is allegedly the parent company of Defendant Properties of Costa Rica, Inc. Defendant Premier Realty Sales of Costa Rica, Ltda's misconduct is the same as that of Defendant Properties of Costa Rica, Inc. (discussed above).

g.      Defendant All Star Consulting Group, SRL, is a foreign for-profit corporation. It is allegedly the parent company of co-Defendant All Star Consulting Group, Inc. Its misconduct is the same as Defendant All Star Consulting Group, Inc. (discussed below).

h.      Defendant All Star Consulting Group, Inc. is a dissolved Florida corporation. It was one of the entities was used to effect the racketeering. Defendant All Star Consulting Group, Inc., through its agents, entered into numerous fraudulent land transactions in

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.   In particular, agents of Defendant All Star Consulting Group, Inc. induced class members to turn over millions of dollars by falsely representing through phone calls, correspondence sent via U.S. mail, and electronic mail that they were selling lots in Costa Rica and.  In fact, it was selling nothing as the transactions were shams. For example, Defendant All Star Consulting Group was the purported seller in Plaintiff Anne Smith's transactions.

      i.      Bruce Goldberg was the president and owner of Defendant All Star Consulting Group, Inc.  He controlled All Star Consulting Group, Inc., including its involvement in the sham transactions.

      j.      Defendant Alliance Funding, LLC, is a dissolved Florida limited liability company based in Hallandale Beach, Florida.   It was one of the entities was used to effect the racketeering. In particular, agents of Defendant Alliance Funding, LLC entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.   For example, Defendant Alliance Funding, LLC is listed as a seller on Plaintiff Michael Thornton's transactions.

      k.      Defendant Alliance Funding, SRL, is a Costa Rican corporation that owns Alliance Funding LLC.  It was one of the entities was used to effect the racketeering. In particular, agents of Defendant Alliance Funding, SRL entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.   For example, Defendant Alliance Funding, SRL is listed as a seller on Plaintiff Michael Thornton's transactions.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

l.       Defendant Shelden Yablon was a manager and owner of Alliance Funding, LLC.  He controlled Alliance Funding, LLC including its participation in the racketeering.

m.      Murray Linder, was the managing member and owner of Alliance Funding, LLC.  He controlled Alliance Funding, LLC. including its participation in the racketeering.

n.       Defendant Stephen Tashman was and remains a principal member of the racketeering scheme although his exact role is currently unknown.  He held himself out as an officer or manager of the Paragon entities and interacted routinely with the Plaintiffs and other putative class members, inducing them to enter fraudulent land transactions that violated 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.

o.       Defendant Lyle Wexler was Paragon's Director of Operations.  He participated in the racketeering scheme by entering into fraudulent land sales contracts in violation of Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.

p.       Defendant Larry M. Webman was an active participant in the Paragon enterprise.  He routinely held himself out as an officer or manager of Paragon entities and he routinely communicated with investors, inducing them to enter fraudulent land transactions that violated 18 U.S.C. § 1343and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.

q.       David Valentine is the current Director of Operations for Paragon. He has been an active participant in the Paragon enterprise.    He routinely held himself out as an officer or manager of Paragon entities and he routinely communicated with investors, inducing them to

107
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

enter fraudulent land transactions that violated 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a.

    r.  Defendant Paramount International Sales of Costa Rica, SRL, is a Costa Rican corporation that purportedly owns co-Defendant Paramount Consulting Group, Inc.  It was one of the entities was used to effect the racketeering.  It entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a. For example, it is identified as a seller in Plaintiff Roscoe's transaction.

    s.  Paramount Consulting Group, Inc., is a dissolved Florida corporation with its principal place of business in Miami-Dade County, Florida.   It was one of the entities was used to effect the racketeering.  It entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a. For example, it is identified as a seller in Plaintiff Roscoe's transaction.

    t.  Costa Rican Land & Development Inc., is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.  It was one of the entities was used to effect the racketeering.  Plaintiffs and members of the class were induced to make additional payments to Costa Rican Land & Development Company based on its misrepresentations that it was a company not affiliated with Paragon that would be involved in the construction phase of the development.  In fact, Costa Rican Land & Development Inc. was controlled by Julian L. Siegel a participant in the racketeering and a close associate of the principals of the Paragon entities. The monies delivered to Costa Rican Land & Development Inc., like the deposits to Paragon, were not applied to the represented purpose and were never returned. For example, Plaintiff Fox paid Costa Rican Land & Development Inc. $5,000.

