# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 10-21720-CIV-KING

ANITA OGINSKY, et. al,

      Plaintiffs,

v.

PARAGON PROPERTIES OF COSTA RICA
LLC, a Florida limited liability company, et. al,

      Defendants.

_____/

## ORDER GRANTING MOTIONS TO DISMISS WITHOUT PREJUDICE

**THIS CAUSE** comes before the Court upon three Motions to Dismiss the Amended

Complaint filed by ten defendants. Defendants Costa Rican Land & Development, Inc., Judith

Gale, LTS Management, Inc., Julian Siegel, Lisa Tashman, and Mariland Tashman filed a

Consolidated Motion to Dismiss Plaintiff's Second Amended Complaint (DE #91) September

27, 2010. Defendants All Star Consulting Group, Inc. and Bruce Goldberg filed their Motion

to Dismiss Second Amended Class Action Complaint (DE #118) December 6, 2010. The Court

has been fully briefed on the matters raised in both Motions.[1] Although the Motions moved for

dismissal of both the federal-law and state-law causes of action asserted in the Second Amended

Complaint, the Court heard oral argument on the federal law claims only on January 27, 2011.

---

[1]Plaintiffs filed a Response in Opposition to the Motion to Dismiss Filed by Defendants Costa Rican
Land & Development, Inc., Judith Gale, LTS Management, Inc., Julian L. Siegel, Lisa Tashman and
Mariland Tashman (DE #103) on October 14, 2010. Defendants filed a Reply (DE #111) October 29, 2011.
Plaintiffs filed a Response in Opposition to All Star Consulting Group, Inc. and Bruce Goldberg's Motion
to Dismiss (DE #119) on December 23, 2010.

(DE #122). At the conclusion of the hearing, the Court reserved ruling on the Motions, and ordered counsel for Defendants to prepare a proposed order granting the motions to dismiss, raising all the issues argued at the hearing, within twenty days. *Id.* The Court further ordered that Plaintiffs would have ten days thereafter to respond. Defendants timely submitted a proposed order on February 16, 2010, and Plaintiffs responded March 2, 2011. (DE #125).

The third motion to dismiss was filed by Defendants Charles L. Neustein, P.A., Law Offices of Charles L. Neustein, P.A., and Charles L. Neustein (DE #77). The Court has been fully briefed on the matters raised therein,[2] but did not hear oral argument.

## I.    BACKGROUND

This case centers around a massive fraud relating to the sale of properties in Costa Rica.[3] The fraud was orchestrated by a few key individuals who allegedly operated a Ponzi scheme to bilk would-be purchasers of Costa Rican land out of hundreds of thousands of dollars in pre-construction deposits. In short, Defendants solicited supposedly refundable deposits and installment payments from land purchasers, and then refused to either refund the monies upon request, or transfer title to the purchased property when the balance was paid in full. Instead, Defendant diverted the funds to personal accounts and to other people for purposes wholly unrelated to the project. At first, Defendants were able to pay refunds to disgruntled purchasers

---

[2]Defendants' Motion (DE #77) was filed September 14, 2010. Plaintiffs filed a Response in Opposition (DE #93) September 28, 2010, to which Defendants replied October 6, 2010. (DE #100).

[3]These facts are taken from the Second Amended Complaint (DE #64). Plaintiffs filed the original Complaint May 26, 2010. (DE #1). Plaintiff filed an Amended Complaint (DE #8) on June 20, 2010, before any Defendants were served, and filed the Second Amended Complaint (DE #64) August 24, 2010 with leave of court. *See* DE #54. The instant motions to dismiss are directed at the Second Amended Complaint, which will be referred to simply as "the Complaint."

out of funds solicited from new buyers. However, when Defendants ran out of money from new buyers to pay refunds to earlier buyers, the entire operation simply shut down.

The individual Defendants allegedly used the sixteen entity Defendants to carry out the Ponzi scheme. The first named Defendant-entity is Paragon Properties of Costa Rica, LLC, and the Plaintiffs have dubbed Defendants' entire fraudulent scheme the "the Paragon enterprise." (DE # 64 ¶ 1). The Defendant entities are collectively referred to in the Complaint as "Paragon" or "the Paragon entities." *Id.* According to Plaintiffs, "Paragon" marketed and sold vacant lots in Costa Rica through the individual Defendant-entities. One of the entities was listed as the seller on each of the sales contracts. The lots themselves were supposedly part of large subdivision projects which had not yet begun construction. Purchasers were required to make a substantial deposit to consummate the sale. Additionally, Paragon frequently solicited additional installment payments beyond the initial deposit by offering a discount off the final purchase price if the installment was paid prior to the closing date. All of these payments were supposedly refundable upon request. All payments were made to Defendants' escrow agent, Charles L. Neustein, P.A., which is also named as a Defendant in this action. Charles L. Neustein, P.A. was an entity run by Defendant Charles L. Neustein, a Florida lawyer who previously served as a North Miami Municipal Judge. Brochures and other materials sent to investors emphasized Defendant Neustein's judicial experience.

Defendants used virtually identical sales contracts, called Agreements for Deed, for all the sales. Among other things, the Agreements for Deed provide that Paragon would provide roads, electricity, water and sewer service within two years of signing the agreement. The

3

Agreements for Deed require the buyer to pay the balance of the purchase price within five years from the date of signing the Agreement, and the seller to transfer title to the property within a reasonable time after payment of the full purchase price. The Agreements also contain a unique clause: If the entire balance is not paid within the five-year period, any amounts that have been paid by the purchaser are fully refundable.[4] The Agreements for Deed provided the procedure for payment by purchasers. All payments were to be made to the escrow holder, Defendant Charles L. Neustein, P.A. The escrow holder was supposed to disburse purchasers' deposits to the seller upon receipt of the deposit and a signed Agreement for Deed. Charles L. Neustein, P.A., as escrow holder, was also supposed to disburse the balance to the seller upon receipt of a registered deed to the subject property.

However, according to Plaintiffs, "Paragon, like the paradise it purported to sell, is a myth." (DE #64 ¶ 4). The promised infrastructure improvements were never made, refund requests have gone unanswered, and valid deeds have not been provided to buyers who made full payments. Plaintiffs allege that the promises contained in the Agreements for Deed were false when made, and are therefore fraudulent. Accordingly, they assert claims for breach of contract, fraudulent inducement, civil RICO, civil theft, breach of fiduciary duty, restoration of lost document, violation of the Interstate Land Sales Full Disclosure Act ("ISFDA"), and fraudulent transfers.

The Complaint is divided into three sections. Section I is an introduction that describes

---

[4]The Agreements for Deed provide, in relevant part: "If the balance is not paid by the expiration of the sixty (60) month period, Seller will return the amounts paid without interest. In such event, this Agreement shall be deemed cancelled." (DE #66-1).

the scheme generally, identifies the parties, and includes jurisdiction and venue allegations. (DE #64 at ¶¶ 1–132). Section II describes the transactions entered into between Defendants and individual named Plaintiffs. *Id.* ¶¶ 133–772. Section II also contains class action allegations. *Id.* ¶¶ 773–80. Section III alleges the above-mentioned causes of action in nine counts. *Id.* ¶¶781–865. Defendants move to dismiss the entire Complaint on the ground that it is a shotgun pleading, and move to dismiss all of the individual counts except for Count VII, which seeks restoration of a lost document on behalf of Plaintiffs who do not have an executed copy of their Agreements for Deed in their possession.

