UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-21720-CIV-KING
CASE NO. 11-60647-CIV-KING (consolidated)

ANITA OGINSKI, *et al.*,

    Plaintiffs,

v.

PARAGON PROPERTIES OF COSTA
RICA, LLC, *et al.*,

    Defendants.

_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**THIS MATTER** comes before the Court upon Plaintiffs' Motion for Class Certification (DE #254), filed January 23, 2012. Therein, the Oginski Plaintiffs[1] seek to certify a single class to prosecute Count I for Breach of Contract against Defendants Paragon Properties of Costa Rica, LLC, Paragon Properties of Costa Rica, S.A., William Gale, and Stephen Tashman; Count IX(a) for civil RICO violations against Defendants Paragon Properties of Costa Rica, LLC, Paragon Properties of Costa Rica, S.A., William Gale, and Stephen Tashman; Count IX(b) for Breach of Fiduciary Duty against Defendants Charles L.

---

[1] The above-styled action is a consolidated action of two purported class actions asserting various claims against over a dozen defendants arising from the same allegedly fraudulent land sales scheme in Costa Rica: *Anita Oginski, et al. v. Paragon Properties of Costa Rica, LLC, et al.*, Case No. 10-21720-CIV-KING ["the Oginski action"] and *Janet Gurskis, et al. v. William Gale, et al.*, Case No. 11-60647-CIV-KING ["the Gurskis action"].

Neustein, Law Offices of Charles L. Neustein, P.A., and Charles L. Neustein, P.A. [hereinafter "the Neustein Defendants"]; Count X for violations of the Interstate Land Sales Full Disclosure Act ("ILSA") against Defendants Paragon Properties of Costa Rica, LLC, Paragon Properties of Costa Rica, S.A., William Gale, and Stephen Tashman; and Count XI for Fraudulent Transfer against Defendants Judith Gale, Lisa Tashman, Julien Siegel, and Mariland Tashman [hereinafter "the Fraudulent Transfer Defendants"]. (DE #254, at 1; Third Am. Compl., DE #150). The Court is partially briefed in the matter,[2] and proceeds with the benefit of oral argument from Plaintiffs, the Neustein Defendants, and the Fraudulent Transfer Defendants.[3] Upon careful consideration of the arguments set forth in the pleadings and at oral argument, the Court finds that Plaintiffs have failed to meet the requirements of Rule 23 for class certification.

## I. Background

This action was filed in the names of over 250 individual Plaintiffs, asserting claims against various defunct corporations, the corporations' principals and escrow agents, for breach of contract, civil RICO,[4] violations of the ILSA,[5] and breach of fiduciary duty

---

[2] The Neustein Defendants filed a Response (DE #289) on March 7, 2012, and Plaintiffs filed a Reply (DE #291) on March 16, 2012. The Fraudulent Transfer Defendants filed a Response (DE #288) on March 7, 2012, stating they "do not object to the Court certifying a class of those Plaintiffs who eventually succeed in obtaining a money judgment against the Paragon Corporate Defendants as to their fraudulent transfer claims." At the hearing, however, counsel for the Fraudulent Transfer Defendants stated in open court that they did oppose class certification.

[3] The Court held oral argument on May 24, 2012. (DE #318).

[4] "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

stemming from the alleged fraudulent sale of properties in Costa Rica. (Third Am. Compl., DE #150). Plaintiffs also assert claims for fraudulent transfer under Fla. Stat. § 726.105 against the Fraudulent Transfer Defendants. (*Id.*) The Complaint was originally filed May 26, 2010. (DE #1). The Complaint has since been amended twice, and the Third Amended Complaint (DE #150) is now the operative pleading.

Defendants Paragon Properties of Costa Rica, S.A. and Paragon Properties of Costa Rica, LLC have both defaulted. (DE #177&178). Defendants Gale and Tashman deny generally the entirety of the Third Amended Complaint. (DE #157&158). The Neustein Defendants and the Fraudulent Transfer Defendants deny the individual claims asserted against them. (DE #195&151).

After almost a year-and-a-half of discovery, Plaintiffs moved for a discovery conference to discuss their suggestion that the case follow the procedures of a certified class action. (DE #204). Upon Defendants' objection to Plaintiffs' assumption they were entitled to class action treatment regarding discovery, the Court set a briefing schedule on class certification (DE #210), and heard oral argument on Plaintiffs' motion.