108
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

u.      Defendant Julian L. Siegel is the president of Costa Rican Land & Development, Inc.  He exercised control over Costa Rican Land & Development, Inc. and its participation in the racketeering.

v.      Defendant Checkmate Financial, Inc. is a dissolved Florida corporation that participated in the racketeering by purporting to sell units in Paragon.  It entered into numerous fraudulent land transactions in violation of 18 U.S.C. § 1343 and the Interstate Land Sales Act's criminal provision 15 U.S.C. § 1717a. For example, Checkmate Financial, Inc. is identified as the seller in Plaintiff Rossi's transaction.

w.      Defendant Checkmate Realty Sales of Costa Rica, SLR is a foreign corporation participated in the racketeering by purporting to sell units in Paragon.

x.      Chester Potash was the owner and chief executive officer of Checkmate Financial.  He exercised control over that company including its participation in the racketeering.

814.    **Wrong Doers Other than Defendants.**   It is believed there are additional participants in the scheme who have not yet been identified.  They are named as Doe Defendants in the Second Amended Complaint.

815.    **Victims.**  It is believed that there are approximately 900 to 1,100 victims with out of pocket losses of approximately $30-50 million.  Each of the named Plaintiffs is a victim with quantifiable out of pocket losses.  The named Plaintiffs and their out of pocket losses are:

a.      Plaintiff Anne Oginsky is owed $19,100.

b.      Plaintiff Patricia Jalette is owed $71,750.

c.      Plaintiff Anne Smith is owed $83,000.

d.      Plaintiffs Patrick A. and Susan J. Budin are owed $41,310.

e.      Plaintiff Richard Silverman is owed $25,000.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

f.      Plaintiff Richard Thornton is owed $47,500.

g.      Plaintiff Charles Powell is owed $50,000.

h.      Plaintiff Mario Santilli is owed $38,000.

i.      Plaintiff Howard Coleman is owed $62,000.

j.      Plaintiff Loraine Fox is owed $115,900.

k.      Plaintiff John Roscoe is owed $35,000.

l.      Plaintiff Steve Pavlik is owed $65,900.

m.      Plaintiff Grant Moody is owed $25,000.

n.      Plaintiff Randall Lipsuis is owed $81,200.

o.      Plaintiffs Katty Caron and Rene Girard are owed $30,000.

p.      Plaintiff Sidney Crossley is owed $ 54,950.

q.      Plaintiff Raymond Tougas is owed $274,000.

r.      Plaintiff John Rossi is owed $32,000.

s.      Plaintiff David Galloto is owed $25,000.

t.      Plaintiff Steve Wasserman is owed $39,000.

u.      Plaintiff Krishen Iyer is owed $66,000.

v.      Plaintiff William Hylwa is owed $115,900.

w.      Plaintiff David Weber is owed $35,000

x.      Plaintiffs Luther and Libby Hagen are owed $238,075.

y.      Plaintiff Ken Thall is owed $39,125.

z.      Plaintiffs Ronald and Kathleen Erb are owed $72,500.

aa.     Plaintiff Joshua Swedlund is owed $35,000.

bb.     Plaintiffs Lowell and Barbara Enlow are owed $148,500.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

cc.      Plaintiff Patrick Schneider is owed $60,000.

dd.      Plaintiffs Cynthia and Leigh Steele, Janice Kincaid and Terry Cole are owed $70,000.

ee.      Plaintiff Susan Moser is owed $139,000.

ff.      Plaintiffs Maureen and George Cockburn are owed $35,900.

gg.      Plaintiff Paul Bator is owed $30,000.

hh.      Plaintiff Robert DiGiorgio is owed $35,000.

ii.      Plaintiff Scott Corridon is owed $30,000.

jj.      Plaintiff Jerry Park is owed $34,900.

kk.      Plaintiff Frances DeLuca is owed $25,000.

ll.      Plaintiffs Samuel and Camille Reeder are owed $81,250.

mm.      Plaintiffs Nicolas and Regina Muro are owed $44,500.

nn.      Plaintiffs James and Mary Krause and Eric and Carolyn Wallace are owed $71,800.

oo.      Plaintiff Daniel R. Harrison is owed $166,800.