## II.    LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This plausibility requirement outlined by the Supreme Court "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey,* 334 F.3d

1246, 1247 (11th Cir. 2003).  However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at

1949. Thus, courts determining the sufficiency of a complaint engage in a two-pronged analysis:

"(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where

there are well-pleaded factual allegations, 'assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief.'" *Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d

1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).

## III.   DISCUSSION

### A.   Shotgun Pleading

Defendants argue the Complaint should be dismissed as an impermissible "shotgun

pleading."  According to Defendants, the Complaint "bears an uncanny resemblance" to the

complaint described by the Eleventh Circuit in *Magluta v. Samples*, 256 So. 2d 1282, 1284 (11th

Cir. 2001):

> The complaint is a quintessential "shotgun" pleading of the kind we have
> condemned repeatedly, beginning at least as early as 1991.  It is in no sense the
> "short and plain statement of the claim" required by Rule 8 of the Federal Rules
> of Civil Procedure. . . . It names fourteen defendants, and all defendants are
> charged in each count.  The complaint is replete with allegations that "the
> defendants" engaged in certain conduct, making no distinction among the
> fourteen defendants charged, though geographic and temporal realities make plain
> that all of the defendants could not have participated in every act complained of.
> Each count incorporates by reference the allegations made in the section entitled
> "General   Factual   Allegations"—which   comprises   146   numbered
> paragraphs—while also incorporating the allegations of any count or counts that
> precede it.  The result is that each count is replete with factual allegations that
> could not possibly be material to that specific count, and that any allegations that
> are material are buried beneath innumerable pages of rambling irrelevancies. This
> type of pleading completely disregards Rule 10(b)'s requirement that discrete
> claims should be plead in separate counts, and is the type of complaint that we

6

have criticized time and again.

*Magluta*, 256 F.3d at 1284.

However, Plaintiff's Complaint differs from the complaint in *Magluta* and the type of complaint condemned as a "shotgun pleading" in this circuit. "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). *See also Whitney Info. Network, Inc. v. Gagnon*, 353 F.Supp. 2d 1208, 1210–11 (M.D. Fla. 2005) ("A party may not incorporate all allegations of each count in every successive count . . . . The entirety of the counterclaim will be dismissed as a shotgun pleading."); *T.D.S., Inc. v. Shelby Mutual Ins. Co.*, 760 F.2d 1520, 1545 (11th Cir. 1985) (criticizing complaint which "combin[ed] a variety of discrete claims in one count in such a way as to make it difficult to discern which allegations or damages pertained to which theory of recovery"). Unlike the complaints normally characterized as "shotgun pleadings," the Complaint here incorporates the allegations of Section II only (allegations relating to named Plaintiffs' individual transactions) into six of the nine counts. It does not incorporate all the preceding paragraphs in the Complaint into each successive count, and each count states which Defendants it is asserted against. *See Flamenbaum v. Orient Lines, Inc.*, Case No. 03-22549, 2004 WL 1773207, at *15 ("It is hardly a violation in every case for several counts to adopt by reference paragraphs describing the same set of circumstances.").

The collective references throughout the Complaint to "Paragon" and "the Paragon

Entities," however, is problematic.  Plaintiffs explain they used the collective reference for the sake of brevity—because the alleged misrepresentations in each Plaintiff's Agreement for Deed are identical, Plaintiffs sought to avoid repeating the same allegations again and again.  The collective references are not objectionable in Section I of the Complaint, which describes the overall scheme generally, and even in some instances in Section III, which contains some counts where multiple defendants are alleged to have engaged in identical misconduct.

However, such a collective reference is only permissible if Defendants and the Court can ascertain which Defendants are alleged to have engaged in what wrongdoing.  As explained more fully in the sections below, Plaintiffs' use of the collective reference becomes problematic in Section II.  In many instances, Plaintiffs employ the collective reference to "Paragon" or "the Paragon entities" to allege specific transactions between individual named Plaintiffs and specific Defendants.  If Plaintiffs wish Section II to serve as the factual basis for the counts pled in Section III, Section II must be pled with the specificity required by Rule 8 and *Twombly*.  Although this Complaint is not as egregious as the "shotgun pleadings" discussed above, the collective references in Section II render many of Plaintiffs' claims insufficient under Rule 8, and where applicable, Rule 9(b).  These pleading deficiencies are discussed in detail in the succeeding sections.

### B.    Fraud-based Claims

In federal court, fraud-based claims must be pled with the heightened level of particularity required by Federal Rule of Civil Procedure 9(b).  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a complaint alleging fraud must state: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

### 1. Count IV: RICO

Count IV of the Complaint incorporates Section II of the Complaint (allegations of individual Plaintiffs' transactions with Defendants), and alleges violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). (DE #64 ¶¶ 809–25). Defendants argue Plaintiffs have failed to state a claim for relief under RICO. Upon review of the Complaint, the Court finds that Plaintiffs have failed to comply with Federal Rule of Civil Procedure 9(b) and Local Rule 12.1, which requires the filing of a Civil RICO Case Statement. Count IV will be dismissed without prejudice.

RICO, in relevant part, prohibits the conducting of an enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c).[5] To satisfy the "pattern of racketeering" element, a RICO plaintiff must prove "at least two acts of racketeering activity" occurred over a period of

---

[5]Section 1962(c) provides in full:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

ten years. 18 U.S.C. § 1961(5). "Racketeering activity," in turn, is defined as violation of any of a number of statutes listed in section 1961(1). 18 U.S.C. § 1961(1). These include the federal statutes prohibiting mail fraud and wire fraud. *Id.* In order to state a claim under § 1962, therefore, "a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." *Republic of Panama v. BCCI Holdings, (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir.1997). Defendants argue Plaintiffs have failed to allege facts supporting the predicate acts of mail fraud and wire fraud with the heightened level of specificity required for fraud claims.

### a.    Rule 9(b)

RICO predicate acts sounding in fraud must be pled with the heightened level of specificity required by Federal Rule of Civil Procedure 9(b) for fraud claims generally. *Liquidation Comm'n of Banco Intercontinental v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008) (finding that fraud-based predicate acts must be pleaded with specificity, but non-fraud predicate acts need only meet Rule 8 pleading standard).

Here, Defendants argue that Plaintiffs have failed to allege the predicate acts of racketeering activity, mail and wire fraud, with the requisite particularity. The offenses of mail and wire fraud are simply the transmission of a misrepresentation through the mail or by wire, respectively. 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud). Plaintiffs allege the misrepresentations in this case were the statements in the individual Plaintiffs' Agreements for Deed that "all monies paid are 100% refundable if the transaction does not close." (DE #64). Accordingly, Plaintiffs assert that the "person responsible for the statement" is the seller of the

property referenced in each Agreement for Deed. *Id.* However, Plaintiffs fail to name the seller in Section II of the Complaint for a number of the transactions described in the Complaint. *See, e.g., id.* ¶¶ 242–46 (alleging Plaintiff Grant Moody purchased property from "Paragon" without naming individual person or entity who acted as the seller); ¶¶ 247–55 (same, as to transactions with Plaintiff Randall Lipsius); ¶¶ 335–41 (same, as to transactions with Plaintiff Joshua Swedland); ¶¶ 406–10 (same, as to transactions with Plaintiff Frances DeLuca). Plaintiffs argue that Defendants may find this information by referring to the Agreements for Deed themselves, which were filed as Exhibits to the Second Amended Complaint. (DE #66). However, the Exhibits are 159 pages long and are not indexed or organized in any way to aid in locating the Agreement corresponding to a particular property, plaintiff, or defendant. *Id.* This failure to identify the particular Defendant responsible for the alleged misrepresentations that constitute mail and wire fraud in the Complaint itself is fatal to Plaintiffs' RICO claim.