Before the Court now is Plaintiffs' Motion for Class Certification. (DE #254). The Neustein Defendants oppose class certification (DE #289), and the Fraudulent Transfer Defendants initially did not oppose class certification (DE #288), but then changed their position at the hearing. Defendants Gale and Tashman did not file written responses to the

---

through a pattern of racketeering activity or collection of unlawful debt." Racketeer Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. § 1962(c).

[5] Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1701 *et seq.*

Motion for Class Certification or appear at the hearing.

## II. Rule 23 Standard

To be entitled to class certification, the party seeking certification must have standing, and must meet each of the requirements specified in Rule 23(a), as well as at least one subsection of Rule 23(b). *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). In addition, "[a] plaintiff seeking certification of a claim for class treatment must propose an adequately defined class that satisfies the requirements of Rule 23." *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 667 (S.D. Fla. 2009). The court must ensure, through "rigorous analysis," that each and every element of Rule 23 is established at the time of certification. *See* FED. R. CIV. P. 23 advisory committee's note. It is well settled that a plaintiff bears the burden to meet every element of Rule 23. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). In addition, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Specifically, "a court may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take." *See generally Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001) (quoting 5 Moore's Federal Practice § 23.46[4])).

Rule 23(a) has four requirements: numerosity, commonality, typicality, and adequacy of representation. The numerosity requirement of Rule 23 necessitates a determination as to "whether 'the class is so numerous that joinder of all members is impracticable.'" *Vega*, 564

F.3d at 1266–67 (quoting FED. R. CIV. P. 23(a)(1)). Commonality requires that there be "questions of law or fact common to the class." Specifically, plaintiffs have the burden to "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. V. Dukes*, 131 S. Ct. 2541, 2550–51 (2011) (quoting *Gen. Telephone Co. of Sw.*, 457 U.S. at 157). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 2551. Further, it is insufficient for plaintiffs merely to assert a string of common questions without demonstrating how resolution of these questions evidences common injury. *Id.* "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Cooper v. So. Co.*, 390 F.3d 695, 713 (11th Cir. 2004). "A class representative must . . . possess . . . the same injury as the class members" in order to be typical under Rule 23(a)(3).[6] *Prado-Steiman* ex rel. *Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Lastly, adequacy of representation "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Once a court is satisfied that all of the Rule 23(a) have been met, it shifts to an analysis under Rule 23(b). Here, Plaintiffs purport to certify a class under Rule 23(b)(3), which requires a showing that class action is a superior method to try the case rather than

---

[6] Plaintiffs recognize the extensive and varied differences in the claims of injury to the 254 individually-named Plaintiffs by suggesting seven class representatives.

5

individual suits because "questions of law and fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). "If class members must 'still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims,'" then class certification is not appropriate. *Klay*, 382 F.3d at 1254.

## III. Analysis

In the above-styled action, Plaintiffs seek to certify a single class to litigate claims of breach of contract (Count I), civil RICO violations (Count IX(a)), breach of fiduciary duty (Count IX(b)), violations of the ILSA (Count X), and fraudulent transfer (Count XI) against various defaulted companies and individuals. (DE #254, at 1). The Court has considered Plaintiffs' Motion for Class Certification, the proposed class definition, the Third Amended Complaint, and evidence currently in the record, and finds that the case is not in a posture to be tried as a class action. Specifically, the class definition's lack of precision, the varying contractual provisions governing the individual purchases, the lack of typicality of the proposed class representatives, and the stressed procedural posture of the action all militate against adjudicating these claims in a class action. Accordingly, the Court finds that it must deny Plaintiffs' Motion for Class Certification.

### A. *Plaintiffs' Proposed Class Definition Lacks the Precision Required by Rule 23*

With the instant motion, Plaintiffs ask the Court to certify the following class:

> All individuals who (i) signed an Agreement for Deed to purchase real property located in Costa Rica from Paragon Properties of Costa Rica, LLC,

>Paragon Properties of Costa Rica, S.A. or any independent sales organization working on their behalf; (ii) made payment toward the purchase of the property; and (iii) failed to receive a full refund.

(DE #254, at 1).