pp.      Plaintiffs Donald and Deborah Schaefer are owed $34,900.

qq.      Plaintiff Rhonda Brewer is owed $35,000.

rr.      Plaintiffs Young K and Sun S. Yoo are owed $82,975.

ss.      Plaintiffs Rocco and Christine Morelli are owed $64,150.

tt.      Plaintiff James Neuber is owed $145,000.

uu.      Plaintiffs Dennis and Dianna Calcaterra and Jo-Ann Durdock are owed $44,450.

vv.      Plaintiff Fady Dakdouk is owed $95,000.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

ww.   Plaintiff John Hay is owed $113,750.

xx.   Plaintiffs Eugene and Roberta Willard are owed $92,750.

yy.   Plaintiff B. Kim Davis is owed $72,500.

zz.   Plaintiffs David and Patricia Graves are owed $105,400.

aaa.   Plaintiffs Robert and Sara Hurst and Kim Couture are owed $103,750.

bbb.   Plaintiffs Patrick and Alicia O'Connor are owed $30,000.

ccc.   Plaintiff Martin Graboski is owed $101,250.

ddd.   Plaintiffs Mark and Cynthia Light are owed $72,500

eee.   Plaintiffs Karoly Szep and Renata Videki are owed $66,316.80.

fff.   Plaintiff Richard Scott is owed $155,900.

ggg.   Plaintiffs Douglas and Cynthia Thackston are owed $45,900.

hhh.   Plaintiff Kurt Mitchell is owed $30,000.

iii.   Plaintiff Donald Wells is owed $40,000.

jjj.   Plaintiff Denise Braithwaite is owed $25,000.

kkk.   Plaintiffs John and Paulette Wittbold are owed $75,000.

lll.   Plaintiff Robert Sloan is owed $191,800.

mmm.  Plaintiffs Jason and Sylvia Martin are owed $59,775.

nnn.   Plaintiff Juan Campos is owed $76,250.

ooo.   Plaintiff Randall Scagliotti is owed $97,500.

ppp.   Plaintiffs James Southcomb and Mike Spataro are owed $52,000.

qqq.   Plaintiff Kraig McGregor is owed $63,750.

rrr.   Plaintiff Paula Broadfoot is owed $124,200.

sss.   Plaintiff Linda Adams is owed $46,250.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

ttt.    Plaintiff Craig Adams is owed $42,500.

uuu.    Plaintiffs John A. and Tamara D. Frank are owed $90,000.

vvv.    Plaintiff Mike Chernicky is owed $104,500.

www.    Plaintiffs Greg Twomey, Ann Collaras, Rich Klang, and Thomas Gulheany are owed $48,800.

xxx.    Plaintiff Joanna Myers is owed $48,800.

yyy.    Plaintiff Hope Larose is owed $60,000

zzz.    Plaintiffs Richard and Deanna Malek are owed $51,250.

aaaa.   Plaintiff Robert Crowe is owed $38,750.

bbbb.   Plaintiff Michael Brown is owed $35,000.

cccc.   Plaintiffs Robert and Jennifer Ruyak are owed $73,900.

dddd.   Plaintiffs Richard Kessler and Bruce Johnson are owed $68,725.

816.    **The Pattern of Racketeering.**  The racketeering in this case involved repeated mail and wire fraud violations from 2005 through 2010, and repeated violations of the criminal provision of the and the Interstate Land Sales Act.  All of the conduct was intended to, and did, induce Plaintiffs and members of the class to turn over substantial sums of money to the Paragon entities, which were controlled and operated by the individual Defendants.  Plaintiffs and members of the class were told they were making fully refundable deposits and installment payments for lots in Costa Rica.  In fact, the monies were never going to be refundable, and title to the lots would never be delivered.  As the money came in, it was simply transferred out of the Paragon accounts to individuals and entities.  This resulted in Paragon being under capitalized to the extent that it could never have reasonably expected to abide by its promises to refund the monies paid.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

817.   **The RICO Enterprise.**  The RICO Enterprises is an associate in fact comprised of the Paragon Entities– the Paragon Enterprise.  The participants in the Paragon Enterprise represented themselves as legitimate companies in the business of selling real estate in Costa Rica.  The land transactions, however, were shams.

Defendants Esteban Soto, William Gale, and Stephen Tashman are believed to be the three individuals that principally exercised control of Paragon Entities and the Paragon Enterprise.