In addition, Plaintiffs allege that Defendants made misrepresentations other than those contained in the Agreements for Deed. The Complaint states the following sentence with respect to each of the individual Plaintiffs' transactions with Defendants: "Similar oral misrepresentations were made via wire prior to the execution of the Agreement for Deed." *See, e.g.,* DE #64 ¶¶ 138, 145, 162, 175, 273, 294, 319, 381, 431, 639. Plaintiffs allege no facts supporting these statements. To the extent that Plaintiffs wish these "similar oral misrepresentations" to serve as RICO predicate acts, they must allege the misrepresentations made, the person responsible for the misrepresentations, the time and place the statements were made, how the statements misled the individual Plaintiffs, and how Defendants gained from them. *Ambrosia Coal & Constr. Co. v.*

11

*Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007).

### b.    RICO Case Statement

This Court's Local Rules reiterate Rule 9(b)'s heightened specificity standard by requiring that all civil RICO plaintiffs file and serve a RICO Case Statement. S.D. Fla. L.R. 12.1. The RICO Case Statement must "include the facts relied on to initiate the RICO claim." *Id.* To ensure that the necessary facts are included, the Case Statement must contain specific information that is listed in the Rule, and must be presented in the format laid out in the Rule. *Id.* RICO claims may be subject to dismissal for failure to comply with Rule 12.1. *Platypus Wear, Inc. v. Clarke Modet & Co.*, Case No. 06-20976-CIV, 2008 WL 186637, at \*3 (S.D. Fla. Jan. 18, 2008) ("Dismissal of RICO counts for violation of Local Rule 12.1 is discretionary."); *Harrison Enters., Inc. v. Moran*, Case no. 97-4362-CIV, 1999 WL 1211753, at \*4 (S.D. Fla. Aug. 30, 1999) (warning that continued failure to comply with Local Rule 12.1 would result in dismissal with prejudice).

Here, Plaintiffs have included a properly organized RICO Case Statement in the Second Amended Complaint. (DE #64 ¶¶ 812–25). However, the RICO Case Statement, as filed, omits some of the required information. For example, Rule 12.1(d) requires Plaintiffs to "provide in detail and with specificity . . . when and how each victim was injured." L.R. 12.1(d). However, Plaintiffs only state the names of each Plaintiff along with the sums each Plaintiff claims he or she is owed. (DE #64 ¶ 815(a)–(dddd)). Rule 12.1(e) also requires that civil RICO plaintiffs "describe in detail the pattern of racketeering/criminal activity." S.D. Fla. L.R. 12.1(e). The Rule further explains that a sufficient description separately lists: the predicate acts and their dates,

12

the participants in the acts, the activity surrounding each predicate act, whether there have been any criminal convictions for any of the predicate acts, the relationship between the predicate acts, and how the predicate acts pose a threat of continued criminal activity. L.R. 12.1(e). Furthermore, section (e) expressly states the predicate offenses of mail fraud and wire fraud "shall be stated with particularity," and cites Rule 9(b). L.R. 12.1(e)(3). Plaintiffs instead allege, in a single paragraph, a general and vague description of the fraudulent scheme. (DE #64 ¶ 816). This does not meet the Rule's requirements.

In addition, Plaintiffs have not complied with the Local Rule's requirements that they "describe in detail the enterprise." L.R. 12.1(f). To comply with section (f) of the Rule, civil RICO plaintiffs must, among other things, state the names of all individuals and entities constituting the enterprise, "explain how each separate defendant participated in the direction or conduct of the affairs of the enterprise," and state whether the defendants are the enterprise itself or separate from it. *Id.*[6] Again, Plaintiffs included a one-paragraph, general description of the

---

[6]Local Rule 12.1(f) provides in full:

Describe in detail the enterprise for each RICO claim. A description of the enterprise shall:

    (1)    state the names of the individuals, partnerships, coprorations, associations, or other entities constituting the enterprise;

    (2)    describe the structure, purpose, roles, function, and course of conduct of the enterprise;

    (3)    state whether any defendants are employees, officers, or directors of the enterprise;

    (4)    state whether any defendants are associated with the enterprise, and if so, how;

    (5)    explain how each separate defendant participated in the direction or conduct of the affairs of the enterprise;

    (6)    state whether you allege (A) that the defendants are individuals or entities separate from the enterprise, or (B) that the defendants are the enterprise itself, or (C) that the defendants are members of the enterprise; and

13

fraudulent scheme.  (DE #64 ¶ 817).  Again, this does not satisfy the Rule.

Finally, Plaintiffs have not alleged how the racketeering activity and the enterprise have merged into one, the benefits each Defendant received as a result of the scheme, and the damages for which each Defendant is liable, as required by Local Rule 12.1(g), (i), and (q), respectively. L.R. 12.1; DE #64 ¶¶ 818, 820, 825.  For these reasons, Plaintiff's RICO claims in Count IV will be dismissed without prejudice for failure to comply with Federal Rule of Civil Procedure 9(b), and Local Rule 12.1.[7]

### 2.    Count VIII:  Interstate Land Sales Full Disclosure Act

The Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 ("ILSFDA"), prohibits fraud in the sale of subdivision property, and requires subdivision developers to disclose certain information to buyers of property within subdivisions.  15 U.S.C. § 1703.

### a.    Applicability of ILSFDA

As a threshold matter, ILSFDA only regulates the conduct of "developers," as defined by the statute.  15 U.S.C. §§ 1701, 1703.  The statute defines a "developer" as "any person[8] who, directly, or indirectly, sells or leases, or offers to sell or lease, or advertise for sale or lease any

---

(7)    if you allege any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the racketeering activity.

S.D. Fla. L.R. 12.1(f).

[8]"Person" is defined as "an individual, or an unincorporated organization, partnership, association, corporation, trust, or estate."  15 U.S.C. § 1701(2).

lots in a subdivision."[9]  15 U.S.C. § 1701(5).  The Complaint alleges: "Paragon is a developer within the meaning of the Interstate Land Sales Full Disclosure Act," and "Paragon used a common promotional plan to sell unimproved vacant lots in Costa Rica."  (DE #64 ¶¶ 850, 851).

"Paragon" is defined in the Complaint as an amalgamation of sixteen entities allegedly involved in a single fraudulent scheme. (DE #64 ¶ 1). Plaintiffs here have thus alleged that this amalgamation of entities constitutes a "developer," but have not alleged that the individual Defendants named in Count VIII are developers.  It is not enough to allege that an individual Defendant is part of a larger conglomerate that is a developer. To assert a cause of action against individual persons or entities under ILSFDA, a plaintiff must allege that the individual persons or entities are themselves developers. *See* 15 U.S.C. § 1709(a) (providing cause of action under section 1703(a) for purchaser or lessee "against a developer or agent"). Plaintiffs incorporate Section II of the Complaint[10] into Count VIII, and argue that the allegations in Section II sufficiently state that the individual Paragon entities are developers.  (DE #64 ¶ 849).  However, as explained in the preceding section, Section II omits key facts with respect to certain Plaintiffs' transactions, particularly the seller of the properties at issue.  Plaintiffs have not adequately alleged that Defendants are developers, triggering the application of ILSFDA.