Upon consideration of the proposed class definition, the Court finds that it is vague, indefinite, and overbroad. The proposed class definition refers to an indefinite number of plaintiffs, over an unspecified time period, without any reference to the applicable (and varying) statutes of limitations for the separate causes of action.[7] Plaintiffs' failure to limit the proposed class to those whose claims come within the applicable statute of limitations places the burden on the factfinder to determine, on an individualized basis, whether Defendants have valid statute of limitations affirmative defenses. The class's susceptibility to individualized affirmative defenses mitigates against class treatment under Rule 23(b)(3). *See generally White v. Deltona Corp.*, 66 F.R.D. 560, 564 (S.D. Fla. 1975) (finding determination of whether individual claims are barred by affirmative defenses mitigates against predominance under Rule 23(b)(3)).

In addition, the proposed class definition does not incorporate factual limitations to

---

[7] The Court has previously held that Florida law governs the breach of fiduciary duty claim. (DE #191, at 4–6). Pursuant to Florida Statute, the intentional tort of breach of fiduciary duty is subject to a four-year statute of limitations. FLA. STAT. § 95.11(3)(o) (2006); *see also, e.g., Patten v. Winderman*, 965 So. 2d 1222 (Fla. Dist. Ct. App. 2007). Civil RICO claims are also subject to a four-year statute of limitations from date of discovery of the fraud. *See generally Bivens Gardens Office Bldg., Inc. v. Barnett Bank of Florida*, 906 F.2d 1546 (11th Cir. 1990). Plaintiffs' ILSA claims are subject to a three-year statute of limitations from the date of contract. 15 U.S.C. 1711(a).

ensure the proposed class is made up only of those Plaintiffs who share commonality. For example, for Plaintiffs' claim against the Neustein Defendants for breach of fiduciary duty, Plaintiffs do not allege an essential fact in the class definition: that the plaintiffs must have made payment on the purchase of the property to the Neustein Defendants as the escrow agent. With respect to Plaintiffs' claims under the ILSA, the class definition does not limit the class to those purchasers who did not receive the required property report.[8]

Finally, with regard to the civil RICO claims, the Court finds that it is impossible to adequately and precisely define a civil RICO class given the facts of this action. The alleged fraud spanned over four years, with various stages of improvements made to the properties. This considerable timeframe, coupled with the existence of hundreds of individual lots with varying degrees of development, is problematic in the context of class action consideration because it lends itself to the possibility that some of the individual Plaintiffs may be victims of a fraud in violation of RICO, while others may simply be entitled to damages for breach of contract. To incorporate consideration of this possibility into the class definition, however, would necessarily require a determination on the merits of Plaintiffs' civil RICO claims. Accordingly, the Court finds that the proposed class definition does not meet the requirements of Rule 23.

---

[8] Plaintiffs allege violation of 15 U.S.C. § 1703(a)(1)(B), which prohibits the sale of a qualifying lot without seller's disclosure of the required property report to buyer prior to execution of the contract.

### B. *Plaintiffs' Claims for Breach of Contract and Breach of Fiduciary Duty Lack Commonality*

As a basis for commonality, Plaintiffs assert that "the core factual and legal issues are common to the class." (DE #254, at 9). Specifically, Plaintiffs rely on the alleged common facts that "every transaction used the same form agreement . . . [that] designated Defendant Charles Neustein as the escrow agent," and "contained [a clause] in each agreement that required repayment to the Plaintiffs of all deposits if the transaction did not close within sixty months." (*Id.*, at 3 & 10). In addition, Plaintiffs argue the existence of the following common questions of law: "did Paragon breach the contract provision that required it to refund the all deposits paid, if it failed to close the transaction;" "did Defendant Charles Neustein owe a fiduciary duty to the class members by serving as the escrow agent;" and "did [Defendant Charles Neustein] breach that fiduciary duty by ceding control of the class members' deposits to Paragon." (*Id.* at 10–11). At the hearing, Plaintiffs further suggested that commonality is satisfied because all of the proposed class members seek return of the funds paid to the Neustein Defendants. According to Plaintiffs, the only differentiating factor within the class is how much money each individual Plaintiff lost. (DE #254, at 1).