818.   **Has the Racketeering Merged into a Single Enterprise.**   Yes.

819.   **The Relationship between the Racketeering and Paragon's Legitimate Business.**  The Paragon Entities are not believed to have any legitimate business.

820.   **Benefits from Racketeering.**   It is estimated that the Paragon Enterprise received approximately $50 million from its racketeering activities.

821.   **Effects on Interstate or foreign Commerce.**  The victims of the racketeering are from throughout the United States.  The mail and wire fraud emanated from South Florida to all parts of the United States.  The effects of the racketeering have caused injury to the class members throughout the United States.  The racketeering also involved foreign commerce, in particular commerce with Costa Rica as many of the class members travelled to Costa Rica to see the property they were allegedly purchasing.

822.   **Section 1962(c) information.**  The following individual Defendants were employed or associated with the Paragon Enterprise:  Esteban Soto, William Gale, Charles Neustein, Bruce Goldberg, Shelden Yablon, Murray Linder, Stephen Tashman, Lyle Wexler, Larry Webman, David Valentine, Julian Siegel, and Chester Potash.  Their respective roles are described above.   The following corporate Defendants were associated with the Paragon

114
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Enterprise: Paragon Properties of Costa Rica, LLC,  Properties of Costa Rica, Inc.,  Paragon Properties of Costa Rica, S.A.,  Charles L. Neustein, P.A.,  Law Offices of Charles L. Neustein, P.A., Premier Realty Sales of Costa Rica, Ltda,  All Star Consulting Group, SRL, All Star Consulting Group, Inc., Alliance Funding, LLC, Alliance Funding, SRL, Paramount International Sales of Costa Rica, SRL, Paramount Consulting Group, Inc.,  Costa Rican Land & Development Inc., Checkmate Financial, Inc., Checkmate Realty Sales of Costa Rica, SLR. Plaintiffs and member of the class were injured by the operation of the Paragon enterprise in that they were defrauded of the money that the paid towards what they believed were legitimate land transactions.  The individual Defendants are not the RICO Enterprise (*i.e.*, Paragon).  Some of the corporate Defendants, in particular the Paragon Entities, also constitute the RICO Enterprise (*i.e.*, the Paragon Enterprise).

823.    **Injury to Business or Property.**  Plaintiffs and the class members have been injured with respect to their property – namely, the money that has been misappropriated.

824.    **Relationship Between Injury and Each Separate RICO Violation.**  Each transaction resulted in independent, identifiable damages.

825.    **Damages for Each Violation.**   Each transaction resulted in independent, identifiable damages – *i.e.*, the amount each Plaintiff and member of the class paid toward the fraudulent transaction.

### Count V – Civil Theft (Fla. Stat. § 772.11).

826.    Plaintiffs incorporate Section II above.

827.    This count is made by all Plaintiffs against the Paragon Entities.

828.    The Paragon Entities committed civil theft, when by clear and convincing evidence they violated Section 812.014 of the Florida Statutes.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

829.    Defendants fraudulently obtained significant sums from the Plaintiffs, and then intentionally and feloniously refused to refund monies that they were contractually obligated to refund.

830.    Defendants fraudulently and feloniously misappropriated deposit money for personal and non-business use.  For example, Gale routinely travelled to Europe and bragged to the investors that he has dined with entertainer Elton John and that he is close friends with and was invited to the wedding of actor Peter Weller (RoboCop).  (According to published sources, Weller is an investor and putative class member).

831.    Plaintiffs have been damaged financially as a result of the Defendants' civil theft.

832.    Plaintiffs are entitled to threefold actual damages.

833.    Plaintiffs are entitled to attorneys' fees and costs.

### Count VI (Breach of Fiduciary Duty)

834.    Plaintiffs incorporate Section II above.

835.    This Count is asserted by all Plaintiffs against Defendants Charles L. Neustein. Law Offices of Charles L. Neustein, and Charles L. Neustein, P.A.  (collectively "Neustein").

836.    In the contracts used by the Paragon entities, Charles L. Neustein, P.A. is identified as the "Escrow Holder."  The contracts also provide: "Make checks payable to escrow-holder, 'Trust Account of Charles L. Neustein, P.A.'"

837.    Mr. Neustein also sent the Named Plaintiffs and class members letters confirming receipt of the deposits, and identifying himself as "escrow agent for Paragon Properties of Costa Rica, S.A."