### b.  Fraud Claims under ILSFDA

Even if Plaintiffs had adequately alleged the Defendants are "developers" under the

---

[9]The statute provides: "'Subdivision' means any land which is located in any State or in a foreign country and is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan." 15 U.S.C. § 1701(3).

[10]Section II contains allegations related to the named Plaintiffs' individual transactions with Defendants.

statute, their ILSFDA claims would nonetheless fail.  In Count VIII, Plaintiffs incorporate the allegations related to individual Plaintiffs' transactions, and allege that Defendants' misrepresentations in the Agreements for Deed constitute violations of four subsections of the statute prohibiting fraud in the sale of subdivision lots.[11]

Plaintiffs' fraud claims under ILSFDA are insufficient under Rule 9(b) for the same reasons that their RICO claims are insufficient.  In Count VIII, Plaintiffs allege:

> Paragon used fraud and deceit to sell and market the lots in Costa Rica.  In particular, Paragon falsely represented that all monies paid toward the land purchases were 100% refundable.  These representations were false when made as Paragon was depleting the monies it received in a manner that would make refunds impossible.

---

[11]The statute's fraud provisions, in relevant part, are as follows:

It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails–

(2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title–

   (A) to employ any device, scheme, or artifice to defraud;

   (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;

   (C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser; or

   (D) to represent that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed.

15 U.S.C. § 1703(a)(2)(A)–(D).

16

(DE #64 ¶ 855).  This statement does not allege the "who, what, when and where" that would "alert defendants to the precise misconduct with which they are charged," as required by Rule 9(b). *Ben-Yishay v. Mastercraft Dev., LLC*, Case no. 08-14046, 2009 WL 6387928, at *3 (M.D. Fla. 2009) (quoting *Leisure Founds, Inc. v. CUC Int'l, Inc.*, 833 F.Supp. 1562, 1575 (S.D. Fla. 1993)); *see also Degimenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F.Supp. 2d 1325, 1343–44 (applying Rule 9(b) standard to fraud claims under ILSFDA).  As discussed above, Section II of the Complaint does not supply the requisite particularity, as Plaintiffs argue.  As a result, Plaintiffs have failed to plead their fraud claims under ILSFDA with the heightened specificity required by Rule 9(b).

### c.    Disclosure Requirements under ILSFDA

Plaintiffs also allege that Defendants sold them subdivision lots without obtaining statements of record and without furnishing property reports to Plaintiffs, as required by ILSFDA. 15 U.S.C. § 1703(a)(1)(A)–(B).[12]  (DE #64 ¶ 853).  The required statements of record and

---

[12]Section 1703(a) provides, in relevant part:

(a) Prohibited activities
It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails–

(1)  with respect to the sale or lease of any lot not exempt under section 1702 of this title–

(A) to sell or lease any lot unless a statement of record with respect to such lot is in effect in accordance with section 1706 of this title;

(B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee.

15 U.S.C. § 1703(a)(1)(A)–(B).

property reports contain descriptive and legal information about the property, including, for example, the names and addresses of persons having an interest in the property, a description of the property including a subdivision map, a statement of the condition of title, and any encumbrances on the property. 15 U.S.C. §§ 1705, 1707.

To state a claim under this section 1703(a)(1)(A), a plaintiff needs only to allege the property at issue is part of a subdivision, the defendant sold or leased the property to the plaintiff, and no statement of record was in effect at the time of the sale.[13]  Count VIII contains no allegations whatsoever that a statement of record was not in effect for the properties sold to Plaintiffs. (DE #64 ¶¶ 848–58). Section II, which details the transactions by individual Plaintiffs, similarly lacks any allegations as to statements of record. Because Plaintiffs have not pled any allegations as to one of the elements of this cause of action, the claim is insufficient on its face and must be dismissed.

### d.    Claim Against LTS Management

Finally, Plaintiff has failed to state a cause of action against Defendant LTS Management, Inc. ("LTS"). LTS is named as a defendant in Count VIII,[14] but there are no allegations in the Complaint that it engaged in any transactions with any Plaintiffs. (DE #64). In its Response in Opposition to one of the Motions to Dismiss, Plaintiffs allege for the first time that LTS is a defendant because it is a successor in interest to Paragon Properties of Costa Rica, LLC, which

---

[13]As explained above, to make any claim under ILSDFA a plaintiff must also allege the defendants are "developers" as defined by the statute, which Plaintiffs here have failed to do for the reasons discussed in the preceding section.

[14]LTS is also named as a defendant in Count V, which asserts a cause of action for civil theft. (DE #64 ¶¶ 826–33.  The analysis here applies to the allegations in Count V as well.

is now defunct. (DE #103 at 6).

To assert a claim against a defendant under a successor liability theory, a plaintiff must allege, "(1) the successor impliedly assume[d] the obligations of the predecessor, (2) the transaction is a de factor merger, (3) the successor corporation is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." *Orlando Light Bulb Serv., Inc. v. Laser Lighting and Elec. Supply, Inc.*, 523 So. 2d 740, 742 (Fla. 5th DCA 1988). Here, the Complaint alleges only that LTS is "the managing and controlling member of Paragon Properties of Costa Rica LLC" (DE #64 ¶ 121) and that "by all accounts [Paragon Properties of Costa Rica's] office is closed." *Id.* ¶ 92. These statements do not sufficiently allege successor liability, and would not put LTS on notice of why it was named as a defendant in these counts. Furthermore, these arguments raised for the first time in a Response to a Motion to Dismiss are not properly before the Court. If Plaintiffs wish to claim LTS is liable as a successor in interest, they must properly allege facts supporting that claim in a Complaint.

### 3.    Count II: Fraudulent Inducement

To state a claim for fraud in the inducement, a plaintiff must show that: "(1) a false statement was made regarding a material fact; (2) the individual who made the statement knew or should have known that it was false; (3) the maker intended that the other party rely on the statement; and (4) the other party relied on the false statement to its detriment." *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 542 (Fla. 5th DCA 2003). Claims for fraudulent inducement in federal court are governed by Rule 9(b). *Cadow v. Sandals Resorts Int'l*, Case No. 10-24092-CIV, 2011 WL 1527555, at *2 (S.D. Fla. 2011) (dismissing fraud in the

inducement claim because failure to allege identity of person who made misrepresentations constituted noncompliance with Rule 9(b)).

In Count II, Plaintiffs again incorporate Section II of the Complaint. (DE #64 ¶ 64). The insufficiency of those allegations has already been discussed. In addition, Plaintiffs allege in Count II:

> Paragon knew that it could not and would not fulfill its obligations when it made these fraudulent statements. In particular, Paragon knew it could never refund the deposits because it was dispersing the money as it came in to individuals and entities for purposes unrelated to the project. Paragon was not keeping itself capitalized because it had [no] intention of refunding the money it received. . . . Paragon made the false statements with the intention of inducing the Plaintiffs to enter into Agreements for Deed and to make payments to Paragon.

(DE #64 ¶¶ 791–92). These allegations as to the elements of knowledge and intent are not sufficient to state a claim for fraudulent inducement. The collective references to "Paragon" is fatal to Plaintiffs' claim. This count is asserted against "each of the Paragon entities that are parties to the contracts (i.e., Agreements for Deed) with the Named Plaintiffs." *Id.* ¶ 788. However, to state a claim against each of these defendants, Plaintiffs must allege that each Defendant knew the statements that it made were false, and that each Defendant intended that Plaintiffs would rely on those statements. It is not enough to allege that "Paragon," an amalgamation of sixteen separate entities, had the requisite knowledge and intent. Again, Section II of the Complaint does not supply the required specificity. Accordingly, Count II must be dismissed.