The Court has reviewed the evidence in the record to evaluate the merits of Plaintiffs' claims for breach of contract and breach of fiduciary duty for the limited purpose of determining whether Plaintiffs' claims are susceptible to resolution on a class-wide basis. *See generally* FED. R. CIV. P 23(c)(1) advisory committee's notes. The record disclosed, contrary to Plaintiffs' allegations in the Third Amended Complaint and the Motion for Class

Certification, that the 254 individual named Plaintiffs did not enter into identical contracts to purchase the lots in Costa Rica. Rather, the evidence reveals that Plaintiffs entered into at least two variations of a written Agreement for Deed that allocated different responsibilities on the named escrow agent. (Fox Agreement, DE #254-1, at 7; Saunders Agreement, DE #289-1, at 55). Some of the Agreements for Deed refer to the escrow agent's duty to hold the initial deposit until execution of the Agreement and to hold final payment pending execution of a deed,[9] while others refer to the escrow agent's duty to hold corporate stock and a deed in escrow.[10] Furthermore, evidence in the record makes clear that some of the deposits included in the claim for damages for breach of fiduciary duty were made directly to

---

[9] The provisions regarding the escrow of funds in one version of the Agreement for Deed are as follows:

> Deposits shall be made payable to TRUST ACCOUNT OF CHARLES L. NEUSTEIN, P.A. (the Escrow Holder). Upon receipt of the signed Agreement and the deposit, Seller will return an executed copy of this Agreement to Purchaser, and the Escrow Holder will disburse the deposit to Seller. Upon payment of the balance due, Purchaser and Seller will execute the deed; Seller will record the deed . . . . Upon registration of the deed, the Escrow Holder will disburse the balance due to Seller.

(Fox Agreement ¶ 2, DE #254-1, at 7).

[10] The provisions regarding the escrow of funds, deed, and stock in another version of the Agreement for Deed are as follows:

> Deposits shall be made payable to "TRUST ACCOUNT OF CHARLES L. NEUSTEIN, P.A." ("the Escrow Holder"). Upon receipt of the signed Agreement and the deposit, the Stock of the Corporation and the deed to the Property shall be placed in escrow with Charles L. Neustein, P.A. pending conclusion of the transaction described in this Agreement.

(Saunders Agreement ¶ 2, DE #289-1, at 55).

10

Defendant Properties of Costa Rica, Inc., as opposed to the trust account of the Nuestein Defendants. (Mar. 23, 2009 Hay check, DE #289-1, at 165; Mar. 18, 2009 Hay check, DE #289-1, at 166).

In addition to the varying written Agreements for Deed, sworn testimony and documentary evidence in the record reveal that a number of Plaintiffs agreed to various modifications of the original Agreements for Deed in the form of payment plans in exchange for a reduced sale price that may have altered or nullified provisions of the original Agreement for Deed. (Feb. 17, 2012 Dep. of John Hay 14:8–15:20, DE #289-1, at 149–50; Oct. 23, 2009 letter to Hay, DE #289-1, at 168; Aug. 17, 2006 letter to Hay, DE #289-1, at 167; Feb. 13, 2012 Dep. of John Saunders 30:14–21, DE #289-1, at 34).

The Court finds that these varying factual scenarios present numerous discrete legal issues and affect the types of damages available to the individual Plaintiffs, weighing against a finding of commonality. For instance, the variations in the Agreements for Deed entered into by Plaintiffs and the inconsistency of payment practices beg questions as to whether there was a binding escrow as to the additional payments? Whether Neustein's receipt of the additional payments and confirmation letters created an implied escrow, and, if so, what was the triggering event for disbursal to the Seller? Whether interim payments made pursuant to a subsequently negotiated payment plan were subject to the refund provisions of the initial Agreement for Deed? As the Supreme Court emphasized in *Wal-Mart*, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." 131 S. Ct. at 2551 (citing Nagareda, *Class Certification in the Age of Aggregate*

11

*Proof*, 84 N.Y.U.L. Rev. 97, 132 (2009)). Accordingly, based on the variety of legal implications of these significant factual distinctions, the Court finds that Plaintiffs' claims for breach of contract against Defendants Gale and Tashman and breach of fiduciary against the Neustein Defendants duty are not susceptible to resolution on a class-wide basis for lack of commonality. *See Wal-Mart*, 131 S. Ct. at 2550–51.