838.    Under the contracts that provided for a straight sale of the land (as opposed to the purchase of a Costa Rican entity), the escrow agent (*i.e.*, Neustein) was to hold any payments

116
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

beyond the initial deposit until the transaction closed. *See* Agreement for Deed ¶ 2 ("Upon registration of the deed, the Escrow Holder will disburse the balance due to Seller."). Under the contracts that provided for a transaction involving the purchase of a Costa Rican entity, the escrow agent (*i.e.*, Neustein) was to hold the stock of the corporation and deed until the transaction closed. These responsibilities were confirmed by the letters sent by Mr. Neustein to the Named Plaintiffs and class members.

839. As an escrow agent, Neustein, assumed fiduciary duties to the Named Plaintiff and class members.

840. Neustein breached his fiduciary duties by failing to hold monies, corporate stock, and deeds in escrow pending the closing of the transactions. For example, as alleged above, Named Plaintiff Raymond Tougas paid Neustein additional payments beyond the initial deposits totaling $94,000.00. Neustein should be holding that money in escrow as the Tougas transactions never closed. Neustein does not have the money in escrow.

841. The Named Plaintiffs and members of the class have been injured by Neustein's breaches of his fiduciary duties as escrow agent in that they have been deprived of funds and/or property to which they are entitled.

### Count VII – Restoration of Lost Document
(Jallete, Lipsius, Galloto, Wasserman, the O'Connors, Graboski, and the Maleks only)

842. This case is brought against all Defendants to the extent necessary to otherwise support their respective claims.

843. Plaintiffs Jallete, Lipsius, Galloto, Wasserman, the O'Connors, Graboski, and the Maleks executed respective Agreements for Deed with Paragon and sent it to Paragon for Paragon's signature. They paid Paragon through Neustein. Neustein confirmed the transactions as indicated above.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

844.   Plaintiffs Jallete, Lipsius, Galloto, Wasserman, the O'Connors, Graboski, and the Maleks do not have an executed copy of the Agreement for Deed.  They may never have actually received an executed copy from Paragon.

845.   An unexecuted copy of Jalette's Agreement for Deed is attached as *See* Composite Exhibits B-L.

846.   Only Jallete, Lipsius, Galloto, Wasserman, the O'Connors, Graboski, and the Maleks the Defendants have an interest in the document.

847.   Jallete, Lipsius, Galloto, Wasserman, the O'Connors, Graboski, and the Maleks request that the Court restore the executed copy of the Agreement for Deed pursuant to Section 71.011 of the Florida Statutes.

**Count VIII – Interstate Land Sales Disclosure Act (15 U.S.C. §§ 1701 et. seq.)**

848.   This Count is asserted against the Paragon Entities.

849.   Plaintiffs incorporate Section II above.

850.   Paragon is a developer within the meaning of the Interstate Land Sales Full Disclosure Act ("ILSFDA").

851.   Paragon used a common promotional plan to sell unimproved vacant lots in Costa Rica.

852.   Paragon failed to issue the purchasers a property report, as required by the ILSFDA.

853.   Paragon violated 15 U.S.C. §§ 1703(1)(A)-(B) & 1703(2)(A)-(D).

854.   The U.S. Department of Housing and Urban Development opened an investigation into Paragon and its business practices due to complaints by investors.  Based upon

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

this investigation, the Paragon Entities actually knew that they were in violation of the Act, but failed to take any corrective action.

855.    Paragon used fraud and deceit to sell and market the lots in Costa Rica.   In particular, Paragon falsely represented that all monies paid toward the land purchases were 100% refundable.   These representations were false when made as Paragon was depleting the monies it received in manner that would make refunds impossible.

856.    Plaintiffs invoke their right of rescission to cancel the Agreements for Deed and seek a full refund of all monies paid to Paragon.

857.    Plaintiffs have been damaged financially as a result of Paragon's intentional violation of the ILSFDA and as a result of Paragon's fraud.

858.    Paragon's intentional violation of the ILSFDA constitutes a felony.   *See* 15 U.S.C. § 1717.

### Count IX -- Fraudulent Transfers (Fla. Stat. § 726.105)

859.    This Count is asserted against Judith Gale, Lisa Tashman, Julien Siegel and Mariland Tashman.

860.    Plaintiffs and the members of the class are creditors of the Paragon Entities, by virtue of the monies transferred for the alleged land transactions and Paragon's breach of contract in refusing to refund the monies.