### 4.    Count IX: Fraudulent Transfers

Plaintiffs allege that four individual Defendants, Judith Gale, Lisa Tashman, Julien Siegel,

and Mariland Tashman, were the recipients of fraudulent transfers in violation of Fla. Stat. §
726.105. (DE #64 ¶¶ 859–65).  Section 726.105 is part of Florida's Uniform Fraudulent
Transfers Act ("UFTA"), which lays out a statutory scheme for creditors to set aside a debtor's
transfer of assets to a third party under certain circumstances. Fla. Stat. § 726.101 *et seq*; *Wiand
v. Waxenburg*, 611 F.Supp. 2d 1299, 1318 (M.D. Fla. 2009); *see also Pearlman v. Alexis*, Case
No. 09-20865-CIV, 2009 WL 3161830, at *4 (S.D. Fla. 2009) ("[UFTA] was adopted to prevent
an insolvent debtor from transferring assets away from creditors when the debtor's intent is to
hinder, delay, or defraud any of its creditors.").

Section 726.105(1) of UFTA, invoked by Plaintiffs here, provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer was made or the
obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a)     With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b)     Without receiving a reasonable equivalent value in exchange for the transfer or
obligation, and the debtor:

1.     Was engaged or was about to engage in a business or a transaction
for which the remaining assets of the debtor were unreasonably
small in relation to the business or transaction; or

2.     Intended to incur, or believed or reasonably should have believed that he
or she would incur, debts beyond his or her ability to pay as they became
due.

Fla. Stat. § 726.105(1).  Thus, the statute "provides two theories by which a present or future
creditor may recover fraudulent transfers: an actual fraud theory, under subsection (a), and a
constructive fraud theory, under subsection (b)." *Wiand*, 611 F.Supp. 2d at 1318. There is a split
within this Circuit as to whether fraudulent transfer claims must be pled with the particularity

required by Rule 9(b).[15]  The Court declines to address the issue at this time because Plaintiffs have failed to plead their claim with the specificity required by Federal Rule of Civil Procedure 8(a).

Plaintiffs allege an actual fraud claim against Defendants Judith Gale, Lisa Tashman, and Julien Siegel.  (DE #64 ¶ 863).  To state a claim for actual fraud under UFTA, a plaintiff must "allege (1) there was a creditor sought to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been available to satisfy the debt."  *Nationsbank, N.A. v. Coastal Utils. Inc.*, 814 So. 2d 1227, 1229 (Fla. 4th DCA 2002).  Here, Plaintiffs have not adequately alleged the second element, "a debtor intending fraud."

First, Plaintiffs have not adequately identified the "debtors."  The Complaint simply states: "Plaintiffs and members of the class are creditors of the Paragon Entities, by virtue of the monies transferred for the alleged land transactions." (DE #64 ¶ 860).  Again, the "Paragon Entities" are sixteen separate entities.  Plaintiffs fail to explain which entities are "debtors" as defined by the statute, which Plaintiffs are creditors of which debtor-entities, and which of the debtors made the transfers to which recipients.  Rather, Plaintiffs allege that, "Paragon transferred monies received

---

[15] *See, e.g., Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*, — F.Supp. 2d—, Case No. 1:10-cv-844-TCB, 2011 WL 987353, at *17 (N.D. Ga. March 15, 2011) (Batten, J.) (applying Rule 9(b) to actual fraud claims but not constructive fraud claims under Georgia UFTA); *Steinberg ex rel. Lancer Mgmt. Group LLC v. Alpha Fifth Group*, Case No. 04-60899-CIV, 2010 WL 1332840 at *2 (S.D. Fla. March 30, 2010) (Marra, J.) (finding UFTA claims are "significantly different from other fraud claims to which Rule 9(b) is directed," and that Rule 9(b) therefore does not apply to claims brought under the Florida UFTA); *Perlman v. Five Corners Investors I*, Case No. 09-81225-CIV, 2010 WL 962953, at *4 (S.D. Fla. March 15, 2010) (Hurley, J.) (same); *Ben-Yishay v. Mastercraft Dev., LLC*, Case No. 08-14046-CIV, 2009 WL 6387928, at *4 (Dec. 14, 2009) (Moore, J.) (applying Rule 9(b) pleading requirements to fraudulent transfer claims under Fla. Stat. § 726.105); *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*, Case No. 06-61055-CIV, 2007 WL 2826603 (S.D. Fla. Sept. 25, 2007) (Moreno, C.J.) (finding Rule 9(b) applies to claims of actual fraudulent transfers, but not claims of constructive fraudulent transfers).

from Plaintiffs and members of the class . . . to Defendants Judith Gale, Lisa Tashman, and Julien Siegel. . . . Paragon paid the personal credit cards of Defendants Judith Gale, Lisa Tashman, and Julien Siegel from funds that were supposed to be held in escrow [], and Paragon ordered the direct transfer of funds from Charles L. Neustein, P.A.'s trust fund[] account to Defendants Lisa Tashman and Julien Siegel." (DE #64 ¶ 861). These vague assertions do not give Defendants "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant included in the "Paragon" or "Paragon Entities" definition in the Complaint can not determine from these allegations what, if any, of its alleged conduct is implicated here.

Second, Plaintiffs have not adequately alleged the intent element. "Because of the difficulty of proving actual intent, past statutory law, existing case law and the UFTA look to indicia of intent commonly known as 'badges of fraud.'" *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 152 (Fla. 4th DCA 1994); *In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998) ("In determining whether the circumstantial evidence is sufficient to establish fraudulent intent, the court should investigate the transfer for the existence of badges of fraud."). The UFTA lists eleven nonexclusive "badges of fraud" that may be considered in determining actual intent.

Fla. Stat. § 726.105(2).[16]   Plaintiffs have not alleged the existence of any of these badges of fraud

in Count IX. (DE #64 ¶¶ 859–65).   The only allegation of Defendants' intent is: "Paragon made

the transfers to Defendants Judith Gale, Lisa Tashman, and Julien Siegel with the actual intent

to hinder, delay, or defraud Plaintiffs and members of the class from obtaining the monies

Paragon owed them." *Id.*   This is the type of "formulaic recitation of a cause of action's elements

[that] will not do." *Twombly*, 550 U.S. at 555.

Plaintiffs have also failed to state a claim for a constructive fraudulent transfer against

Mariland Tashman in Count IX.   Count IX contains only the following allegations as to Mariland

Tashman: "The Paragon Entities also paid Mariland Tashman monies from the Paragon operating

---

[16]The statute provides:

In determining actual intent under paragraph (1)(a), consideration may be given, among
other factors, to whether:

    (a)    The transfer or obligation was to an insider.
    (b)    The debtor retained possession or control of the property transferred after
             the transfer.
    (c)    The transfer or obligation was disclosed or concealed.
    (d)    Before the transfer was made or obligation was incurred, the debtor had
             been sued or threatened with suit.
    (e)    The transfer was of substantially all the debtor's assets.
    (f)    The debtor absconded.
    (g)    The debtor removed or concealed assets.
    (h)    The value of the consideration received by the debtor was reasonably
             equivalent to the value of the asset transferred or the amount of the
             obligation incurred.
    (i)    The debtor was insolvent or became insolvent shortly after the transfer was
             made or the obligation was incurred.
    (j)    The transfer occurred shortly before or shortly after a substantial debt was
             incurred.
    (k)    The debtor transferred the essential assets of the business to a lienor who
             transferred the assets to an insider of the debtor.