### C. *Plaintiffs' Civil RICO Claims Lack Commonality*

A successful civil RICO plaintiff must prove that an enterprise engaged in "a pattern of racketeering activity," as demonstrated by at least two predicate acts that are related to each other and suggest continuity (*i.e.*, repeated conduct) that proximately caused plaintiff's damages. RICO, 18 U.S.C. § 1962(c); *see generally Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992) (holding plaintiff must prove defendant's racketeering activity was proximate cause of damages); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249 (1989) (discussing what constitutes "a pattern" under RICO); *see also H.J. Inc.*, 492 U.S. at 253 (Scalia, J., concurring). Here, Plaintiffs allege that Defendants Gale and Tashman "operated [the Defendant companies] for the purpose of defrauding consumers as the development was a sham," and that "[t]here was no legitimate business." (Third Am. Compl., ¶¶ 315 & 318, DE #150). Plaintiffs further allege that Defendants carried out their fraudulent scheme with "separate predicate act[s] of mail fraud whereby it was false [sic] represented through the U.S. mail that the deposits paid would be 100% refundable." (Third Am. Compl. ¶ 312, DE #150). As damages, Plaintiffs claim "the amount each Plaintiff and member of the class paid toward the fraudulent transaction." (Third Am. Compl. ¶ 324, DE #150).

In the Motion for Class Certification, without going into each of the essential elements, Plaintiffs argue that "the essential elements of a R.I.C.O. enterprise and pattern of racketeering are subject to common proof." (DE #254, at 10). The Court has reviewed the evidence in the record in the context of the allegations of the Third Amended Complaint for the limited purpose of envisioning how a trial on this issue would proceed. For the following reasons, the Court finds that Plaintiffs' civil RICO claims cannot be resolved on a class-wide basis.

The Costa Rica land sales and development project spanned approximately four years, from September 2004 to November 2008, and involved the development of hundreds of individual lots. (DE #150-3). Although Plaintiffs make the sweeping allegation that the entire project was a fraud from the start, after a year-and-a-half of discovery, Plaintiffs have not presented the Court with any direct evidence of actual fraud or racketeering. To the contrary, evidence in the record suggests that the project may not have been a total fraudulent scheme from the beginning. For instance, the uncontested evidence reveals that some of the improvements were completed by Defendants as promised, such as the construction of gutter systems on 10% of the lots and 20 miles of roads throughout the planned project. (Feb. 16, 2012 Dep. Of John Roscoe 19:22–24, DE #291-8, at 8; Mar. 5, 2012 Gale Dec., ¶ 10, DE #289-2). In addition, Defendant Gale submits that 47% of purchasers received deeds to their properties. (DE #289-2).

Absent some evidence beyond the sweeping allegations of the Third Amended Complaint that the entire land development and sales project was a scheme, the Court is

unable to determine whether the civil RICO claim raises issues common to the class. *See generally State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 323 (5th Cir. 1978)[11] (declining to find whether there was a common question of conspiracy where record devoid of evidence due to restricted discovery at the district court level). Further, that some of the individual Plaintiffs may be entitled only to damages for breach of contract, while others may be entitled to treble damages under RICO opens the door for intraclass conflicts, weighing against a finding of adequacy, and the necessary introduction of individualized evidence, weighing against predominance under Rule 23(b)(3).

### D. *The Proposed Class Representatives Are Not Sufficiently Typical of the Class for Claims of Breach of Contract, Breach of Fiduciary Duty, Civil RICO, and ILSA*

In support of typicality, Plaintiffs argue that "[t]he transactions at issue in this lawsuit are uniform." (DE #254, at 11). Specifically, Plaintiffs argue that the seven proposed class representative, as well as all of the Plaintiffs, "made a substantial payment," and "made their initial payment to Defendant Neustein's trust account." (*Id.*). The Court finds that while these two facts are typical of the proposed class, there are many other facts that weigh against a finding a typicality.