861.    Paragon transferred monies received from Plaintiffs and members of the class – monies that were to be held in escrow and which were to purchase land – to Defendants Judith Gale, Lisa Tashman and Julien Siegel.   For example, Paragon paid the personal credit cards of Defendants Judith Gale, Lisa Tashman, and Julien Siegel from funds that were supposed to be held in escrow and which were supposed to go toward land purchases, and Paragon ordered the

119
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

direct transfer of funds from Charles L. Neustein, P.A.'s trust funder account to Defendants Lisa Tashman and Julien Siegel.

862.     The Paragon Entities also paid Mariland Tashman monies from the Paragon operating account.  There is no evidence that she ever provided services for Paragon.

863.     At the time of the transfers, Paragon was aware that the Named Plaintiffs and class members had claims against Paragon.  Paragon made the transfers to Defendants Judith Gale, Lisa Tashman, and Julien Siegel with the actual intent to hinder, delay, or defraud Plaintiffs and members of the class from obtaining the monies Paragon owed them.

864.     The transfers to Defendants Judith Gale, Lisa Tashman, Julien Siegel and Mariland Tashman were fraudulent transfers for purposes of Fla. Stat. § 726.105

865.     As a matter of law, all monies from a fraudulent transfer must be returned to the Plaintiffs.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

**Prayer for Relief**

All Plaintiffs (on their own behalf and on behalf of all others similarly situated) pray for the following relief: rescission of the Agreements for Deed, actual damages in the amount equal to the amount of money they respectfully paid the Defendants; treble damages equal to three times the amount of their actual damages pursuant to Section 772.11 of the Florida Statutes and 18 U.S.C. § 1964; disgorgement of profits from Neustein and Paragon's unnamed counsel, punitive damages as a result of the Defendants' fraud; pre- and post-judgment interest and reasonably attorneys' fees and costs.

All Plaintiffs (on their own behalf and on behalf of all others similarly situated) request an injunction to temporarily and permanently enjoin the Defendants from accepting any additional funds from additional "buyers," and an injunction to temporarily and permanently enjoin Neustein from dispersing any of the buyers' property (either money or deeds) to anyone without Court approval.

All Plaintiffs (on their own behalf and on behalf of all others similarly situated) request restitution from all Defendants and yet unidentified co-Defendants/third-parties who were the recipients of fraudulent transfers. The Plaintiffs further request a constructive trust and lien on all assets of all Defendants and any yet unidentified co-Defendants/third-parties who were the recipients of fraudulent transfers.  All money deposited with Paragon via Neustein is tainted and no one may retain the tainted funds.

Plaintiffs' actual damages are liquidated in the following amounts:  Oginsky -- $19,100; Jalette -- $71,750; Smith -- $83,000; the Budins -- $41,310; Silverman -- $25,000; Thornton -- $47,500; Powell -- $50,000; Santilli -- $38,000; Coleman -- $62,000; Fox -- $115,900; Roscoe -- $35,000; Pavlik -- $65,900; Moody -- $25,000; Lipsius -- $81,200; Caron and Girard -- $30,000;

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Crossly -- $54,950; Tougas -- $274,000; Rossi -- $32,000; Galotto -- $25,000; Wasserman --

$39,000; Iyer -- $65,000; Hylwa -- $115,900; Weber -- $35,000; the Hagens -- $238,075; Thall --

$39,125; the Erbs -- $72,500; Swedlund -- $35,000; the Enlows -- $148,500; Schneider --

$60,000; the Steeles, Kincaid, and Cole -- $70,000; Moser -- $139,000; the Cockburns --

$35,900; Bator -- $30,000; DiGiorgio -- $35,000; Corridon -- $30,000; Park -- $34,900; DeLuca

-- $25,000; the Reeders -- $81,250; the Muros -- $44,500; the Krause and the Wallaces --

$71,800; Harrison -- $166,800; the Schaefers -- $34,900; Brewer -- $35,000; the Yoos --

$82,975; the Morellis -- $64,150; Neuber -- $145,000; the Calcaterras and Durdock -- $44,450;

Dakdouk -- $95,000; Hay -- $113,750; the Willards -- $92,750, Davis -- $72,500; the Graves --