Fla. Stat. § 726.105.

account. There is no evidence that she ever provided services for Paragon." (DE #64 ¶ 862). To state a claim for constructive fraud under section 726.105(1)(b), a plaintiff must allege that a debtor made a transfer or incurred an obligation

> without receiving a reasonably equivalent value in exchange for the transfer or obligation, *and* the debtor:
>
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his ability to pay as they became due.

Fla. Stat. 726.105(1)(b) (emphasis added). The Complaint contains no allegations as to either of the alternative second elements. Because Plaintiffs have not pled an element of this cause of action, the claim fails to meet Rule 8(a)(2)'s requirements and must be dismissed.

### C.    Non-Fraud Claims

#### 1.    Count I: Breach of Contract

Plaintiffs allege that the Paragon entities breached the Agreements for Deed by failing to either refund their deposits and installment payments or failing to deliver valid deeds to purchasers who paid the full purchase price. (DE #64 ¶¶ 781–87). Plaintiffs also allege Defendants breached the contracts by failing to install infrastructure improvements within the promised time period. *Id.* This count is asserted against "each of the Paragon Entities that are

parties to the contracts (i.e., Agreements for Deed with the Named Plaintiffs." *Id.* ¶ 781.[17]  Count

I also incorporates Section II, which contains allegations as to named Plaintiffs' individual

transactions. *Id.* ¶ 782.

The elements of a breach of contract claim are straightforward: "(1) a valid contract; (2)

a material breach; and (3) damages." *Schiffman v. Schiffman*, 47 So. 2d 925, 927 (Fla. 3d DCA

2010) (quoting *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA

2000)).  Here, Plaintiffs allege that the parties entered into Agreements for Deed, the Paragon

entities breached them by keeping Plaintiffs' money without delivering any valid deeds, and that

Plaintiffs suffered damages as a result.  Defendant All Star Consulting Group, Inc. ("All Star")[18]

does not argue that  Plaintiffs have failed to allege the elements for breach of contract; rather All

Star argues that Count I should be dismissed because it "lacks the proper specificity." (DE #118

at 7).  In particular, All Star argues that "Plaintiffs' failure to identify which Defendants allegedly

breached which contracts dooms this count." *Id.*  Plaintiffs argue  that the Agreements for Deed,

attached as exhibits to the Complaint, sufficiently identify which Defendants allegedly breached

which contracts.  (DE #119 at 2).

As an initial matter, All Star is named in Section II of the Complaint as the seller of the

property purchased by Plaintiff Anne Smith.  (DE #64 ¶ 163).  However, All Star also allegedly

---

[17]Defendant Costa Rican Land Development, Inc. has moved to dismiss Count I on the ground that "there is no specific allegation of a contract between any Plaintiff and Costa Rican Land & Development." (DE #91 at 7). However, as explained in Plaintiffs' Response in Opposition (DE #103), Costa Rican Land Development is not named as Defendant in Count I because it is not a party to any of the Agreements for Deed. *Id.* at 11–12. Therefore, the Motion to Dismiss Count I as to Defendant Costa Rican Land Development, Inc. is denied as moot.

[18]None of the other moving Defendants are named in this Count.

26

entered into Agreements for Deed with Plaintiffs Ronald and Kathleen Erb, and Rhonda Brewer, but All Star is not identified as the property seller in the allegations pertaining to these Plaintiffs in Section II (no seller is idenitified). (DE #64 ¶¶ 326–34, 456–60).  In addition, the Complaint alleges conduct that would constitute a breach of contract was taken by people and entities other than All Star.  For example, the Complaint alleges that Plaintiff Anne Smith requested refunds from Defendants William Gale, Esteban Soto, and Charles L. Neustein, and that those refund requests have gone unanswered. (DE #64 ¶¶ 164–173).  The Complaint contains no allegations that these Defendants acted on behalf of All Star, or that All Star refused to pay refunds to these plaintiffs.  In addition, with respect to Plaintiffs Ronald and Kathleen Erb and Rhonda Brewer, the Complaint alleges that "**Paragon** was obligated to put in place infrastructure of roads and electricity," within a time period that has now passed, and that the infrastructure is not in place. *Id.* ¶¶ 331–32, 458–59.  Again, Paragon is comprised of sixteen entities.  It is not clear from this allegation which obligations All Star was allegedly responsible for, and which obligations it allegedly breached.

Plaintiffs' failure to name the sellers of the properties in the relevant sections of the Complaint is addressed above, and, like the claims already discussed, this failure renders the breach of contract claim insufficient.  Moreover, Plaintiffs' failure to allege breaching conduct by All Star rather than non-parties is fatal to Plaintiffs' claims.  Any actions taken by nonparties, even if inconsistent with the contracts, cannot give rise to a cause of action for breach of contract against All Star. *See Norfolk S. Ry. Co. v. Groves*, 586 F.3d 1273, 1282 (11th Cir. 2009) ("It goes without saying that a contract cannot bind a nonparty.") (quoting *Miles v. Naval Aviation Museum*

27

*Found., Inc.*, 289 F.3d 715, 720 (11th Cir. 2002)).

In sum, Plaintiffs have alleged that All Star agreed to build infrastructure improvements and to refund money under certain circumstances, but that other individuals and a group of entities refused to refund the money and failed to build the promised improvements. As a result, Plaintiffs have not alleged that All Star breached the contracts. To the extent that the same deficiencies are present in allegations for breach of contract against other, non-moving defendants, Plaintiffs should remedy them as well in any amended pleading that is filed.

### 2.    Count III: Alter Ego

In Count III, Plaintiffs assert that moving Defendant Julien Siegel[19] abused the corporate form of the Paragon entities, and should be held personally liable for wrongdoing committed by the entities. (DE #64 ¶¶ 796–808). Defendant Siegel moves to dismiss this count on the grounds that alter ego is not an independent cause of action that can be the subject of a separate count, and that Plaintiffs have failed to adequately allege that he abused the corporate form, such that the "corporate veil" should be pierced.

As an initial matter, Florida courts permit alter ego allegations to be pled as a distinct cause of action. *See, e.g. Acadia Partners, L.P. v. Tompkins*, 759 So. 2d 732, 740 (Fla. 4th DCA 2000). Nonetheless, federal courts require that only separate claims for relief be pled in separate counts. Fed. R. Civ. P. 10(b) ("[E]ach claim founded on a separate transaction or occurrence . . . must be stated in a separate count."). Accordingly, federal courts generally find that "[a]lter

---

[19]Plaintiffs also allege that Defendants William Gale, Esteban Soto, Lyle Wexler, Larry Webman, and Stephen Tashman abused the corporate form of the Paragon entities, and that they too should be personally liable for the wrongdoing of the entities. (DE #64 ¶¶ 796, 808). However, Julien Siegel is the only defendant named in Count III that has moved to dismiss.

ego is not a separate cause of action for which relief can be granted; rather, . . . alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity." *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, Case No. 09-CV-61436, 2010 WL 1531489, at \*9 (S.D. Fla. April 16, 2010) (dismissing alter ego count with prejudice and requiring plaintiff to re-plead allegations regarding alter ego in the body of the complaint). Count III will be dismissed with prejudice, but Plaintiffs will be permitted to plead allegations related to their alter ego theory in the body of the Complaint.