For instance, along with the variations in the written Agreements for Deed, *see supra* Part III.B., the proposed class representatives did not make uniform payments. Three of the proposed class representatives (Cooper, Ellingson, and Roscoe) appear to have made a single

---

[11] Decisions of the United States Court of Appeals for the Fifth Circuit handed down by the close of business on September 30, 1980 are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

14

deposit by check for each lot purchased to the Neustein Trust Account, two of the proposed class representatives (Greenberg and Hay) appear to have made multiple payments by check beyond the initial deposit, one proposed class representative (Saunders) purchased two lots and paid both deposits by a single check, and one proposed class representative (Fox) used both check and credit card for her payments. (DE #254, at 5–8). As the Agreements do not contemplate interim payments, the claims of Plaintiffs (e.g., Hay) who made payments beyond the initial deposit pursuant to subsequently negotiated payment plans are not typical of the claims of Plaintiffs (e.g., Saunders) who made only an initial deposit. Further, each of the proposed class representatives and the individual class members entered into contracts to purchase separate lots. Where damages are contingent on the market value of the lots and improvements, as is the case with the ILSA, that the proposed class representatives did not purchase lots of identical value with identical improvements weighs against a finding of typicality. Accordingly, the Court finds that Plaintiffs have failed to prove how the proposed representative Plaintiffs' claims are typical of each other, much less of the proposed class as a whole.

### E. *Plaintiffs Have Not Met Their Burden to Demonstrate Adequacy of Representation*

The Court has substantial doubt on whether adequacy of representation is satisfied. As discussed prior, the Court finds it likely that as the case unfolds there will be intraclass conflicts to preclude a finding of adequacy of representation. In addition, upon consideration Plaintiffs' counsel's significant issues with managing and producing discovery (in contravention of Court Order), decision not to propose trial plan, and lack of assurances that

15

counsel will be able to facilitate the extensive notice necessary in a case of this magnitude, the Court is not persuaded that adequacy of representation has been demonstrated in this regard either. FED. R. CIV. P. 23(g).

### III. Conclusion

Upon careful consideration of the Parties' arguments and evidence in the record, the Court finds that Plaintiffs have failed to satisfy the Rule 23(a) requirements for class certification of the claims for breach of contract (Count I), civil RICO (Count IX(a)), breach of fiduciary duty (Count IX(b)), and violations of the ILSA (Count X). Given the Court's findings with regard to the requirements of Rule 23(a), particularly with respect to commonality, an analysis of the Rule 23(b)(3) requirements of predominance and manageability is futile. Further, absent certification of the underlying claims giving rise to liability for receipt of fraudulently transferred funds, the Court declines to reach the merits of Plaintiffs' Motion for Class Certification with regard to fraudulent transfer (Count XI).

Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that Plaintiffs' Motion for Class Certification (**DE #254**) be, and the same is hereby, **DENIED**.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida on this 21st day of June, 2012.

*/s/ James Lawrence King*
JAMES LAWRENCE KING
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

cc:     **Magistrate Judge Chris M. McAliley**

*Counsel for Plaintiffs*
**Matthew S. Sarelson**
Sarelson Law Firm, P.A.
1200 Brickell Avenue
Suite 1440
Miami, FL 33131
3053790305
Fax: 8004219954
Email: msarelson@sarelson.com

**Maxwell Miller Nelson**
Sarelson Law Firm
1200 Brickell Ave. Suite 1440
Miami, FL 33131
3053790305
Fax: 8004219954
Email: mnelson@sarelson.com

**Paul Bernard Kunz**
Bander & Associates
444 Brickell Ave.
Suite 300
Miami, FL 33131
305-358-5800
Fax: 305-374-6593
Email: paul@bandervisa.com

**John Philip Hess**
1395 Brickell Avenue
Suite 800
Miami, FL 33131
305-445-3525
Fax: 305-447-1020
Email: jhess@johnphess.com

*Counsel for Neustein Defendants*
**David H. Charlip**
Charlip Law Group
17501 Biscayne Blvd
Suite 510
Aventura, FL 33160

305-354-9313
Fax: 305-354-9314
Email: dcharlip@charliplawgroup.com

**Nicole Neustein**
Neustein Law Group, P.A.
777 Arthur Godfrey Road
2nd Floor
Miami Bach, FL 33140
305-531-2545
Email: neustein@gmail.com

*Counsel for Fraudulent Transfer Defendants*

**Jeffrey Allen Tew**
Tew Cardenas LLP
Four Seasons Tower
1441 Brickell Avenue
15th Floor
Miami, FL 33131-3407
305-536-8452
Fax: 536-1116
Email: jt@tewlaw.com

*Defendants*

**William Gale**
1921 N.E. 205 Street
North Miami Beach, FL 33179
PRO SE

**Stephen Tashman**
822 SW Bryan Place
Fort Lauderdale, FL 33312
PRO SE