$105,400; the Hursts and Couture -- $103,750; the O'Connors -- $30,000; Graboski -- $101,250;

the Lights -- $72,500; Szep and Videki -- $66,316.80; Scott -- $155,900; the Thackstons --

$45,900; Mitchell -- $30,000; Wells -- $40,000; Braithwaite -- $25,000; the Wittbolds --

$75,000; Sloan -- $191,800; the Martins -- $59,775; Campos -- $76,250; Scagliotti -- $97,500;

Southcomb and Spataro -- $52,000; McGregor -- $63,750; Broadfoot -- $124,200; Linda Adams

-- $46,250; Craig Adams -- $42,500; the Franks -- $90,000  ; Chernicky -- $104,500; Twomey,

Collaras, Klang and Gulheany -- $48,800; Myers -- $48,800; Larose -- $60,000; the Maleks --

$51,250; Crowe -- $38,750; Brown -- $35,000; the Ruyaks -- $73,900; Kessler and Johnson --

$68,725  Accordingly, the Plaintiffs' treble damages are also liquidated.

Respectfully submitted,

/s/ Matthew Sarelson
Matthew Seth Sarelson, Esq.
Fla. Bar No. 888281
**SARELSON LAW FIRM, P.A.**
1401 Brickell Avenue, Suite 510
Miami, Florida 33131
305-379-0305
800-421-9954 (fax)

122
SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

msarelson@sarelson.com

/s/ Paul B. Kunz
Paul B. Kunz, Esq.
Fla. Bar No. 159492
**BANDER & ASSOCIATES, P.A.**
444 Brickell Avenue, Suite 300
Miami, Florida 33131
305-358-5800
305-374-6593 (fax)
paul@bandervisa.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 24, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the forgoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

  /s/ Paul B. Kunz
Paul B. Kunz, Esq.

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

**Service List**
**Case No.: 10-21720-civ-KING/Bandstra**

Matthew Seth Sarelson, Esq.
Fla. Bar No. 888281
**SARELSON LAW FIRM, P.A.**
1401 Brickell Avenue, Suite 510
Miami, Florida 33131
305-379-0305
800-421-9954 (fax)
msarelson@sarelson.com
Counsel for Plaintiffs

Paul B. Kunz, Esq.
Fla. Bar No. 159492
**BANDER & ASSOCIATES, P.A.**
444 Brickell Avenue, Suite 300
Miami, Florida 33131
305-358-5800
305-374-6593 (fax)
paul@bandervisa.com
Counsel for Plaintiffs

David H. Charlip, Esq.
Fla. Bar No. 329932
**CHARLIP LAW GROUP, LC**
17501 Biscayne Blvd., Suite 510
Aventura, Florida 33160
305-354-9313
305-354-9314 (fax)
dcharlip@charliplawgroup.com
Counsel for the Neustein Defendants

Jeffrey Tew, Esq.
Fla. Bar No. 121291
**TEW CARDENAS LLP**
1441 Brickell Ave, 15th Floor
Miami, Florida  33131
305-536-1112
305-536-1116 (fax)
Counsel for Defendants Judith Gale,
Lisa Tashman & Julien Siegel

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawyerBlog.com
www.Sarelson.com

Stephen N. Rosenthal, Esq.
Fla. Bar. No. 346144
20533 Biscayne Blvd, Ste 265
Aventura, Florida  33180
305-931-1115
305-931-1180 (fax)
Asnr7@aol.com
Counsel for Defendants Goldberg
& All Star Consulting Group, Inc.

William Gale, *pro se*
1921 N.E. 205th Street
Miami, Florida 33179
Via U.S. Mail only

Stephen Tashman, *pro se*
822 Bryan Place
Fort Lauderdale, FL  33312
Via U.S. Mail only

Larry Webman, *pro se*
1250 Hallandale Beach Blvd
Hallandale, FL  33009
Via U.S. Mail only

Murray Linder, *pro se*
3754 NE 209th Terrace
Miami, FL  33180
Via U.S. Mail only

Chester Potash, *pro se*
BOP # 02404-748
Federal Correctional Institute - Miami
15801 SW 137th Ave
Miami, FL  33177
Via U.S. Mail only

SARELSON LAW FIRM, P.A., 1401 Brickell Avenue, Suite 510, Miami, Florida 33131, 305-379-0305, 800-421-9954 (fax)
www.FloridaConsumerLawerBlog.com
www.Sarelson.com