In addition, Plaintiffs have failed to allege the substantive elements required to pierce the corporate veil. In general, "a corporation is a separate legal entity, distinct from the persons comprising [it]." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). However, "the corporate veil may be pierced if the plaintiff can prove both that the corporation is a mere instrumentality or alter ego of the defendant, and that the defendant engaged in improper conduct in the formation or use of the corporation." *XL Vision, LLC v. Holloway*, 856 So. 2d 1063, 1066 (Fla. 5th DCA 2003). To show that a corporation is the alter ego of a defendant, a plaintiff must allege "the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact nonexistent and the shareholders were in fact alter egos of the corporation." *Gasparini*, 972 So. 2d at 1055.

Here, Plaintiffs have only alleged that Julien Siegel owns and operates or is the president of Costa Rican Land and Development. (DE #64 ¶¶ 114, 115, 797, 802). However, "the mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil." *Gaspirini*, 972 So. 2d at 1055. Plaintiffs' conclusory

29

allegations that the Paragon Entities were "nothing more than shell corporations" used by Defendants "to commit a major fraud," *Id.* ¶ 803, do not save their claim. These allegations do not explain how Defendants allegedly abused the corporate form, such that they should be held personally liable. *See, e.g., XL Vision*, 856 So. 2d at 1066 (finding allegations that shareholders commingled funds, failed to maintain corporate formalities, paid corporate salaries and expenses sufficient to allege corporation was alter ego of defendants).

Finally, Plaintiffs have not adequately alleged "improper conduct in the formation or use of the corporation" by Defendant Siegel. As previously discussed, Plaintiffs have alleged fraudulent conduct by "Paragon," a group of sixteen different entities. Plaintiffs have not alleged any facts related to the improper formation or use of any corporations by any of the individual Defendants named in this count.

### 3.    Count V: Civil Theft

Florida has created a civil cause of action for victims of theft. Fla. Stat. § 772.11(1). Plaintiffs here allege the Paragon Entities stole money from them by fraudulently soliciting deposit monies and then refusing to refund the deposits, despite the contractual obligation to do so. (DE #64 ¶¶ 826–833). Defendants argue that Plaintiffs' civil theft claims should be dismissed for failure to comply with a statutory pre-suit notice requirement. Specifically, Florida's civil theft statute provides:

> Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand.

Fla. Stat. § 772.11(1). Plaintiffs' Complaint did not allege compliance with this pre-suit notice requirement, and Defendants argue that dismissal of their claims is warranted as a result.

However, "the Southern District of Florida has been lenient in the application of this rule." *Ames v. Provident Life and Accident Ins. Co.*, 942 So. 2d 551, 562 n.8 (S.D. Fla. 1994) (deeming failure to comply with pre-suit notice requirement excusable neglect and directing plaintiff to make demand before case was set for trial); *Comcast of South Florida II v. Best Cable Supply, Inc.*, 2008 WL 190584, at *9 n.6 (S.D. Fla. Jan. 22, 2008) (noting plaintiffs' failure to plead compliance with written demand requirement and requiring plaintiffs to "address this deficiency" in an amended complaint); *see also Seymore v. Adams*, 638 So. 2d 1044, 1049 (Fla. 5th DCA 1994) (declining to grant summary judgment for failure to comply with demand letter requirement). In fact, this Court has previously recognized the harshness of dismissal as a sanction for failure to comply with the notice requirement. *Korman v. Iglesias*, 736 F.Supp. 261, 267 (S.D. Fla. 1990) (King, J.) ("The court deems such a pleading failure excusable neglect, and directs plaintiff to comply with the statute at this time."). The Court will again follow its previous course of action. Plaintiff's civil theft claims will be dismissed without prejudice to re-plead after complying with the statute.

### 4.    Count VI: Breach of Fiduciary Duty

Plaintiffs allege that Defendants Charles L. Neustein, Charles L. Neustein, P.A., and Law Offices of Charles L. Neustein, P.A. breached fiduciary duties to owed to them as their escrow agent. (DE #64 ¶¶ 834–841). These Defendants are referred to collectively in the Complaint as "Neustein." *Id.* at 835. The three Neustein Defendants move to dismiss Count VI on the ground

that it fails to state a claim because they owed no fiduciary duties to Plaintiffs, and even if they did, Plaintiffs' claims would be barred by the economic loss rule.

### a.  Failure to State a Claim for Breach of Fiduciary Duty

The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages that are proximately caused by the breach. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Here, Plaintiffs have alleged that the Neustein Defendants owe them fiduciary duties as escrow holders, they breached that duty by disbursing funds in a manner contrary to the escrow agreement, and that they have sustained damages as a result. Defendants argue that no funds were "truly escrowed," so they owed no duties to Plaintiffs.

To establish a binding escrow, "there must be an instrument embodying conditions mutually beneficial to both parties, agreed to by both parties, and it must be communicated to and deposited with a third party." *Smith v. Macbeth*, 161 So. 721, 803 (Fla. 1935). Contrary to Defendants' argument, Florida law imposes no requirement that the escrow agent sign the escrow agreement for it to be binding. *See id*; *Fla. Bar v. Joy*, 679 So. 2d 1165, 1166 (Fla. 1996) (recognizing transmittal letter accompanying check to be escrowed constituted valid escrow agreement). Here, Plaintiffs have alleged the Agreements for Deed, which expressly provide for deposit money to be paid to "Trust Account of Charles L. Neustein, P.A. (the Escrow Holder)," were escrow agreements. The Agreements for Deed contain the requisite "conditions mutually beneficial to both parties" and are signed by the relevant parties. Plaintiffs also allege in Section II that they paid their deposits and installment payments to "Neustein." Finally, they allege that

32

"Neustein" sent them letters confirming receipt of the deposits and that Neustein was the escrow agent for their transactions. (DE #64 ¶ 837). Plaintiffs have adequately alleged the existence of a valid escrow.

Although Defendants may not have considered these funds to be "truly escrowed," that is irrelevant. Even if the requirements for formation of a valid escrow had not been met, there is an exception for cases where an escrow agent represents to a party that a valid escrow has been formed. *USA Flea Mkt. v. Real Estate Consultants, Inc.*, Case No. 8:06-CV-00431-TBM, 2006 WL 2830881, at *2 (finding that escrow agent owed principals fiduciary duties where valid escrow never created because escrow agent never received deposit, but escrow agent represented to plaintiff that deposit was received and was being held in escrow). Because Plaintiffs here allege that Neustein held itself out as the escrow agent for Plaintiffs' transactions, this exception would apply even if Plaintiffs had not adequately pled the formation of an escrow.

Because they alleged existence of a valid escrow, Plaintiffs have alleged the existence of a fiduciary duty. It is well-settled that one who undertakes to act as an escrow holder assumes fiduciary duties as a matter of law:

> Regardless of the escrow agent's other relationships or duties to the principal parties . . . when principal parties agree upon an escrow agent, by undertaking to act as such, the escrow agent establishes a new legal relationship to the principal parties and by an expressed agreement or an agreement implied in law, agrees to certain inherent matters. The relationship established is that of principal and agent and involves the escrow agent being an agent of, and owing a fiduciary relationship to, all of the principal parties. . . . The agent has undertaken a legal obligation (1) to know the provisions and conditions of the principal agreement concerning the escrowed property, and (2) to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property (i.e., to disburse the escrowed funds) in strict accordance with the principal's agreement.

33

*United Am. Bank of Central Fla. v. Seligman*, 599 So. 2d 1014, 1016 (Fla. 5th DCA 1992); *see also Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1064 (Fla. 3d DCA 1993) ("Escrow holders are recognized as agents of the parties to the escrow and as trustee in charge of the performance of an express trust. As such, escrow holders have a duty to exercise reasonable skill and ordinary diligence."). Furthermore, "escrow agents have a duty to disclose all material facts." *Watkins,* 622 So. 2d at 1064; *Aberbach v. Wekiva Assocs., Ltd.*, 735 F.Supp. 1032, 1035 (S.D. Fla. 1990) (King, J.) (finding plaintiffs' allegations that escrow agent failed to disclose material facts stated claim for breach of fiduciary duty).[20]

Finally, Plaintiffs allege that the Neustein Defendants breached their fiduciary duty by disbursing funds in a manner contrary to the Agreements for Deed. More specifically, they allege that money deposited into the Neustein escrow account was transferred out immediately, regardless of whether the conditions precedent for disbursement in the Agreements for Deed had been met. Handling of escrowed funds in a manner contrary to the escrow agreement is a breach of an escrow holder's fiduciary duties. *Fla. Bar v. Joy*, 679 So. 2d 1165, 1167 (Fla. 1996) (finding escrow agent breached fiduciary obligation where he transferred escrowed funds into his wife's bank account in violation of escrow agreement); *United Am. Bank of Central Fla. v. Seligman*, 599 So. 2d 1014, 1017 (Fla. 5th DCA 1992) (holding escrow holder breached duty by disbursing escrowed funds to party other than recipient named in escrow agreement); *Wall Street Mortgage Bankers, Ltd. v. Attorneys Title Ins. Fund, Inc.*, Case No. 08-21648, 2008 WL 5378126,

---

[20]Plaintiffs allege for the first time in their Response in Opposition to the Motion to Dismiss that Defendants failed to disclose material facts to them. These failure-to-disclose allegations, not pled in the Complaint, are not properly before the Court at this time and will not be considered in ruling on the Motions to Dismiss.

at * (S.D. Fla. Dec. 23, 2008) ("[The escrow holder] breached its duty when it disbursed Plaintiff's money that it had held in escrow without first obtaining a [deed].... These allegations state a claim for breach of fiduciary duty.").

**b.    Economic Loss Rule**

Florida's economic loss rule is a doctrine that bars an action in tort where the alleged losses arise out of a contract, and the plaintiff seeks recovery of only economic damages. *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). The rationale for the rule is that parties to a contract are assumed to have already allocated the risk of loss from nonperformance when negotiating the contract. *Moransais v. Heathman.* 744 So. 2d 973, 980 (Fla. 1999). "A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made." *Indemnity Ins. Co.,* 891 So. 2d at 536.

However, the Florida Supreme Court has limited the application of the economic loss rule to two situations: (1) products liability cases where the only damage is to the product itself, and (2) cases where the parties are in contractual privity. *Id.* at 534. The Florida Supreme Court has also stated: "We again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action." *Moransais,* 744 So. 2d at 983. More specifically, courts have recognized an exception for so-called "independent torts," or torts that "require[] proof of facts that are distinct from breach of contract." *Invo Florida, Inc. v. Somerset Venturer, Inc.*, 751 So. 2d 1263, 1265 (Fla. 3d DCA 2000); *see also Moransais*, 744 So. 2d at 983 (holding that "the

35

mere existence of a contract should not serve per se to bar [a tort action]."). Florida courts have found that breach of fiduciary duty is such an independent tort. *Id.* at 1267 ("The economic loss rule has not abolished the cause of action for breach of fiduciary duty, even if there is an underlying oral or written contract.").

Here, Plaintiffs have alleged breaches of fiduciary duties that are independent from the breaches of contract they allege in Count I. The breach of contract claim is asserted against different Defendants, and alleges different conduct as a basis for the breach. Plaintiffs would have to prove a different set of facts to support each claim. Furthermore, this is not the type of case where a plaintiff seeks to "obtain a better bargain than originally made" in the underlying contract. The Neustein Defendants are not parties to the Agreements for Deed; rather, the Plaintiffs and Sellers are parties to the contracts. Accordingly, Plaintiffs are not attempting to circumvent contract law by bringing a tort claim, because they could not assert a breach of contract claim against these Defendants in the first place. Contrary to Defendants' arguments, the only duties they may have owed to Plaintiffs were grounded in tort, and not contract. The economic loss rule is not a bar to their claims.

### c.    Rule 8(a)(2)

Nonetheless, Plaintiffs' breach of fiduciary duty claims must be dismissed because they suffer from the same lack of specificity as other claims in the Complaint. Plaintiffs' collective reference to "Neustein" makes it unclear which of the three Defendants comprising "Neustein" is alleged to be liable for what conduct. In addition, it is unclear how Charles L. Neustein and Law Offices of Charles L. Neustein, P.A. could be liable for breach of fiduciary duties to

Plaintiffs where only Charles L. Neustein, P.A. is identified as the escrow holder in the Agreements for Deed. Count VI does not give the three Neustein Defendants "fair notice of what the claim [against them] is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Count VI will be dismissed without prejudice for failure to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure.

## IV.    Conclusion

After a careful consideration of the record, and having the benefit of oral argument, it is hereby

**ORDERED, ADJUDGED, and DECREED** that the Motions to Dismiss **(DE # 77, DE #91, DE # 118)** are **GRANTED. Count III** is **DISMISSED with prejudice,** but Plaintiffs may plead alter ego allegations in other sections of an Amended Complaint. **Counts I, II, IV, V, VI, VIII,** and **IX** of the Amended Complaint (DE #64) are **DISMISSED without prejudice.** Plaintiffs may re-file these claims in an Amended Complaint within **thirty (30) days** from the date of this Order. Defendants **SHALL** respond to any Amended Complaint that is filed within **twenty (20) days** of its filing.

**DONE AND ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 16th day of May, 2011.

James Lawrence King
Senior United States District Judge

37

cc:   **_Counsel for Plaintiffs_**

**Matthew S. Sarelson, Esq.**

Sarelson Law Firm, P.A.
1401 Brickell Avenue
Suite 510
Miami, FL 33131

**Paul Bernard Kunz, Esq.**
Bander & Associates
444 Brickell Ave.
Suite 300
Miami, FL 33131

**_Counsel for Defendants_**

**Jeffrey Allen Tew**
Tew Cardenas LLP
Four Seasons Tower
1441 Brickell Avenue
15th Floor
Miami, FL 33131-3407

 **David H. Charlip, Esq.**
Charlip Law Group
17501 Biscayne Blvd
Suite 510
Aventura, FL 33160

**Stephen N. Rosenthal, Esq.**
20533 Biscayne Boulevard
Aventura, FL 33180

**William Gale**
2035 Harding Street Suite 201
Hollywood, FL 33020
PRO SE

**Murray Linder**
3754 NE 209th Terrace
Miami, FL 33180
PRO SE

**Stephen Tashman**
822 SW Bryan Place

Fort Lauderdale, FL 33312
305-206-1150
PRO SE

**Larry Webman**
1250 Hallandale Beach Blvd, Suite 609
Hallandale, FL 33009
PRO SE

**Chester Potash**
MIAMI FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 779800
MIAMI, FL 33177
PRO SE